# EXHIBIT A

**MARGOLIS EDELSTEIN**
214 Senate Avenue, Suite 402
Camp Hill, PA 17011
(717) 760-7504 – T/F
cedgar@margolisedelstein.com

**Candace N. Edgar, Esquire**
Pa. Attorney No. 209127
Attorney for Plaintiff
Mid-Century Insurance Company
ME File No. 31400.4-00006

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MID-CENTURY INSURANCE COMPANY, | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff | ) | Civil Action No. 5:21-cv-05592 |
| | ) | |
| v. | ) | |
| CHAD WERLEY and JANE WERLEY, | ) | **JURY TRIAL DEMANDED** |
| individually and as parents and natural | ) | |
| guardians of LEVI WERLEY, a minor | ) | |
| | ) | Judge Edward G. Smith |
| Defendants | ) | |
| | ) | |

### PLAINTIFF'S RESPONSES TO FIRST SET OF
### REQUESTS FOR ADMISSION OF DEFENDANTS

#### Request for Admission No. 1

On June 29, 2019, Levi Werley, was operating the Dirt Bike off-road on private property in Kempton, Pennsylvania.

**Response:**   Admitted, but only with full and proper context. It is admitted that, on June 29, 2019, Defendant Levi Werley, then an unlicensed, 15-year-old minor, was operating the Dirt Bike off road on private property in Kempton, Pennsylvania while attending a party with his neighbors and friends who gathered regularly to go off-roading with their Jeeps and other vehicles. By way of further response, see Defendants' admission of Paragraph 5 of the Complaint in their Answer with New Matter and Cross-Claim.

#### Request for Admission No. 2

On June 29, 2019, while occupying the Dirt Bike, Levi Werley was struck and injured by a Jeep CJ-7 operated by Haley George who was 15 years of age (the "Accident").

**Response:**   Admitted although Defendants previously provided sworn testimony during their respective Examination under Oath on February 28, 2020, specifically denying that

they had any personal or firsthand knowledge regarding the identity of the person operating the Jeep CJ-7 at the time of the subject accident.

**Request for Admission No. 3**

Haley George's insurance policy provided $100,000.00 in bodily injury coverage, which amount has been paid to Levi Werley.

**Response:**   Admitted. By way of further response, Plaintiff waived its right of subrogation against Haley George and consented to this settlement.

**Request for Admission No. 4**

On June 29, 2019, Levi Werley was a minor.

**Response:**   Admitted. By way of further response, at the time of the accident, Levi Werley was a 15-year-old minor who had no driver's license permitting him to operate a motor vehicle upon any Pennsylvania roadway.

**Request for Admission No. 5**

On June 29, 2019, Levi Werley resided with his parents, Chad and Jane Wesley.

**Response:**   Admitted.

**Request for Admission No. 6**

Under Pennsylvania law, the Dirt Bike was not required to be registered or insured because it was never operated on public roads.

**Response:**   Admitted with explanation. Implicit in this Request for Admission is the concession that the Dirt Bike qualified as a "motor vehicle" under 75 Pa. C.S.A. § 102 of the Pennsylvania Motor Vehicle Code so as to require registration and insurance prior to its operation on a public roadway. However, even if the Dirt Bike had been registered and insured, Levi Werley was an unlicensed 15-year-old at the time of the accident who could not have lawfully driven it on any Pennsylvania roadway, yet was permitted by his parents to drive the Dirt Bike on private property at "Jeep Parties" put on by neighbors and friends.

**Request for Admission No. 7**

On June 29, 2019, Chad and Jane Werley were named insureds under Policy #1, which was underwritten by Plaintiff.

**Response:**   Admitted.

**Request for Admission No. 8**

On June 29, 2019, Policy #1 insured four vehicles and provided UIM coverage equal to the bodily injury limits of $250,000.00/$500,000.00 with intra-policy stacking validly rejected.

**Response:**   Admitted.

**Request for Admission No. 9**

The stacking waiver signed by Chad Werley for Policy #1 complied with the waiver form set forth in 75 Pa. C.S.A. §1738(d), but did not contain additional, specific language regarding the waiver of inter-policy stacking for the multi-vehicle policy.

**Response:** Admitted.

**Request for Admission No. 10**

On June 29, 2019, the Dirt Bike was not a named or listed vehicle under Policy #1 or any other policy of auto insurance belonging to Defendants.

**Response:** Admitted with explanation. Despite owning the dirt bike for approximately two years prior to the subject accident, Defendants never requested a quote to insure the Dirt Bike, never applied for a policy of insurance to cover it, and never paid a premium for specific coverage of the Dirt Bike. They further never disclosed their ownership of the Dirt Bike to Plaintiff and its regular use by an unlicensed minor at "Jeep Parties".

**Request for Admission No. 11**

Defendants were never presented with, and never executed, a knowing and voluntary waiver of UIM coverage for the Dirt Bike prescribed under 75 Pa. C.S.A. §1731.

**Response:**   Denied because this Request for Admission is based upon the false premise that Defendants were required to be presented with and/or execute a knowing and voluntary waiver of UIM coverage under 75 Pa. C.S.A. §1731 for a policy applicable

to the Dirt Bike, which they never applied for or purchased, and thus, never existed. Because § 1731 only requires UM/UIM coverage for a "motor vehicle liability insurance policy…delivered or issued for delivery in this Commonwealth…", the offering of UM/UIM coverage and the requirement of a signed waiver for such coverage under 75 Pa. C.S.A. §1731 exists only if there is a policy in existence. Had Defendants purchase a policy of insurance for the Dirt Bike, they would have been presented with and had the opportunity to execute a knowing and voluntary waiver of UIM coverage. As a policy for the Dirt Bike was nonexistent, so too was any requirement that a fictional carrier provide them with a written waiver of UM/UIM coverage for a phantom policy.

### Request for Admission No. 12

Defendants never paid any premiums specifically attributable to coverage for the Dirt Bike.

**Response:**   Admitted.

### Request for Admission No. 13

Defendants did not execute a waiver of UIM coverage prescribed under 75 Pa. C.S.A. §1731 for Policy #1.

**Response:**   Admitted. By way of further response, see Request for Admission No. 8 and Plaintiff's Response thereto. It is undisputed Policy #1 did not insure the Dirt Bike.

### Request for Admission No. 14

On June 29, 2019, Chad Wesley and Olivia Werley were named insureds under Policy #2, which was underwritten by Plaintiff.

**Response:**   Admitted.

### Request for Admission No. 15

Policy #2 insured a 1999 Jeep Grand Cherokee.

**Response:**   Admitted. By way of further response, it is undisputed that, like Policy #1, Policy #2, did not insure the Dirt Bike either.

**Request for Admission No. 16**

Defendants did not execute a waiver of UIM coverage prescribed under 75 Pa. C.S.A. §1731 for Policy #2.

**Response:**   Admitted. By way of further response, see Request for Admission No. 17 and Plaintiff's Response thereto. It is undisputed Policy #2 did not insure the Dirt Bike.


**Request for Admission No. 17**

Policy #2 provided $250,000.00/$500,000.00 in UIM coverage, with intra-policy stacking validly rejected.

**Response:**   Admitted with qualification. Policy #2 was a single-vehicle policy, which had a valid stacking waiver for both intra-policy and inter-policy stacking.


**Request for Admission No. 18**

Defendants made claims for UIM benefits stemming from the June 29, 2019 accident under both Policy #1 and Policy #2,

**Response:**   Admitted.


**Request for Admission No. 19**

Plaintiff tendered the $250,000.00 UIM limit under Policy #2 to Levi Werley.

**Response:**   Admitted with explanation. The household vehicle exclusion of Policy #2 and Policy #1 are markedly different, which counsel for Defendants explicitly acknowledged in a letter dated January 14, 2020. Specifically, the household vehicle exclusion of Policy #2 applied only to a "car" as set forth in more detail below:

> **Exclusions – What is Not Insured in Part II**
> Coverage under Part II does not apply:
> . . .
> To **bodily injury** sustained by **you** or any **family member** while **occupying** or when struck by any **car** owned by **you** or any **family member** which is not insured for this coverage under this policy under any similar form. This includes a trailer of any type used with that **car**.

(A true and correct copy of Policy #2 is attached hereto as "Exhibit A" at Form 56-5667, p. 10).

5

Furthermore, Policy #2 defined a "**car**" as:

> A four wheeled private passenger car of the coupe, sedan, station wagon, pick-up truck, van or sport utility type, with gross vehicle weight of 14,000 pounds or less, and licensed for and used only upon public highways. It does not include a motorhome, a step van, parcel delivery van, cargo cutaway van, or other van with the cab separate from the cargo area.

(Id. at p. 3).

Because the Dirt Bike did not qualify as a "car" as defined by Policy #2, the household vehicle exclusion had no application, and Plaintiff tendered the $250,000 UIM limit to Defendant Levi Werley.

In contrast, the household vehicle exclusion under Policy #1 serving as the basis for this declaratory judgment action provides as follows:

**Exclusions that apply to Part II – Uninsured/Underinsured Motorist Coverage**

Coverage under Part II does not apply:

*       *       *       *       *

4.   To **bodily injury** sustained by you or any **family member** while **Occupying** or when struck by any motor vehicle owned by you or any **family member** which is not insured for this coverage under any similar form. This includes a trailer of any type used with that vehicle.

(Exhibit A of Complaint, Form 56-5750, p. 9).

The Dirt Bike qualifies as a "motor vehicle" under 75 Pa. C.S.A. § 102 of the Pennsylvania Motor Vehicle Code. Thus, the policy's household vehicle exclusion clearly applies to Levi Werley's occupancy of the uninsured Dirt Bike at the time of the accident. Because the Dirt Bike was uninsured, there is no policy upon which to stack UIM benefits, eliminating any concern that application of the household vehicle exclusion under Policy #1 improperly circumvents stacked UIM coverage purchased for the Dirt Bike.

**Request for Admission No. 20**

Plaintiff has refused to pay UIM benefits under Policy #1 based upon the household vehicle exclusion contained in Policy #1.

**Response:** Admitted. By way of further response, see Response to Request for Admission No. 19.

**Request for Admission No. 21**

The only policy under which Defendants are presently seeking UIM benefits, which is the subject of this Declaratory Judgment Action, is Policy #1.

**Response:** Admitted.

Respectfully Submitted,

**MARGOLIS EDELSTEIN**

By:   *Candace N. Edgar*

Candace N. Edgar, Esquire
I.D. No. 209127
214 Senate Avenue, Suite 402
Camp Hill, PA 17011
(717) 760-7504 – T/F
cedgar@margolisedelstein.com
**Counsel for Plaintiff**

Date: July 15, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Responses to Requests for Admission* was served on this date upon the following counsel via electronic mail as follows:

Peter F. Schuchman, Jr., Esquire
2640 Westview Drive
Wyomissing, PA 19610
(610) 670-2552
pschuchman@kozloffstoudt.com
**Counsel for Defendants**

**MARGOLIS EDELSTEIN**

By:  *Candace N. Edgar*
Candace N. Edgar, Esquire
I.D. No. 209127
214 Senate Avenue, Suite 402
Camp Hill, PA 17011
(717) 760-7504 – T/F
cedgar@margolisedelstein.com
**Counsel for Plaintiff**

Date: July 15, 2022

# EXHIBIT A

JUSTIN PRADEL
831 CONESTOGA RD
BRYN MAWR, PA 19010



**FARMERS**

INSURANCE

# Auto Insurance New Policy

RAX4000172

CHAD WERLEY
OLIVIA WERLEY
8188 LEASER RD
KEMPTON PA 19529-8970

5/30/2019

Dear Chad Werley and Olivia Werley,

Thank you for purchasing your new auto policy with Farmers Insurance®. We know you have choices, and appreciate the opportunity to help you meet your insurance needs.

Enclosed are some important documents for your new policy. Please take some time and carefully review this information, which includes:

- ID cards
- Declaration page – a summary of your insurance coverages, limits, and deductibles
- Your insurance policy form and endorsements

A summary of your premium information is shown below.

## Premium at-a-glance

| | |
|---|---|
| Policy Premium | $590.10 |
| Fees | $29.30 |
| **Premium and Fees** | **$619.40** |

**This is not a bill.**
Your bill with the amount due will be mailed separately.

If you have any questions or would like to learn more about our other insurance products and services, please contact your agent.

We appreciate your business.

Sincerely,

Farmers Insurance Group®

### Your Farmers Policy

**Policy Number: 19612-65-17**
Effective: 5/24/2019 12:01 AM
Expiration: 11/24/2019 12:01 AM

### Your Farmers Agent

**Justin Pradel**
831 Conestoga Rd
Bryn Mawr, PA 19010
(484) 362-0900
jpradel@farmersagent.com

To file a claim call
**1-800-435-7764**

### Did you know?

**Manage Your Policy Online**
Log on to farmers.com to pay your bill, get insurance ID cards, view policy documents, and more! Plus, access your account anytime using the Farmers Mobile App!

**Go Mobile**
The Farmers® Mobile App gives you 24/7 account access on the go. Text GETAPP to 29141 to download it today!

**farmers.com**

25-8164   1-14





## Auto Insurance Declaration Page

**FARMERS**
INSURANCE

| | | **Premiums/Fees** | |
|---|---|---|---|
| **Policy Number:** | **19612-65-17** | Policy Premium | $590.10 |
| *Effective:* | 5/24/2019 12:01 AM | Fees (*also see Information on Additional | $29.30 |
| *Expiration:* | 11/24/2019 12:01 AM | Fees below) | |
| *Named Insured(s):* | Chad Werley | | |
| | Olivia Werley | ➤ **Policy Premium and Fees** | **$619.40** |
| | 8188 Leaser Rd | | |
| | Kempton, PA 19529-8970 | **Your policy premium includes a Total Estimated Discount** | |
| *e-mail* | werleys4@aol.com | **Savings of $116.10** | |
| *Address(es):* | | **This is not a bill.** | |
| *Underwritten By:* | MID-CENTURY INSURANCE COMPANY | Your bill with the amount due will be mailed separately. | |
| | 6301 Owensmouth Ave. | | |
| | Woodland Hills, CA 91367 | | |

### Household Drivers

All persons who drive or will occasionally be driving any of the cars on the policy should be listed below. If anyone is missing or needs to be added, such as a newly licensed driver, you should contact your agent or the company to add that person before they begin to drive any of the cars covered on the policy.

| Name | Driver Status | Name | Driver Status |
|---|---|---|---|
| Chad Werley | Covered | Jane Werley | Covered |
| Olivia Werley | Covered | | |

### Vehicle Information

| Veh. # Year/Make/Model/VIN | | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 1999 Jeep Grand Cherokee 4D 4X4 Lar | Comprehensive: | $100 | |
| | 1J4GW58S1XC608967 | Collision: | Not Covered | |

### Coverage Information

| | | Premiums by Vehicle |
|---|---|---|
| Coverage | Limits (applicable to all vehicles) | Vehicle 1 |
| Bodily Injury Liability | $250,000 each person $500,000 each accident Full Tort | $288.50 |
| Property Damage Liability | $100,000 each accident | $175.30 |
| Uninsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $12.30 |
| Underinsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $56.60 |
| Comprehensive | | $38.00 |
| Collision | | Not Covered |

---

| farmers.com | Policy No. 19612-65-17 | **Questions?** Call your agent Justin Pradel at (484) 362-0900 or email jpradel@farmersagent.com | **Manage your account:** Go to www.farmers.com to access your account any time! |
|---|---|---|---|

## Declaration Page (continued)

| Coverage | Limits (applicable to all vehicles) | Premiums by Vehicle Vehicle 1 |
|---|---|---|
| Towing and Road Service | | Not Covered |
| FIRST PARTY BENEFITS Medical Coverage | $5,000 each person | $19.40 |
| Funeral Expense Benefits | | Not Covered |
| Income Loss Benefits | | Not Covered |
| Accidental Death Benefits | | Not Covered |
| Combination Package | | Not Covered |
| Extraordinary Medical Benefits | | Not Covered |
| Total Premium Per Vehicle | | $590.10 |
| 🢒 **Policy Premium** | | **$590.10** |

### Fee Detail

| | Total |
|---|---|
| Policy Fee | $29.30 |
| 🢒 **Fees** | **$29.30** |
| 🢒 **Policy Premium and Fees** | **$619.40** |

### Discounts

| Discount Type | Applies to Vehicle(s) | Discount Type | Applies to Vehicle(s) |
|---|---|---|---|
| Paid In Full | 1 | Homeownership | 1 |
| Good Payer | 1 | ePolicy | 1 |
| Passive Restraint | 1 | | |

| | |
|---|---|
| 🢒 **Total Estimated Discount Savings as of Date of Mailing** | **$116.10** |

### Policy and Endorsements

This section lists the policy form number and any applicable endorsements that make up your insurance contract. Any endorsements that you have purchased to extend coverage on your policy are also listed in the coverages section of this declarations document: 56-5667 1st ed.

### Other Information

- Total Citation/Accident surcharge for this policy is $0.00.
- Vehicle 1 - Deductible waived if glass repaired rather than replaced.
- If this policy includes Part IV - Collision coverage, then this policy covers Collision damage to rental cars (non-owned car) as described and limited by the terms of Part IV - Collision of the policy.

---

**farmers.com**   Policy No. 19612-65-17   **Questions?** Call your agent Justin Pradel at (484) 362-0900 or email jpradel@farmersagent.com   **Manage your account:** Go to www.farmers.com to access your account any time!

## Declaration Page (continued)

- Farmers Friendly Reviews are a great way to make sure you are receiving all the discounts for which you qualify, and identify any potential gaps in coverage. Contact your agent to learn more about the policy discounts, coverage options, and other product offerings that may be available to you.

### *Information on Additional Fees

The "Fees" stated in the "Premium/Fees" section on the front apply on a per-policy, not an account basis. The following additional fees also apply:

1. **Service Charge per installment** (in consideration of our agreement to allow you to pay in installments):
   - For Recurring Electronic Funds Transfer (EFT) and fully enrolled online billing (paperless): **$0.00** (applied per account)
   - For other Recurring EFT plans: **$2.00** (applied per account)
   - For all other payment plans: **$5.00** (applied per account)

If this account is for more than one policy, changes in these fees are not effective until the revised fee information is provided for each policy.

2. **Late Fee: $10.00** (applied per account)
3. **Returned Payment Charge: $20.00** (applied per check, electronic transaction, or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account)
4. **Reinstatement Fee: $25.00** (applied per policy)

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.

*Countersignature*

Authorized Representative

farmers.com   Policy No. 19612-65-17

**Questions?**
Call your agent Justin Pradel at (484) 362-0900 or email jpradel@farmersagent.com

**Manage your account:**
Go to www.farmers.com to access your account any time!

56-6176   1st Edition   5-17

Page 3 of 3

# Personal Auto Policy



**FARMERS** INSURANCE

## Index

*Insuring Agreement* .................................... 3

*Definitions Used Throughout This Policy* ....... 3

*Part I - Liability Coverage* ........................... 4
Bodily Injury Liability ................................... 4
Property Damage Liability ............................. 4
A.  Insuring Agreement - Bodily Injury and Property
    Damage Coverage ................................. 4
B.  Additional Payments ............................. 5
C.  Additional Definitions Used in This Part Only ........... 5
D.  Exclusions - What is Not Insured in Part I ............ 5
E.  Limits of Liability ............................... 6
F.  Legal Action Against Us ........................ 7
G.  Conformity with Financial Responsibility Laws ........ 7
H.  Out of State Coverage .......................... 7
I.  Other Insurance ................................ 7

*Part II - Uninsured Motorist and Underinsured
Motorist Coverage* .................................. 7
Uninsured Motorist Bodily Injury ..................... 7
Underinsured Motorist Bodily Injury .................. 7
A.  Insuring Agreement - Uninsured Motorist Bodily Injury
    Coverage ........................................ 7
B.  Insuring Agreement - Underinsured Motorist Bodily Injury
    Coverage ........................................ 8
C.  Additional Definitions Used in This Part Only ........... 8
D.  Limits of Liability ............................... 9
E.  Non-Stacked Limit of Liability .................... 9
F.  Limits of Liability Applicable to Both Stacked and Non-
    Stacked Coverage ............................... 9
G.  Stacked Limit of Liability ....................... 10
H.  Exclusions - What is Not Insured in Part II ........... 10
I.  Other Insurance ................................ 11
J.  Arbitration ..................................... 11

*Part III - First Party Benefits Coverage* ......... 11
First Party Benefits Coverage ....................... 11
A.  Insuring Agreement - Basic First Party Benefit ......... 11
B.  Insuring Agreement - Added First Party Benefits ......... 11

C.  Insuring Agreement - Combination First Party Benefits .... 12
D.  Insuring Agreement - Extraordinary Medical Benefits
    Coverage ........................................ 12
E.  Additional Definitions Used in This Part Only ........... 12
F.  Exclusions That Apply to Part III - First Party Benefits
    Coverage ........................................ 13
G.  Limits of Liability .............................. 14
H.  Priorities of Policies ........................... 14
I.  Other Insurance ................................ 15

*Part IV - Damage to Your Car* .................... 15
Comprehensive ..................................... 15
Collision ........................................... 15
Towing and Road Service ............................ 15
A.  Insuring Agreement ............................ 15
B.  Additional Definitions Used in This Part Only ........... 16
C.  Supplementary Payments ........................ 17
D.  Exclusions - What is Not Insured in Part IV ........... 17
E.  Additional Duties for Part IV - Damage to Your Car ..... 19
F.  Payment of Loss ................................ 19
G.  Limits of Liability .............................. 19
H.  Preservation of Salvage ........................ 20
I.  No Benefit to Bailee ............................ 20
J.  Legal Action Against Us ......................... 20
K.  Other Insurance ................................ 20
L.  Appraisal ....................................... 20

*Part V - Duties After an Accident and General
Conditions* ......................................... 21
A.  Duties After an Accident ........................ 21
B.  General Conditions ............................. 21
    1.  Policy Period and Territory .................. 21
    2.  Your Duty to Report Changed Circumstances ..... 21
    3.  Coverage Changes .......................... 22
    4.  Legal Action Against Us ..................... 22
    5.  Transfer of Your Interest .................... 22
    6.  Our Right to Recover Payment ............... 22
    7.  Bankruptcy ................................. 22
    8.  Termination ................................ 22
    9.  Misrepresentation or Fraud .................. 23
    10. Terms Conformed to Statutes ................ 24

## Personal Auto Policy (continued)

11. Proof of Mailing . . . . . . . . . . . . . . . . . . . . . . . . . . .24
12. Policy Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
13. Additional Benefits and Services . . . . . . . . . . . . . . . .24
14. Policy Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
15. Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
16. Joint and Individual Interests . . . . . . . . . . . . . . . . . . .24

17. Loss Payable Provisions . . . . . . . . . . . . . . . . . . . . . . . .24
18. Limited Material Damage Coverage in Mexico . . . . . . . .25
19. Car Sharing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

**Special Provisions** . . . . . . . . . . . . . . . . . . . . . . . .26

farmers.com

## Personal Auto Policy (continued)

### Insuring Agreement

In return for **your** premium payment and based upon the representations **you** made in the application for this insurance, we agree to insure **you** for each of the coverages listed on the **Declarations Page** subject to all the terms, limits and conditions of the application, the **Declarations Page**, this policy and all of its endorsements.

### Definitions Used Throughout This Policy

A. Certain words and phrases are defined in this policy. Defined words and phrases appear in boldface type and have special meaning. Refer to the definition sections for the meanings. The defined terms have the same meaning whether in the singular, plural, or any other form of the same term.

B. **We**, **us** and **our** mean the Company named on the **Declarations Page** that provides this insurance.

C. **You** and **your** mean the **named insured** shown on the **Declarations Page** and **your** spouse, if a resident of **your** household.

   1. **Your** spouse includes a registered domestic partner, civil union or similar union under applicable state law:
      a. if the person is a resident of the same household with **you** during the policy period, and
      b. if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.
   2. If **your** spouse or partner defined above is no longer a resident in the same household during the policy period, the spouse or partner will be considered insured by this policy until the earlier of:
      a. The end of ninety (90) days following the change of residency;
      b. The effective date of another policy listing **your** spouse or partner as a named insured;
      c. The end of the policy period; or
      d. Cancellation of this policy.

D. **Definitions**

   1. **Accident** means a sudden, unexpected and unintended event. An **accident** must occur during the policy period, arise out of the ownership, maintenance or use of a **car** and cause **bodily injury** or **property damage**.
   2. **Additional car** means a **car** that **you** acquire by purchase or by a new lease of at least six (6) continuous months.
      a. For coverage to apply **you** must:
         (1) Acquire the **car** during the policy period; and
         (2) Notify **us** within thirty (30) days of its acquisition.

   b. An **additional car** will have the broadest coverage we provide for any **car** shown on the **Declarations Page**.
   c. Coverage does not continue after thirty (30) days if **you** fail to notify **us** of its acquisition.

   3. **Bodily injury** means accidentally sustained bodily harm to an individual including any resulting illness, disease or death.
   4. **Business** means any full or part-time profession, occupation, trade or commercial enterprise.
   5. **Car** means a four-wheeled private passenger car of the coupe, sedan, station wagon, pick-up truck, van or sport utility type, with gross vehicle weight of 14,000 pounds or less, and licensed for and used only upon public highways. It does not include a motorhome, a step van, parcel delivery van, cargo cutaway van, or other van with the cab separate from the cargo area.
   6. **Commercial Ridesharing Program** means an arrangement or activity through which persons or property are transported for compensation, regardless of the amount or form of compensation charged or paid and includes the time:
      a. commencing when a driver of a **car** is available to accept transportation requests for passengers or property for compensation;
      b. between the driver accepting a transportation request and the passengers or property entering into or being loaded upon the **car** used for this request;
      c. passengers or property are in or upon the **car** used for this request; and
      d. between the passengers or property exiting or unloading from the **car** and the driver is no longer available to accept transportation requests.
   7. **Damages** mean compensation in the form of compensatory damages that can be recovered by those who suffer **bodily injury** or **property damage** as a result of an **accident**. **Damages** do not mean punitive or exemplary damages or any restitution, fines or penalties that are required to be paid as the result of any civil or criminal proceedings brought against any person.
   8. **Declarations Page** means the document from **us** listing:
      a. The type of coverages **you** have elected;
      b. The limit for each coverage;
      c. The premium for each coverage;
      d. The **cars** insured by this policy;
      e. The **named insured**; and
      f. Other policy information.

farmers.com

56-5667   1st Edition   4-15

**Personal Auto Policy** (continued)

9. **Family member** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption, including a ward or foster child. This also includes a minor in the custody of **you** or of a person related to **you** who resides with **you**.

10. **Named insured** means the person or persons listed on the **Declarations Page** as the **named insured**.

11. **Non-owned car** means any **car** or **utility trailer**, other than **your insured car**, which is not owned by, furnished or available for regular use by **you** or a **family member** while in the custody of or being operated by **you** or a **family member**.

12. **Occupying** means:
    a. In;
    b. On;
    c. Getting into; or
    d. Getting out of.

13. **Personal Car Sharing Program** means a **business** in which persons or legal entities are engaged in the **business** of facilitating the sharing of **cars** for temporary use by individuals.

14. **Prearranged Ride** means a period of time that begins when a driver accepts a transportation request through a digital network or similar connection and continues while the driver transports the rider in a **car**, and ends when the rider departs from the **car**.

15. **Property damage** means physical injury to or destruction of tangible property, including loss of its use.

16. **Rental car** means any **car** or a **utility trailer** that is rented by **you** on a daily or weekly basis not to exceed thirty (30) consecutive days, provided that this **car** or **utility trailer** is not owned by, furnished or available for regular use by **you** or a **family member**.

17. **Replacement car** means a **car** that **you** acquire to replace any **car** listed on the **Declarations Page**, either by purchase, or by a written lease of at least six (6) continuous months.
    a. **You** must:
       (1) acquire the **car** during the policy period; and
       (2) notify **us** within thirty (30) days of its acquisition.
    b. A **replacement car** will have the same coverage as **your insured car** that it replaces.
    c. Coverage does not continue after thirty (30) days if **you** fail to notify **us** of the replacement.

18. **Serious injury** means a **bodily injury** or a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

19. **Substitute car** means a **car** not owned by **you** or a **family member**, but being temporarily used by **you** or a **family member** as a substitute for a **car** listed on the **Declarations Page** only when that listed **car** is withdrawn from normal use because of breakdown, repair, servicing, loss or destruction.

20. **Utility trailer** means a non-motorized vehicle that is designed to be towed by **your insured car** and it includes a farm wagon or farm implement while towed by a **car** on public roads. **Utility trailer** does not mean:
    a. A trailer used as an office, store, display or any other **business** for commercial purposes;
    b. A passenger trailer;
    c. A trailer used as a primary residence; or
    d. A travel trailer or camper trailer.

21. **Your car** means:
    a. Any **car** listed on the **Declarations Page** of this policy;
    b. A **replacement car**;
    c. A **substitute car**;
    d. A **rental car**;
    e. An **additional car**; and
    f. Any **utility trailer**:
       (1) that **you** own, or
       (2) if not owned by **you**, while attached to **your insured car**.

## Part I - Liability Coverage

**Bodily Injury Liability**
**Property Damage Liability**

A. **Insuring Agreement - Bodily Injury and Property Damage Coverage**

**We** will pay **damages** for **bodily injury** or **property damage** that any **insured person** is legally liable to pay as a result of an **accident** to which this coverage applies. **We** will defend an **insured person** against any covered suit or settle any claim or lawsuit as we deem appropriate. Subject to the limits of liability, **damages** we pay will include prejudgment interest awarded in a judgment against an **insured person** in accordance with the applicable Pennsylvania Rules of Civil Procedure. Our duty to defend or settle any suit will end after **we** have exhausted the limits of liability through payment of judgments or settlements. **We** have no duty to defend

## Personal Auto Policy (continued)

any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

B. **Additional Payments**

**We** will also pay the following benefits for an **insured person:**

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend; however, **we** are not obligated to apply for, furnish, or provide collateral or security for any of the above bonds. **We** are not required to purchase a bond in an amount greater than **our** limit of liability.

2. Up to $300 for the cost of bail bonds required because of an **accident** or traffic law violation arising out of the use of **your insured car**; however, **we** are not obligated to apply for, furnish, or provide collateral or security for any bonds. **We** are not required to purchase a bond in an amount greater than **our** limit of liability.

3. Actual loss of wages or salary up to $50 a day, but not other income, when **we** ask an **insured person** to attend a trial or hearing.

4. Reasonable expenses incurred by an **insured person** for first aid, if provided to others by the **insured person** at the scene an **accident** involving any **car** insured under **Part I - Liability Coverage.**

5. Post judgment interest that accrues on any **damages** awarded in any suit **we** defend, which interest has accrued after judgment is entered and before **we** have paid, offered to pay, or deposited with the court that portion of the judgment that is not in excess of **our** limit of liability. **We** will not pay post judgment interest on any portion of the judgment that exceeds **our** limits of liability.

6. All costs **we** incur in settling any claim or defending any lawsuit.

7. Other reasonable expenses, if incurred at **our** request.

C. **Additional Definitions Used in This Part Only**

**Insured person** in Part I means:

1. **You** or any **family member;**

2. Any person using **your insured car** with **your** permission; or

3. Any other person or organization with respect only to legal liability for acts or omissions of:

   a. Any person insured under Part I while using **your insured car,** or

b. **You** or any **family member** insured under Part I while using any **car,** other than **your insured car,** if not owned or hired by that person or organization.

**Insured person** does not mean:

1. The United States of America or any of its agencies;

2. Any person for **bodily injury** or **property damage** arising from the operation of a **car** by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply;

3. Any named excluded driver; or

4. Any person while **occupying,** operating or using a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program,** a **Commercial Ridesharing Program** or a similar arrangement.

D. **Exclusions - What is Not Insured in Part I**

1. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;

   b. Documents;

   c. Newspapers; or

   d. Food.

   This exclusion does not apply to a share-the-expense car pool.

2. **We** do not insure **bodily injury** or **property damage** caused intentionally by or at the direction of any **insured person,** whether or not any person intended to cause damage or injury of any nature.

3. **We** do not insure **bodily injury** or **property damage** with respect to which any person is insured under a nuclear energy insurance policy. This exclusion applies even if the limits of that policy are exhausted.

4. **We** do not insure **bodily injury** to an employee of an **insured person** arising in the course of employment. This exclusion does not apply to **bodily injury** to a domestic employee except when workers' compensation benefits are required or available for that domestic employee.

5. **We** do not insure **bodily injury** or **property damage** resulting from an **insured person's** employment, or other involvement, in the **business** or occupation of:

   a. transporting,

   b. selling,

**Personal Auto Policy** (continued)

c. repairing,

d. servicing,

e. storing, or

f. parking

**cars.** This exclusion includes road testing and delivery of the **cars.**

6. **We** do not insure **bodily injury** or **property damage** resulting from the use of a **car** by an **insured person** in an emergency occupation on a full-time, part-time, or volunteer basis. Such occupations include, but are not limited to, fire-fighting, police or ambulance activities. However, this exclusion does not apply to a **car** listed on the **Declarations Page** or any **replacement car.**

7. **We** do not insure **property damage** to property:

a. owned by;

b. being transported by;

c. rented to; or

d. in the charge of

an **insured person.** This exclusion does not apply to **property damage** to a residence or private garage rented by that person.

8. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels.

9. **We** do not insure **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **car**, other than **your insured car**, which is owned by, furnished or available for regular use by **you** or a **family member.**

10. **We** do not insure **bodily injury** to an **insured person** whenever the payment of **damages** for the **bodily injury** would benefit, directly or indirectly, an **insured person.**

This exclusion only applies to the **damages** that are in excess of the minimum limits of liability required by the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL).

11. **We** do not insure **bodily injury** or **property damage** resulting from liability assumed under any contract or agreement. This exclusion does not apply to liability **you** assume in a written contract relating to the use of a **rental car** or a **substitute car.**

12. **We** do not insure **bodily injury** or **property damage** resulting from an **insured person** participating, or **your insured car** being used, in any racing, speed, demolition, stunt or performance driving contest, demonstration, instruction or activity, or in practice or preparation for

any such activity or while operating on a driving track designed for racing or high performance driving.

13. **We** do not insure charges, fees and administrative expenses for services performed by law enforcement a municipal personnel when responding to an **accident**

14. **We** do not insure **bodily injury** or **property damage** for any **insured person** who is using a **car** without a reasonable belief the **insured person** is entitled to do This exclusion does not apply to a **family member** usi **your insured car** that is owned by **you.**

15. **We** do not insure loss due to theft or conversion of you **insured car**, a **non-owned car**, or trailer:

a. By **you**, a **family member**, or any resident of **your** household;

b. Prior to its delivery to **you** or a **family member;** or

c. While in the care, custody, or control of anyone engaged in the **business** of selling the **car** or traile

16. **We** do not insure **bodily injury** or **property damage:**

a. Caused by, or reasonably expected to result from, a criminal act or omission of an **insured person.** This exclusion applies regardless of whether that **insured person** is actually charged with or convicted of a crime. For purposes of this exclusion, criminal acts omissions do not include traffic violations;

b. Arising out of the use or operation by an **insured person** of any **car** while it is being used to flee a law enforcement agent or crime scene.

17. **We** do not insure **bodily injury** or **property damage** f any **accident** that occurs while **your insured car** or an **car** is being used in a **Personal Car Sharing Program**, **Commercial Ridesharing Program**, any prearranged ride, or a similar arrangement.

E. **Limits of Liability**

The limits of liability shown on **your Declarations Page** apply subject to the following:

1. The **bodily injury** liability limit for "Each Person" is the maximum for **bodily injury** sustained by one person in one **accident**. All claims of others derived from such **bodily injury**, including but not limited to, emotional injury, mental anguish, loss of society, loss o' companionship, loss of services, loss of consortium and wrongful death are included in the "Each Person" limit.

2. Subject to the **bodily injury** liability limit for "Each Person", the **bodily injury** liability limit for "Each Accident" is the maximum combined amount for **bodii injury** sustained by two or more persons in one **accide**

## Personal Auto Policy (continued)

3. The **property damage** liability limit for "Each Accident" is the maximum for all **property damage** sustained to all property in any one **accident**.

4. The limits of liability shown on the **Declarations Page** for **bodily injury** and **property damage** are the most **we** will pay regardless of the number of:
   a. Claims made;
   b. **Your insured cars**;
   c. **Insured persons**;
   d. Lawsuits brought;
   e. **Cars** involved in the **accident**; or
   f. Premiums paid.

5. If the **Declarations Page** shows that a combined single limit or "CSL" applies, the amount shown is the most **we** will pay for all **bodily injury** and **property damage** resulting from any one **accident** regardless of the number of:
   a. Claims made;
   b. **Your insured cars**;
   c. **insured persons**;
   d. Lawsuits brought;
   e. **Cars** involved in the **accident**; or
   f. Premiums paid.

   All claims of others derived from such **bodily injury**, including, but not limited to, emotional injury, mental anguish, loss of society, loss of companionship, loss of services, loss of consortium and wrongful death are included in the "CSL" limit.

6. No person is entitled to duplicate payments for the same elements of **damages** from this policy or any other policy. Any amount payable to a person for liability coverage shall be reduced by all sums paid or payable to that person or for their benefit under any uninsured or underinsured motorist coverage, medical payments coverage, or physical damage coverage.

7. Stacking or aggregation of liability coverage limits for **bodily injury** or **property damage** is not permitted by this policy.

F. **Legal Action Against Us**

1. Under **Part I – Liability Coverage**, no legal action may be brought against **us** until:
   a. **We** agree in writing that the **insured person** has an obligation to pay; or
   b. The amount of that obligation has been finally determined by judgment after trial.

2. No person or organization has any right under this policy to bring **us** into any action brought to determine the liability of an **insured person**.

G. **Conformity with Financial Responsibility Laws**

When **we** certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by law.

H. **Out of State Coverage**

1. If an **accident** to which this policy applies occurs in any state or province other than the one in which **your insured car** is principally garaged, and if a statute of that **accident** state or province that is applicable to **us** deems out-of-state vehicle liability policies issued by **us** to provide particular forms or limits of coverage not provided for in this policy when **your insured car** is involved in an **accident** in that state, then for purposes of that **accident** only, **we** will interpret **your** policy as providing the additional minimum coverage(s) deemed to be provided, at the minimum amounts permitted by law, and subject to the exclusions set forth in this policy.

2. **Our** obligation to pay such coverage shall be reduced by all other available insurance, to the extent permitted by the law of the other state.

3. Nothing contained herein constitutes a choice of law provision or consents to the application of the law of any particular state or province.

I. **Other Insurance**

1. If there is other applicable auto liability insurance on any other policy that applies to an **accident** insured under Part I, **we** will pay only **our** share. **Our** share is the proportion that **our** limits of liability bear to the total of all applicable limits. However, the total amount payable among all such policies will not exceed the limits provided by the single policy with the highest limits of liability.

2. Any insurance **we** provide under this policy for a **non-owned car** shall be excess over any other collectible insurance. The highest limits of liability shown on the **Declarations Page** of this policy for any one **your insured car** will apply.

## Part II - Uninsured Motorist and Underinsured Motorist Coverage

**Uninsured Motorist Bodily Injury**
**Underinsured Motorist Bodily Injury**
A. **Insuring Agreement – Uninsured Motorist Bodily Injury Coverage**

## Personal Auto Policy (continued)

If **you** pay **us** the premium when due for this coverage, **we** will pay for **damages** an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by an **insured person**, caused by an **accident**, and arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

**We** will pay under Part II only after the limits of liability under all liability policies applicable to an **uninsured motor vehicle** have been exhausted by payment of judgments or settlements.

**B.  Insuring Agreement - Underinsured Motorist Bodily Injury Coverage**

If **you** pay **us** the premium when due for this coverage, **we** will pay for damages an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** sustained by an **insured person**, caused by an **accident**, and arising out of the ownership, maintenance or use of an **underinsured motor vehicle**.

**We** will pay under Part II only after the limits of liability under all liability bonds and policies applicable to an **underinsured motor vehicle** have been exhausted by payment of judgments or settlements.

No judgment for **damages** arising out of a suit brought against the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** is binding on **us** unless **we** have:

1.  Received reasonable notice of the filing of the lawsuit resulting in the judgment; and

2.  Had a reasonable opportunity to protect **our** interests in the lawsuit.

An **insured person** must notify **us** in writing at least thirty (30) days before entering into any settlement with the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**, or that person's liability insurer. In order to preserve **our** right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, an owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**.

If **we** do this, the **insured person** shall assign to **us** all rights that **insured person** has against the owner or operator of the **uninsured motor vehicle** or **underinsured motor vehicle**, to the extent of **our** payment.

**C.  Additional Definitions Used in This Part Only**

1.  **Insured person** means:

   a.  **You**, any **family member** or any other person listed as an additional driver on the **Declarations Page**;

   b.  Any other person while **occupying your insured car**, provided the actual use or occupancy thereof is with the permission of the **named insured**; and

   c.  Any person entitled to recover **damages** for **bodily injury** covered under Part II of this policy sustained by a person meeting the definition of an **insured person** in 1.a. or 1.b. above.

   **Insured person** does not mean:

   Any person while operating a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ridesharing Program** or a similar arrangement.

2.  **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a **bodily injury** liability policy applies at the time of the **accident** but the sum of all applicable limits of liability for **bodily injury** is less than the full amount that an **insured person** is legally entitled to recover as **damages**.

   However, an **underinsured motor vehicle** does not include:

   a.  A land motor vehicle or trailer, if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle;

   b.  Any vehicle or equipment designed mainly for use off public roads, while not on public roads;

   c.  A vehicle owned by or furnished for the regular or frequent use of an **insured person** or any member of the household of the **insured person**;

   d.  Any vehicle or equipment to which coverage under Part I applies; or

   e.  Any vehicle or equipment that is an **uninsured motor vehicle**.

3.  **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

   a.  For which no liability policy or bond applies at the time of the **accident**;

   b.  To which a liability policy applies at the time of the **accident** but the insuring company:

      (1) Denies coverage;

      (2) Refuses to admit coverage except conditionally or with reservation; or

## ersonal Auto Policy (continued)

(3) Is or becomes insolvent, declared bankrupt, or subject to the appointment of a receiver within six (6) years after the **accident** occurs;

c. Which is a hit and run vehicle whose owner or operator cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:

(1) **You** or any **family member**;

(2) A vehicle which **you** or any **family member** are **occupying**; or

(3) **Your insured car.**

If there is no contact with the hit and run vehicle, the facts of the **accident** must be proved, and the **insured person** or someone on his or her behalf must file a police report and notify **us** within thirty (30) days, or as soon as practicable thereafter, that the **insured person** has a cause of action arising out of such **accident.**

However, **uninsured motor vehicle** does not include any vehicle:

a. Owned by an **insured person** or furnished or available for the regular use of an **insured person**;

b. Owned or operated by a self-insurer except a self-insurer which becomes insolvent;

c. Operated on rails or crawler treads or while located for use as a residence or premises;

d. Designed mainly for use off public roads, while not on public roads;

e. That is an **underinsured motor vehicle**; or

f. For which coverage under Part I applies.

). **Limits of Liability**

1. The limit of Uninsured Motorist and Underinsured Motorist Coverage shown on the **Declarations Page** is the most **we** will pay regardless of the number of:

a. **Insured person(s)**;

b. Claims made;

c. **Cars** or premiums shown on the **Declarations Page**;

d. **Cars** involved in the **accident**; or

e. Premiums paid.

E. **Non-Stacked Limit of Liability**

If **you** have selected non-stacked coverage under this Part II, the following shall also apply:

If the **Declarations Page** shows that a split limit applies:

1. The limit of liability shown on the **Declarations Page** for each person for Uninsured/Underinsured Motorist

Coverage is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, including all claims of others derived from such **bodily injury**, which include, but are not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of consortium, loss of services, loss of companionship, or injury to any personal relationship. **Bodily injury** to any one person includes all injury and **damages** to others resulting from this **bodily injury.**

2. Subject to this limit for each person, the limit of liability shown on the **Declarations Page** for each **accident** for Uninsured/Underinsured Motorist Coverage is **our** maximum limit of liability for all **damages** for **bodily injury** resulting from any one **accident.**

3. If the **Declarations Page** shows that a "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all **damages** resulting in any one **accident**. This is the most **we** will pay regardless of the number of:

a. **Insured person(s)**;

b. Claims made;

c. **Cars** or premiums shown on the **Declarations Page**; or

d. **Cars** involved in the **accident.**

4. In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked, unless **you** have purchased stacked coverage limits, as shown on **your Declarations Page**, to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.

F. **Limits of Liability Applicable to Both Stacked and Non-Stacked Coverage**

In determining the amount payable under this Part II the amount of **damages** that an **insured person** is entitled to recover for **bodily injury** will be reduced by all sums:

1. Paid or payable because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible. This includes all payments made to an **insured person's** attorney either directly or as part of the payment made to the **insured person;** and

2. Paid or payable because of **bodily injury** under any disability benefits law, or a similar law, except a workers' compensation law.

## Personal Auto Policy (continued)

However, if an **insured person** enters into a settlement agreement for an amount less than the sum of the limits of liability under all applicable **bodily injury** liability bonds and policies, **our** limit of liability for Underinsured Motorist Coverage shall not exceed the difference between the **damages** sustained by the **insured person** and the sum of the applicable **bodily injury** liability limits.

3. The limits of liability under this Part II shall be reduced by all sums paid under **Part I - Liability Coverage.**

4. No one will be entitled to duplicate payments for the same elements of **damages.**

5. If multiple auto policies issued by **us** are in effect for **you**, **we** will pay no more than the highest limit of liability for this coverage available under any one policy.

### G. Stacked Limit of Liability

If **you** have selected stacked coverage under this Part II, the following shall also apply to **bodily injury** sustained by **you** or a **family member**:

1. If **bodily injury** is sustained in an **accident** by **you** or any **family member**, the limit of liability shall be the limit available under Non-Stacked Limits of Liability described above and the limits shown on the **Declarations Page** multiplied by the number of **your insured cars** that are not listed on the **Declarations Page**.

2. If **you** or a **family member** sustain **bodily injury** while not **occupying your insured car**, the limit of liability shall be the limit shown on the **Declarations Page** multiplied by the number of **your insured cars**. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part I or Part II of this policy.

3. **We** will not make a duplicate payment under this coverage for any element of **damage** for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

4. Stacked Limits of Liability shall not increase the limit of liability applicable to any **insured person** other than **you** or a **family member**. The non-stacked limits of liability will apply to any **insured person** other than **you** or a **family member**. As with non-stacked limits, the limit of liability for each person is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, including all claims of others derived from such **bodily injury**, which include, but are not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of consortium, loss of services, loss

of companionship, or injury to any personal relationship. **Bodily injury** to any one person includes all injury and **damages** to others resulting from this **bodily injury**.

### H. Exclusions - What is Not Insured in Part II

Coverage under Part II does not apply:

1. If the **insured person** or their legal representative settles or prosecutes to a judgment a claim for **bodily injury** without **our** consent. However, this exclusion does not apply if such settlement does not adversely affect **our** rights.

2. To **bodily injury** arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;

   b. Documents;

   c. Newspapers; or

   d. Food.

   This exclusion does not apply to a share-the-expense car pool.

3. To **bodily injury** when an **insured person** is using a **car** without a reasonable belief that the person is entitled to do so.

4. To **bodily injury** sustained by **you** or any **family member** while **occupying** or when struck by any **car** owned by **you** or any **family member** which is not insured for this coverage under this policy under any similar form. This includes a trailer of any type used with that **car**.

5. To **bodily injury** sustained by a **family member** who does not own a **car** while **occupying** or when struck by, any **car you** own which is insured for this coverage on a primary basis under any other policy.

6. Directly or indirectly to benefit any insurer or self-insurer under any disability benefits law, or a similar law, except a workers' compensation law.

7. To any claim for punitive, exemplary, multiple damages, fines, penalties, or restitution.

8. To noneconomic loss sustained by any **insured person** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **uninsured motor vehicle** or an **underinsured motor vehicle**, unless the **bodily injury** sustained is a serious injury. This exclusion does not apply if an **insured person** is injured while **occupying** a **car** insured under a commercial motor vehicle insurance policy.

## Personal Auto Policy (continued)

9. To **bodily injury** for any **accident** that occurs while **your insured car** or any **car** is being used in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.

I. **Other Insurance**

1. If there is other applicable similar insurance available under more than one policy or provision of coverage:

   The following priorities of recovery apply:

   a. First, the uninsured motorist or underinsured motorist coverage applicable to the **car** the **insured person** was **occupying** at the time of the **accident**.

   b. Second, the policy affording uninsured or underinsured motorist coverage to the **insured person** as a **named insured** or **family member**.

   c. If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

2. If non-stacked coverage is shown on the **Declarations Page**, the following provisions also apply:

   a. When there is insurance available under the First priority:

      (1) The limit of liability applicable to the **car** the **insured person** was **occupying**, under the policy in the First priority, shall first be exhausted; and

      (2) The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for UM/UIM for any one **car** under any one policy providing coverage to **you** or any **family member**.

   b. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest limit of any one **car** under any one policy.

3. **We** will not pay for any **damages** which would duplicate any payment made for **damages** under other insurance.

J. **Arbitration**

1. If **we** and an **insured person** do not agree:

   a. Whether that **insured person** is legally entitled to recover **damages**;

   b. As to the amount of **damages** which are recoverable by that **insured person**;

from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If the parties cannot agree upon an arbitrator within 30 days, or if the two arbitrators cannot select a third arbitrator, either party may request that selection of an arbitrator be made by a judge of a court having jurisdiction.

2. Each party will:

   a. Pay the expenses it incurs; and

   b. Bear the expenses of the third arbitrator equally.

## Part III - First Party Benefits Coverage

**First Party Benefits Coverage**

A. **Insuring Agreement - Basic First Party Benefit**

**We** will pay, in accordance with the **Act**, the Basic First Party Benefit to or for an **insured person** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. Subject to the limit shown on the **Declarations Page**, the Basic First Party Benefit consists of:

1. Medical expenses. **Reasonable expenses** and **necessary medical services** incurred for an **insured person's**:

   a. Care;

   b. Recovery; or

   c. Rehabilitation.

   This includes remedial care and treatment rendered in accordance with a recognized religious method of healing. Medical expenses will be paid if incurred within 18 months from the date of the **accident** causing **bodily injury**.

   However, if within 18 months from the date of the **accident**, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

B. **Insuring Agreement - Added First Party Benefits**

If the **Declarations Page** indicates that Added First Party Benefits apply, **we** will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an **insured person** who sustains **bodily injury**. The **bodily injury** must be

## Personal Auto Policy (continued)

caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the **Act**.

Subject to the limits shown on the **Declarations Page**, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.
2. Work loss.
   a. Loss of income. Up to 80% of gross income actually lost by an **insured person** as a result of the **accident**.
   b. Reasonable expenses actually incurred to reduce loss of income by hiring:
      (1) Special help, thereby enabling an **insured person** to work; or
      (2) A substitute to perform the work a self-employed **insured person** would have performed.

   However, work loss does not include:
   a. Loss of expected income or expenses incurred for services performed after the death of an **insured person**; or
   b. Any loss of income, or expenses incurred for services performed, during the first five (5) working days the **insured person** did not work due to **bodily injury**.
3. Funeral expenses. Funeral or burial expenses actually incurred if **bodily injury** causes an **insured person's** death.
4. Accidental death. A death benefit paid if **bodily injury** causes the death of **you** or any **family member**. **We** will pay accidental death to the executor or administrator of the deceased **insured person's** estate. If there is no executor or administrator, the benefit shall be paid to:
   a. The deceased **insured person's** surviving spouse; or
   b. If there is no surviving spouse, the deceased **insured person's** surviving children; or
   c. If there is no surviving spouse or children, to the deceased **insured person's** estate.

C. **Insuring Agreement – Combination First Party Benefits**

If the **Declarations Page** indicates that Combination First Party Benefits apply, **we** will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an **insured person** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the **Act**.

**We** will only pay for expenses or loss incurred within three (3) years from the date of the **accident**.

Subject to the limits shown on the **Declarations Page**, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

1. Medical expenses.
2. Work loss.
3. Funeral expenses.
4. Accidental death.

D. **Insuring Agreement – Extraordinary Medical Benefits Coverage**

Limited Benefits: Extraordinary Medical Benefits Coverage provides coverage only for medical expenses.

**Warning**

**You** should be aware that Extraordinary Medical Benefits Coverage does not apply to the first $100,000 of medical expenses incurred by an **insured person**. **You** can avoid having to pay some of **your** own medical bills by purchasing Added First Party Benefits Coverage with a $100,000 limit of liability for medical expenses.

If the **Declarations Page** indicates that Extraordinary Medical Benefits Coverage applies, **we** will pay, in accordance with the **Act**, extraordinary medical benefits to or for an **insured person** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**.

Subject to the limit shown on the **Declarations Page**, extraordinary medical benefits consist of reasonable and necessary medical expenses incurred for an **insured person's** care, recovery or rehabilitation. This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether **you** have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, **we** will pay extraordinary medical benefits only after $100,000 of medical expenses has been incurred by any one **insured person** as a result of any one **accident**.

**We** do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an **insured person** as a result of an **accident**.

E. **Additional Definitions Used in This Part Only**

1. The **Act** refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

## Personal Auto Policy (continued)

2. **Bodily injury** means accidental bodily harm to a person and that persons resulting illness, disease or death.

3. **Insured person** as used in Part III means:
   a. **You** or any **family member**.
   b. Any other person while:
      (1) **Occupying your insured car**; or
      (2) Not **occupying** a **motor vehicle** if injured as a result of an **accident** in Pennsylvania involving **your insured car**.

   If **your insured car** is parked and unoccupied it is not a **motor vehicle** involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

   **Insured person** does not mean:

   Any person while operating a **car** that is available for hire or while using a **car** that is part of a **Personal Car Sharing Program**, a **Commercial Ridesharing Program** or a similar arrangement.

4. **Motor vehicle** means a self-propelled vehicle operated or designed for use upon public roads.

   However, **motor vehicle** does not include a vehicle operated:
   a. By muscular power;
   b. On rails or tracks.

5. **Necessary medical services** mean treatment, accommodations, products or services which are determined to be necessary by a licensed health care provider unless they shall have been found or determined by a State-approved Peer Review Organization (PRO).

6. **Reasonable expenses** mean an amount for a medical service that is the lowest of:
   a. The charges that are usual among providers of similar **necessary medical services** in the region in which those services are provided;
   b. Any fee schedule and any protocols applicable to the type of **necessary medical services** that were provided in the State where the services were provided, including but not limited to, fee schedules applicable to no-fault benefits, personal injury protection benefits and medical payments coverage;
   c. The amount agreed upon between the **insured person's** medical provider and any third party concerning charges for medical expenses, if **we** have a contract with that third party;
   d. The fees that are agreed to by the medical provider and **us**;

   e. If applicable, the amount that Medicare paid to the **insured person's** health care provider for medical expenses; or
   f. The amount that the **insured person's** medical provider agreed to accept from the **insured person's** health insurance carrier.

7. **Your insured car** means a private passenger vehicle:
   a. To which Part I of this policy applies and for which a specific premium is charged; and
   b. For which First Party Benefits Coverage required by the **Act** is maintained.

   If **your insured car** is parked and unoccupied, it is not a **motor vehicle** involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

F. **Exclusions That Apply to Part III – First Party Benefits Coverage**

   **We** do not provide First Party Benefits Coverage for **bodily injury:**

1. Sustained by any **insured person** while intentionally causing or attempting to cause **bodily injury** to himself or any other person.

2. Sustained by any **insured person** while committing a felony.

3. Sustained by any **insured person** while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any **insured person** while maintaining or using a **motor vehicle** knowingly converted by that **insured person**. However, this exclusion does not apply to **you**.

5. Sustained by any **insured person** who, at the time of the **accident**, is:
   a. The owner of one or more registered **motor vehicles**, none of which have in effect the financial responsibility required by the **Act**; or
   b. **Occupying** a **motor vehicle** owned by that **insured person** for which the financial responsibility required by the **Act** is not in effect.

6. Sustained by any **insured person** maintaining or using a **motor vehicle** while located for use as a residence or premises.

7. Sustained by any **insured person** while **occupying** a:
   a. Recreational vehicle designed for use off public roads; or
   b. Motorcycle, moped or similar-type vehicle.

## Personal Auto Policy (continued)

8. Sustained by a pedestrian if the **accident** occurs outside of Pennsylvania. However, this exclusion does not apply to **you** or any **family member**.
9. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental);
   b. War (declared or undeclared);
   c. Civil war;
   d. Insurrection; or
   e. Rebellion or revolution.
10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. Nuclear reaction;
    b. Radiation; or
    c. Radioactive contamination.
11. Sustained while **your insured car** or any **car** is being used in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.
12. Arising out of the ownership, maintenance or operation of **your insured car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:
    a. Products;
    b. Documents;
    c. Newspapers; or
    d. Food.

    This exclusion does not apply to a share-the-expense car pool.
13. Sustained while **occupying** a **car** other than a **car** listed on the **Declarations Page** while the **car** is being used in the **business** of an **insured person**.

### G. Limits of Liability

1. The limits of liability shown on the **Declarations Page** for the First Party Benefits that apply are the most **we** will pay to or for each **insured person** as the result of any one **accident**, regardless of the number of:
   a. Claims made;
   b. **Cars** or premiums shown on the **Declarations Page**;
   c. **Cars** involved in the **accident**; or
   d. Insurers providing First Party Benefits.
2. If Combination First Party Benefits are afforded, **we** will make available at least the minimum limit required by the **Act** for the Basic First Party Benefit. This provision will not change **our** maximum limit of liability.

3. Any amounts payable under Part III shall be excess over any amounts:
   a. Paid;
   b. Payable; or
   c. Required to be provided;
   to an **insured person** under any workers compensation law or similar law.
4. The limit of liability shown on the **Declarations Page** for Extraordinary Medical Benefits Coverage is the most **we** will pay to or for each **insured person** as the result of any one **accident**, regardless of the number of:
   a. Claims made;
   b. **Cars** or premiums shown on the **Declarations Page**;
   c. **Cars** involved in the **accident**; or
   d. Insurers providing Extraordinary Medical Benefits.
5. Extraordinary medical benefits are subject to an annual limit of $50,000 for each **insured person**. However, this limit does not apply to medical expenses incurred within 18 months from the date the **insured person** incurs $100,000 of medical expenses as a result of the **accident**.
   a. Any amounts payable under this coverage shall be excess over any amounts available to an **insured person** for medical expenses under Basic, Added or Combination First Party Benefits Coverage.
   b. If an **insured person** is eligible for benefits under both this coverage and the Catastrophic Loss Trust Fund, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown on the **Declarations Page**.

### H. Priorities of Policies

1. **We** will pay First Party Benefits in accordance with the order of priorities set forth by the **Act**. **We** will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category is the lowest level of priority.

   The priority order is:
   a. First, the insurer providing benefits to the **insured person** as a **named insured**.
   b. Second, the insurer providing benefits to the **insured person** as a **family member** who is not a **named insured** under another policy providing coverage under the **Act**.

# Personal Auto Policy (continued)

c. Third, the insurer of the **motor vehicle** which the **insured person** is **occupying** at the time of the **accident**.

d. Fourth, the insurer of any **motor vehicle** involved in the **accident** if the **named insured** is not:

    (1) **Occupying** a motor **vehicle**; and

    (2) Not entitled to First Party Benefits under any other automobile policy.

2. An unoccupied parked **motor vehicle** is not a **motor vehicle** involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

3. If two or more policies have equal priority within the highest applicable priority level:

    a. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the Fourth priority, pro ration shall be based on the number of involved **motor vehicles**.

    b. If **we** are the insurer against whom the claim is first made, **our** payment to or for an **insured person** will not exceed the applicable limit of liability for First Party Benefits Coverage shown on the **Declarations Page**.

    c. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

I. **Other Insurance**

1. No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance including self-insurance.

2. Any amount payable under Part III shall be excess over any amounts paid, payable or required to be provided to an insured under any workers' compensation law or similar law.

## Part IV – Damage to Your Car

**Comprehensive**
**Collision**
**Towing and Road Service**

A. **Insuring Agreement**

    1. **Comprehensive Coverage**

Subject to the limits of liability, **we** will pay for a loss to **your insured car**, its **additional equipment** and any **non-owned car** caused by any direct, sudden and accidental means other than **collision**, less any applicable deductibles, if Comprehensive Coverage is shown on **your Declarations Page**. Any deductible amount will apply separately to each loss. If loss to more than one **your insured car** or **non-owned car** results from the same insured loss, only the lowest applicable deductible will apply.

If breakage of glass results, **you** may elect to have it treated as loss caused by **collision**.

    2. **Collision Coverage**

Subject to the limits of liability, **we** will pay for loss to **your insured car**, its **additional equipment** and any **non-owned car** caused by any direct, sudden and accidental **collision**, less any applicable deductibles, if Collision Coverage is shown on **your Declarations Page**. Any deductible amount will apply separately to each loss. If loss to more than one **your insured car** or **non-owned car** results from the same **collision**, only the lowest applicable deductible will apply.

In addition, **we** will pay, without applying the deductible, the reasonable cost to replace any child safety seat damaged in an **accident** to which this coverage applies.

Notice: If **you** buy collision coverage, it does not apply to **cars** rented for a term of more than thirty (30) days. Any coverage provided for a rented **car** is excess to any other insurance. Read the definition of **non-owned car** for a description of the types of rented **cars** covered by this policy.

    3. **Towing and Road Service Coverage**

    a. If **your Declarations Page** shows Towing and Road Service Coverage, then subject to a maximum limit of $150 for each disablement and subject to the Service Call Conditions and exceptions in this insuring Agreement, if **your insured car** becomes disabled and **you** need help, **we** are providing **you** access to 24-hour toll-free assistance. Service includes

**Personal Auto Policy** (continued)

the towing and labor costs related to a mechanical disablement for:

(1) Towing;

(2) Jump starts;

(3) Tire changes;

(4) Lock-out service; and

(5) Fluid delivery, including the cost of fuel, oil, water or other fluids. **We** will pay for the cost of fuel, once per **your insured car** per policy period.

b. Service Call Conditions are as follows:

(1) Towing to dislodge the **car** from its place of disablement must be within 100 feet of a public street or highway;

(2) Labor must be performed at the place of mechanical disablement;

(3) **We** do not pay for the cost of fuel that exceeds more than once per **your insured car** per policy period;

(4) **We** do not pay for the cost for tires, fuel, belts, keys, parts or tools associated with the service or labor being performed; and

(5) Any service costs in an amount in excess of **our** maximum per disablement limit must be paid directly to the service provider by **you** at the time of service.

c. Towing and Road Service Coverage does not apply to:

(1) recreational vehicles,

(2) motorhomes,

(3) towed **cars**,

(4) motorcycles, or

(5) stored **cars**

even if the **car** is considered to be **your insured car**.

B. **Additional Definitions Used in This Part Only**

1. **Actual Cash Value** means the fair and reasonable cash price for which property can be repaired or replaced in the marketplace at the time of loss. The price includes an allowance for depreciation, physical deterioration and obsolescence.

2. **Additional equipment** means any furnishing or **equipment** that is permanently attached to **your insured car** and common to its use, but is not the **car's** factory available furnishing or **equipment**.

a. This includes, but is not limited to:

(1) Any video, electronic sound reproducing or transmitting **equipment**, and its component

parts, media and data, including but not limited to DVD, Game System or MP3 player;

(2) Any painted, chrome or finished surface, whether refinished in whole or in part, of any **car** insured under this Part where the claim exceeds the cost of duplicating the **car's** factory applied surface finish;

(3) Tires, wheels, rims, spinners, grilles, louvers, side pipes, hood scoops or spoilers or any exterior surface, body or exhaust **equipment**, or modification thereto, which exceeds the cost of repairing or replacing the **car's** factory available **equipment**;

(4) Any engine, transmission or suspension parts, or modification thereto, which exceeds the cost of repairing or replacing the **car's** factory available **equipment**;

(5) GPS navigational systems;

(6) Special carpeting, insulation, wall paneling, furniture or bars;

(7) Facilities for cooking or sleeping including enclosures or bathroom facilities;

(8) Height-extending roofs; or

(9) Custom murals, paintings or other decals or graphics.

b. **Additional equipment** does not mean:

(1) **Additional equipment** not permanently installed that is designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting **equipment**. This applies to such **equipment** as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television, or **equipment** designed or used for the detection or location of radar or laser. It also applies to any electronic device incorporating any of this **equipment**, as well as accessories, component parts and antennae;

(2) Tapes, discs, records, reels, cassettes, cartridges, media, data, carrying cases or other devices for the use with **equipment** designed to reproduce, record, receive, play or transmit audio, visual or data signals;

(3) A camper body or trailer;

(4) Awnings, cabanas, or **equipment** designed to create additional living facilities;

(5) Wear and tear losses to **additional equipment** including, but not limited to:

**Personal Auto Policy** (continued)

(a) scorching,

(b) marring,

(c) scratching, or

(d) breakage, except breakage to glass permanently attached to **your insured car** or breakage of internal **additional equipment**; whether attached or not; or

(6) Newly acquired **additional equipment** unless **you** report such items to **us** within thirty (30) days after **you** have taken delivery and **we** agree to provide coverage.

3. **Collision** means the upset of **your insured car** or **non-owned car** or its impact with another **car** or object. **Collision** does not mean loss caused by or due to:

   a. Missiles;

   b. Falling objects;

   c. Fire;

   d. Theft or larceny;

   e. Explosion;

   f. Earthquake;

   g. Windstorm;

   h. Hail, water or flood;

   i. Malicious mischief or vandalism;

   j. Riot or civil commotion;

   k. Colliding with a bird or animal; or

   l. Breakage of glass.

4. **Diminution in value** means the actual or perceived loss in market or resale value that results from a sudden, direct and accidental loss.

5. **Equipment** means **equipment** permanently attached to **your insured car** and common to its use. . .

6. **Household Pet** means a fully domesticated animal owned by **you** for personal companionship, such as a dog, a cat, a reptile, a bird or a rodent. **Household Pet** does not include any type of horse, cow, pig, sheep, goat, chicken, turkey, or captive fur-bearing animal, or any animal commonly kept for food or profit.

7. **Like kind and quality parts** means parts similar in type, condition and quality to those parts made for or by the original **car** manufacturer. These parts may be made for or by the original **car** manufacturer or may come from other sources such as manufacturers or suppliers of rebuilt parts, quality recycled (used) parts suppliers and non-original **equipment** manufacturers.

C. **Supplementary Payments**

1. **Transportation Expense Due to Theft**

   If **your Declarations Page** shows Comprehensive Coverage, **we** will pay for transportation expenses incurred by **you** because of the total theft of **your insured car**. **We** will pay up to $30 per day, but no more than $900 each loss. This coverage begins 48 hours after the theft has been reported to **us** and to the police and ends when the **car** is returned to use or when **we** offer settlement for the loss.

2. **Clothing or Luggage**

   **We** will pay up to, but not more than, $200 for loss of clothing or luggage in **your insured car** and belonging to **you** or a **family member** if the loss is caused by:

   a. **Collision** of **your insured car**, if Collision Coverage is shown on **your Declarations Page**;

   b. Fire, lightning, flood, earthquake, explosion, falling aircraft, or the entire theft of **your insured car**, if loss occurs to **your insured car** from the same cause and Comprehensive Coverage is shown on **your Declarations Page**.

3. **Household Pets**

   a. If **your Household Pets** are inside **your insured car** during a total theft and Comprehensive Coverage is shown on **your Declarations Page** for that **your insured car**, **we** will pay reasonable amounts up to $600 for the loss of any and all such **Household Pets** because of that covered total theft loss.

   b. If **your Household Pets** are inside of **your insured car** at the time of a loss due to **collision**, and Collision Coverage is shown on **your Declarations Page** for that **your insured car**, **we** will pay reasonable amounts up to a total of $600 for the veterinary care, burial, and/or disposal of all such **Household Pets** arising out of their injury or death during an insured loss.

D. **Exclusions - What is Not Insured in Part IV**

**We** do not insure loss:

1. Arising out of the ownership, maintenance or operation of **your insured car** or **non-owned car** while it is being used to carry persons or property for compensation or a fee, including but not limited to the pick up or delivery or return from a pick up or delivery of:

   a. Products;

   b. Documents;

**Personal Auto Policy** (continued)

c. Newspapers; or

d. Food.

This exclusion does not apply to a share-the-expense car pool.

2. Caused by:

a. war (declared or undeclared);

b. civil war;

c. insurrection;

d. rebellion;

e. revolution;

f. nuclear radiation exposure or contamination;

g. radioactive contamination or exposure;

h. biological contamination, exposure or attack; or

any consequence of any of these.

3. Caused by theft to **equipment** designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting **equipment**.

a. This applies to such **equipment** as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television, or **equipment** designed or used for the detection or location of radar or laser.

b. It also applies to any electronic device incorporating any of this **equipment**, as well as accessories and antennas.

c. This exclusion does not apply to that **equipment** which is permanently installed in **your insured car**.

4. Consisting of the theft of tapes, records, reels, cassettes, cartridges, discs, carrying cases or other devices for use with **equipment** designed for the reproduction of sound.

5. To a **utility trailer** owned by **you** or a **family member** and not listed on the **Declarations Page**. But, coverage does apply to a **utility trailer** ownership of which **you** acquire during the policy period if **you** ask **us** to insure it within thirty (30) days after **you** acquire it.

6. Due and confined to:

a. wear and tear;

b. freezing; or

c. mechanical or electrical breakdown or failure.

This exclusion does not apply if damage results from the total theft of **your insured car** or the burning of wiring.

7. To permanently attached or detachable camper body, slide-on camper, tonneau covers, or a camper shell.

8. To **your insured car** or **non-owned car** due to increased cost of repair or replacement of the following furnishings or equipment:

a. Special carpeting, insulation, wall paneling, furniture or bars;

b. Dining, kitchen and sleeping facilities including enclosures or bathroom facilities;

c. Height-extending roofs;

d. Murals, special paint and/or methods of painting, decals or graphics.

9. Due to lack of routine maintenance including but not limited to lack of lubricant, coolant, or loss resulting from seepage of water.

10. To any **non-owned car** being maintained or used by any person while employed or otherwise engaged in the **business** of:

a. selling,

b. repairing,

c. servicing,

d. storing, or

e. parking

**cars**. This includes the road testing and delivery of any **non-owned car**.

11. Resulting from an insured person participating in, or **you**r **insured car** or **non-owned car** being used in racing, speed, demolition, stunt or performance driving contest demonstration, instruction or activity, or in practice or preparation for any such activity or while operating on a driving track designed for racing or high performance driving.

12. Caused by or consisting of mold, fungi or bacteria regardless of the factors causing or contributing to its growth.

13. Due to theft or conversion of **your insured car**:

a. By **you**, a **family member** or any resident of **your** household;

b. Prior to its delivery to **you** or a **family member**; or

c. While in the care, custody or control of anyone engaged in the **business** of selling **cars**.

14. From theft or unlawful conversion by any person after custody of **your insured car** has been entrusted to another party for the purpose of selling or leasing **your insured car**.

15. To tires, unless caused by fire, malicious mischief, vandalism, theft, or unless the damage occurs at the same time and from the same cause as other covered damage.

16. Caused intentionally by, or at the direction of, an insured person, whether or not such person intended to cause

## Personal Auto Policy (continued)

damage of any nature. However, this exclusion does not apply to a loss to **your insured car** to the extent of the legal interest of **you** or a **family member** who:

   a. Sustains the loss as the result of family violence by:

     (1) **You**,

     (2) A **family member**,

     (3) A former spouse or person who entered into a civil union with the **named insured**, or

     (4) Any person who resides in or has resided in **your** household;

   b. Did not direct, participate in, or consent to the intentional act causing the loss; and

   c. Filed a family violence complaint against the person who caused the violence resulting in the loss.

17. Due to destruction or confiscation by governmental or civil authorities.

18. To any **non-owned car** with less than four wheels.

19. To **Household Pets** that are injured or die from heat, dehydration, or exposure to weather or to other animals from any covered loss under Part IV.

20. To **car** parts and **equipment** that are illegal. There is also no coverage for parts and **equipment** that are installed at a location on the insured **car** that would make the use of such parts or **equipment** illegal. However, **we** will pay for the legal version of such parts or **equipment** if they are necessary for the safe operation of the insured **car**.

21. To **your insured car** or any **car** while that **car** is being used in a **Personal Car Sharing Program**, a **Commercial Ridesharing Program**, any **prearranged ride**, or a similar arrangement.

22. To **your insured car** due to **diminution in value**.

23. To **your insured car** while it is leased or rented to others.

E. **Additional Duties for Part IV - Damage to Your Car**

In addition to the terms and conditions of this policy a person seeking coverage under Part IV of this policy must also comply with the following provisions:

1. Take reasonable steps after loss to protect **your insured car**, or any **non-owned car**, and its **equipment** from further loss. **We** will pay reasonable expenses incurred to do this.

2. Notify the police within 24 hours or as soon as practicable if **your insured car** or any **non-owned car** is stolen.

3. Permit **us** to inspect and appraise the damaged property before it is repaired or disposed of.

F. **Payment of Loss**

1. **We** will pay the loss in money, or repair or replace damaged or stolen property.

   a. **We** may, at any time before the loss is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **Declarations Page** with payment for the resulting damage.

   b. **We** may keep all or part of the property at the agreed or appraised value.

   c. If **we** pay for loss in money, **our** payment will include, where required by law, the applicable sales tax and fees for the damaged or stolen property.

2. **We** may settle any loss with **you**, the owner, or the lienholder of the property shown on the **Declarations Page**.

G. **Limits of Liability**

1. **Our** limits of liability for an insured loss to **your insured car**, **non-owned car** or its **equipment** will not exceed the cost that is necessary to repair or replace the damaged or stolen property or parts with **like kind and quality parts** less an adjustment for physical deterioration and depreciation. The limits are also subject to all other adjustments set forth in this section.

2. The cost to repair or replace will be calculated based on the lowest of:

   a. The **Actual Cash Value** of the stolen or damaged property at the time of the loss, reduced by the applicable deductible; or

   b. The amount necessary to repair or replace the stolen or damaged property, reduced by the applicable deductible.

Any amount payable by **us** to repair or replace damaged property or parts will be reduced by the cost of labor, parts, and materials to repair prior damage, deterioration and defects to the property or parts that had not been repaired prior to the loss.

3. The limits of liability shall be reduced by any amount of loss that has been paid under any other insurance that insured this same loss.

4. The most **we** will pay for:

   a. Loss to a **utility trailer** not owned by **you** or a **family member** is $500;

   b. Loss to **additional equipment** is a total of $1,000 for repair or replacement for any one loss, unless indicated otherwise on the **Declarations Page**:

## Personal Auto Policy (continued)

Multiple items of **additional equipment** lost or damaged in the same event are considered to be one loss;

c. Loss to **Household Pets** for any one insured loss is $600 regardless of how many **Household Pets** were stolen, injured or killed as a result of that insured loss.

5. **We** will pay reasonable and necessary storage costs for **your insured car**, its **equipment** and **additional equipment** following an insured loss.

6. If **you** purchased coverage for **additional equipment** that is identified on a Customization Report, **our** limits of liability for loss to that covered **additional equipment** shall be the lesser of:

   a. The amount of coverage shown on the Customization Report;

   b. The **Actual Cash Value** of the stolen or damaged **additional equipment**; or

   c. The amount necessary to repair or replace that stolen or damaged **additional equipment**.

   The amount **you** receive will not include any reduction in the value of that **additional equipment** after it has been repaired, as compared to the value before it was damaged.

7. If repair or replacement results in better than **like kind and quality parts**, **we** will not pay for the amount of the betterment. Betterment for which **you** will be responsible includes the value relating to the increase in the useful life of replaced parts that have a limited useful life and the increase in value from the repair of the prior damage. Any deductions that **we** take for betterment will be taken only for parts or a specific repair process normally subject to repair or replacement during the useful life of **your insured car**. Deductions will be limited to an amount equal to the proportion that the expired life of the part or specific repair process to be repaired or replaced bears to the normal useful life of that part or repair process.

8. If a loss to auto safety glass is repaired rather than replaced, the deductible applying to this coverage is waived. If the auto safety glass is replaced, the deductible applying to this coverage will remain in force.

9. Any payment **we** make will be reduced by the value of the salvage when **you** or the owner of the **car** retains the salvage.

10. No one will be entitled to duplicate payments for the same elements of loss.

11. Payments for loss covered under Part IV are subject to no more than one deductible for any one insured loss. If two

or more deductibles apply to any one insured loss, only the lowest deductible will apply.

12. A **car** and attached **utility trailer** for which coverage is provided under this Part are considered one **your insured car**, and for any insured loss to such **car you** will only pay one applicable deductible.

H. **Preservation of Salvage**

If **we** retain the salvage after a loss, **we** have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

I. **No Benefit to Bailee**

This coverage shall not directly or indirectly benefit any carrier or other bailee for hire.

J. **Legal Action Against Us**

No legal action related to this policy or the claims that **you** have presented may be brought against **us** under Part IV unless filed within two (2) years of the date of the **accident**.

K. **Other Insurance**

If other insurance also insures the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable insurance, self-insurance, and/or protection limits or amounts regardless of source. However, any insurance **we** provide with respect to a **rental car**, **substitute car**, or non-owned **utility trailer** shall be excess over any other collectible insurance, self-insurance, and any other source of recovery applicable to the loss.

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance being provided under Part IV of this policy, the total amount payable among all such policies shall not exceed the limit of liability of the single policy providing the highest limit of liability.

L. **Appraisal**

If **we** and **you** do not agree on the amount of loss, then **we** and **you** may agree to an appraisal of the loss. If **we** and **you** agree to an appraisal, each party will select a competent appraiser and notify the other party in writing of the appraiser's identity within thirty (30) days of the request for appraisal. The two appraisers will select an umpire. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two will be binding.

Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**Personal Auto Policy** (continued)

We and you do not waive any of our rights under this policy by agreeing to an appraisal.

## Part V - Duties After an Accident and General Conditions

### A. Duties After an Accident

In addition to the terms and conditions of this policy, an insured person claiming any coverage under any Part of this policy must:

1. Upon our request at any time before or during the policy term, make any car, or utility trailer that you insure or intend to insure available for inspection by us to the extent permitted by law.

2. Refrain from voluntarily making any payment, assuming any obligation, or incurring any expenses except for bail bonds and first-aid expenses for others.

3. Report all theft losses to the police within 24 hours or as soon as reasonably practicable.

4. As soon as reasonably practicable, inform us of any accident or loss and of all details, including the date and time it occurred, the location where it occurred, the facts and circumstances of the accident, the identity of persons involved, the license plate information of the cars involved, and injury and witness information.

5. Protect your insured car from further loss. We will pay reasonable expenses to guard against further loss. If you don't protect your insured car, further loss is not covered.

6. Cooperate with us and assist us in the investigation and settlement of any claim or defense of any claim or lawsuit. If we ask, that insured person must also help us obtain payment from anyone who may be jointly responsible for the accident.

7. Allow us to inspect and appraise the damaged property before it is repaired, destroyed or discarded.

8. Allow us, with your consent, to move your insured car, at our expense, to a storage facility of our choice. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved your insured car to a storage facility of our choice.

9. Submit to statements and or examinations under oath as often as we reasonably require, separately and apart from others, and to sign the transcript.

10. Provide us with copies of any documents that we reasonably require at the time of the examination under oath and any other time, and allow the copying of

any documents we or our designated representative requests. This includes producing any documents that we identify as being reasonable and necessary to investigate and process your claims. Such documents must be provided to us or our designated representative in a timely manner, and if requested, prior to an examination under oath.

11. Authorize us to obtain:

    a. Medical reports and records;

    b. Any documents we indicate are necessary to investigate and process your claim; and

    c. Event data recorders and/or sensing and diagnostic modules or any other recording device for the purpose of retrieving data following an accident or loss.

12. Provide any written sworn proofs of loss we require, including all details we may need to determine the amounts payable.

13. Send or provide us, as soon as reasonably practicable, copies of all legal papers you receive relating to any claim or suit.

### B. General Conditions

1. **Policy Period and Territory**

   This policy applies only to accidents occurring during the policy period shown on the Declarations Page if the accidents occur within the United States, its territories or possession, Puerto Rico and Canada, or while your insured car is being shipped between their ports.

2. **Your Duty to Report Changed Circumstances**

   a. Your policy was issued in reliance on the information you provided us at time of application, including information concerning any cars and persons insured by the policy. You agree to cooperate with us in determining if the information you provided and upon which we relied to issue this policy is correct and complete. You agree by acceptance of this policy that all information shown on the Declarations Page of your policy and on the Application is accurate.

   b. You agree that if any information changes, is incorrect or incomplete, you will notify us as soon as reasonably practicable to change it. If we determine any information is incorrect or incomplete, we may change it. Based upon any new information you report or we may discover we may adjust your coverage and premium accordingly during the policy period. Any recalculation by us of your premium, or any changes we make to your coverage, based on

**Personal Auto Policy** (continued)

new information acquired, will be made using the rules, rates and forms used in **your** state as of the date of the change.

c. Some of the types of information **you** must notify **us** about include but are not limited to:

(1) A change of **your** mailing address or the principal garaging of any **your insured car**;

(2) New drivers residing in **your** household;

(3) Any persons who become new regular users of **your insured car(s)**;

(4) **You** or any **family member** obtains a driver's license or operator's permit;

(5) Changes in the use of **your insured cars**; or

(6) Changes in **your** discount eligibility.

3. **Coverage Changes**

When **we** broaden coverage during the policy period without charge, the policy will automatically provide the broadened coverage when effective in **your** state. **We** may make other changes or replace this policy, to conform to coverage currently in use at the next policy period.

4. **Legal Action Against Us**

No legal action may be brought against **us** until there has been full compliance with all the terms and conditions of this policy. No person or organization has any right under this policy to bring **us** into any action brought to determine the liability of an insured person.

5. **Transfer of Your Interest**

Interest in this policy may not be assigned without **our** written consent. But, if the **named insured** on the

**Declarations Page** dies, the policy will insure, until the end of the policy period:

a. Any **family member**;

b. The legal representative of the deceased **named insured** while acting within the scope of duties of a legal representative; or

c. Any person having proper custody of **your insured car** until a legal representative is appointed.

6. **Our Right to Recover Payment**

a. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover **damages** from another **we** shall be subrogated to that right. That person shall do:

(1) whatever is necessary to enable **us** to exercise **our** rights, and

(2) nothing after loss to prejudice **our** rights.

However, **our** rights in this paragraph do not apply under Part IV, against any person using **your insured car** with a reasonable belief that the person is entitled to do so.

b. If **we** make a payment under this policy and the person to or for whom payment is made recovers **damages** from another, that person shall:

(1) hold in trust for **us** the proceeds of the recovery; and

(2) reimburse **us** to the extent of **our** payment.

c. If **we** exercise **our** right to recovery against another, **we** will also attempt to recover any deductible incurred by an insured person under this policy. **We** reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. **We** reserve the right to reduce reimbursement of the deductible by the proportion that the amount **we** recover bears to the total amount of **our** subrogated claim. **We** will also reduce reimbursement of the deductible by the proportionate share of the collection expenses including attorney fees incurred with **our** recovery efforts. **We** will not recover the deductible if **you** instruct **us** not to.

7. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any insured person.

8. **Termination**

a. **Cancellation**

(1) **You** may cancel this policy by calling **us** or giving **us** advance notice of the future date cancellation is to take effect.

(2) **We** may cancel this policy during the policy period by mailing a notice of cancellation to the **named insured**.

(3) **We** will give at least fifteen (15) days notice of cancellation if:

(a) **We** cancel during the first fifty-nine (59) days of the initial policy period.

(b) The policy is canceled for nonpayment of premium.

farmers.com

## Personal Auto Policy (continued)

(4) **We** will give at least sixty (60) days notice in all other cases.

(5) **We** may cancel this policy for any reason if the notice is mailed within the first fifty-nine (59) days of the initial policy period. After this policy has been in effect for more than fifty-nine (59) days, or if this is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:

   (a) Nonpayment of premium;

   (b) If the driver's license or motor vehicle registration of the **named insured** shown on the **Declarations Page** has been under suspension or revocation during the policy period;

   (c) A determination that the insured has concealed a material fact, or has made a material allegation contrary to fact or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by **us**; or

   (d) Any other reason permitted by law.

(6) **Our** right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

(7) The effective date and time of cancellation stated in the notice shall become the end of the policy period.

(8) Any cancellation will be effective for all persons and all **cars**.

b. **Nonrenewal**

If **we** decide not to renew or continue this policy, **we** will mail notice to **you**:

(1) At least fifteen (15) days before the end of the policy period for nonpayment of premium or if the driver's license of the **named insured** has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

(2) At least change to sixty (60) days before the end of the policy period in all other cases. However **our** right to non-renew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

c. **Automatic Termination**

(1) If **we** offer to renew or continue and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. If **you** fail to pay the required renewal or continuation premium when due, this shall mean that **you** have not accepted **our** offer. All coverage associated with any **car you** own will automatically terminate upon the sale or transfer of **car** ownership.

d. **Other Termination Provisions**

(1) The effective date and time of cancellation stated in the notice shall become the end of the policy period.

(2) Any cancellation will be effective for all coverages for all persons and **cars** insured under this policy.

(3) If this policy is canceled, **you** may be entitled to a premium refund. Any refund due will be computed on a daily pro rata basis.

(4) **Our** making or offering to make a refund is not a condition of cancellation.

9. **Misrepresentation or Fraud**

a. This policy was issued in reliance on the information provided on **your** insurance application, including, but not limited to information regarding the license and driving history of **you**; **family members**; all persons of driving age residing in **your** household; the description of the **cars** to be insured; the location of the principal place of garaging; and **your** place of residence.

b. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

c. **We** may void this policy if **you** or any insured person have engaged in fraudulent conduct or have concealed, omitted, or misrepresented any material fact or circumstance concerning the application, issuance, renewal or continuation of this policy.

d. **We** may void this policy or deny coverage for an **accident** if **you** or any insured person have concealed, omitted or misrepresented any material fact or circumstance, or engaged in fraudulent

## Personal Auto Policy (continued)

conduct, in connection with the presentation or settlement of a claim.

e. Each and every statement of fact made by any insured person in the application or any subsequent application for insurance or renewal, which is made part hereof, is agreed to be material.

f. **We** may void this policy for fraud or misrepresentation even after the occurrence of an **accident**. This means that **we** will not be liable for any claims or **damages** that would otherwise be covered.

g. If **we** void this policy, it will be void from its inception (void ab initio), and no coverage will be provided whatsoever.

h. To the extent that **we** make payments to **you** under this policy and **our** subsequent investigation reveals **your** involvement in fraud or misrepresentation in the presentation of a claim, **you** must indemnify **us** for all payments made.

### 10. Terms Conformed to Statutes

a. This policy shall be deemed amended to conform to the statutes of the state listed in **your** application if any provision fails to conform to such statutes. Any dispute as to coverages or the provisions of this policy shall be determined and governed by the law of the state listed in **your** application as **your** residence.

b. Policy terms, which conflict with the laws of the state in which this policy issued, are hereby amended to conform to such laws.

### 11. Proof of Mailing

**We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

### 12. Policy Fee

A Policy Fee applies to this policy, if set forth on the **Declarations Page**. The fees are fully earned and are not refundable, unless required by state law. However, if **we** cancel **your** policy during the initial policy period, policy fees will be refunded to **you** in full.

### 13. Additional Benefits and Services

**We** may work with independent merchants to try to provide **you** with the best possible value for services and replacement of **your** property. If **we** are able to negotiate any benefits or discounts with these merchants, **we** may extend those benefits to **you** by advising **you** of their availability. **You** will have to contact any identified merchants yourself and deal directly with them. **We**

would never provide any information about **you** to them. **You** are under no obligation to ever contact any of the merchants. **We** are not obligated to expand or continue to make available any such benefits.

### 14. Policy Notices

**We** may mail or, unless prohibited by law, deliver policy notices to **you**. If a lienholder is named in this policy, any notices **we** give to the lienholder may be mailed or delivered. When mailed, the United States Postal Service or its licensed agents or vendors may forward such notices to an updated address per any change of address that **you** have presented to or filed with the United States Postal Service. In addition, **we** may update **our** policy records to reflect this updated address and/or **we** may address future policy notices to this updated address. Except where prohibited by law, a policy notice under this Policy Notices condition will be deemed "mailed" or "delivered" if it is delivered by electronic transmittal or facsimile.

### 15. Payment

At the policy's inception, if **you** make a premium payment using a nonnegotiable instrument such as a check or debit card with insufficient funds, the policy is null and void and is not subject to the Cancellation provisions of the policy. If **you** make a premium payment for a renewal of **your** policy using a nonnegotiable instrument, **our** offer of policy renewal is deemed rejected by **you** and the policy terminated without renewal.

### 16. Joint and Individual Interests

If there is more than one **named insured** on this policy, any **named insured** may cancel or change this policy. The action of one **named insured** will be binding on all persons provided coverage under this policy.

### 17. Loss Payable Provisions

a. It is agreed that at **our** option, any payment for damage to the **car** listed in this policy shall be paid as interest may appear to the **named insured** and the lienholder shown on the **Declarations Page**, or through the repair of the damaged **car**.

(1) When **we** provide payment to the lienholder, the payment will be the lowest of the actual cash value of **your insured car** or the existing loan balance, whichever is less.

(2) Any change in title or ownership of the **car**, or error in its description shall not void coverage afforded to the lienholder.

## Personal Auto Policy (continued)

b. The policy does not insure **you** or any lienholder for **damages** due to:

(1) conversion;

(2) embezzlement;

(3) secretion;

(4) fraudulent acts;

(5) material misrepresentation or omission; or

(6) intentional damages

by **you**, any **family member** or anyone acting under the direction of either of you.

c. When a payment is made to the lienholder, **we** are entitled to all the rights of the lienholder to the extent of such payment.

(1) The lienholder shall do whatever is necessary to secure such rights.

(2) No subrogation shall impair the right of the lienholder to recover the full amount of its claim.

d. **We** reserve the right to cancel this policy at any time as provided by its terms.

(1) In case of cancellation or lapse **we** will give notice to the lienholder as required under the law.

(2) Cancellation will terminate the policy and this agreement as to any interest of the lienholder.

18. **Limited Material Damage Coverage in Mexico**

WARNING - LIMITED COVERAGE IN MEXICO - READ THIS WARNING CAREFULLY

A. **Car accidents** in Mexico are subject to the laws of Mexico only - NOT the United States of America.

1. With respect to **car accidents**, the laws of the United States and of Mexico are different. For example, in Mexico all **car accidents** are a criminal matter. In the United States, most **car accidents** are only a civil matter. If **you** do not have valid Mexican automobile liability insurance and **you** have an **accident**, **you** may spend time in a Mexican jail or have **your car** impounded.

2. This policy does not provide liability insurance in Mexico. **You** only have coverage for material damage to **your insured car**. It does not provide

valid automobile liability coverage in Mexico. **You** should purchase valid automobile liability coverage from a licensed Mexican insurance company before driving into Mexico.

B. Limited Mexico Coverage

1. If **your insured car** includes Comprehensive Coverage and Collision Coverage as shown on the **Declarations Page**, then Comprehensive Coverage and Collision Coverage are extended on a limited basis when **your insured car** is within Mexico.

2. This limited coverage applies only when:

a. The loss occurs while **your insured car** is within 50 miles of the United States border;

b. **Your insured car** is in Mexico for infrequent trips that do not exceed five (5) consecutive days at any one time, and do not exceed twenty-three (23) days in any calendar month;

c. **Your insured car** is garaged only in the United States;

d. **Your insured car** is maintained, operated, driven or used in Mexico only by **you** or a **family member** who lives in the United States; and

e. **Your insured car** is returned to the United States after a loss for **our** inspection. Any cost for towing and transportation that is required to return **your insured car** to the United States for **our** inspection, or for salvage operations of the **car** while within Mexican territory, are not covered under this policy.

The insurance provided by this provision will be excess over any other collectible insurance.

19. **Car Sharing**

**You** must disclose in writing to **us your** participation as either a driver or **car** owner, in any **Personal Car Sharing Program**, **Commercial Ridesharing Program** or other similar arrangement. Failure to do so may result in the rescission, cancellation or nonrenewal of **your** policy.

## Personal Auto Policy (continued)

### Special Provisions

The Company named on the **Declarations Page** has caused this policy to be signed by the officers shown below.

*Secretary*

*Vice-President*



# Policy Notices

## Notice to Policyholders – Vehicle Safety and Driver Improvement Course Discount

Farmers offers several premium discounts for vehicle safety features and driver improvement course. These discounts are described below:

### Passive Restraint Discount (Passive Front Seat Belts, Air Bags)

To qualify, the motor vehicle must be equipped with a factory-installed air bag or other passive restraint system which meets Federal Safety Standards. "Passive Restraint" is defined as any frontal automobile protection system which requires no action of the vehicle occupants.

The discount applies to all First Party Benefits (FPB) coverage.

### Anti-Theft Device Discount

To qualify, the motor vehicle must be equipped with a passive anti-theft device. A passive anti-theft device is defined as any item or system installed in an automobile which is activated automatically when the operator turns the ignition key to the off position and which is designed to prevent unauthorized use. The term does not include an ignition interlock provided as a standard anti-theft device by the original automobile manufacturer.

The discount applies to Comprehensive coverage.

### Motor Vehicle Driver Improvement Course Discount

The discount applies to all named insureds who are at least 55 years of age and have voluntarily completed a motor vehicle driver improvement course within the past three years. Such course must have been approved by the Department of Transportation and original certification presented to the Company. After this three year period, the course must be successfully repeated and evidence furnished in order to again qualify for the discount.

If the course was required by a court or other governmental entity resulting from a traffic infraction, the discount shall not apply.

An insured shall not be eligible for the discount if during a three year period after course completion: (1) the insured was involved in a chargeable accident, (2) the insured was convicted of a moving violation as defined in Pennsylvania statute title 75 section 1535, or (3) the insured was convicted or accepted Accelerated Rehabilitative Disposition for driving under the influence of alcohol or any controlled substance.

The discount applies to all coverages, including: Bodily Injury, Property Damage, First Party Benefits, Uninsured Motorist, Underinsured Motorist, Comprehensive, and Collision coverages.

25-2911    5-15

## Policy Notices (continued)

---

### Notice of Tort Options

The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:

A. "Limited Tort" Option - This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

B. "Full Tort" Option - This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

25-2914   4-99

---

### Personal Automobile Basic Coverage Disclosure Pennsylvania

**Policy Number:** **19612-65-17**

*Insured's Name:*   Chad Werley
Olivia Werley
8188 Leaser Rd
Kempton, PA 19529-8970

*Agency Name:*   Justin Pradel

### Vehicle Description

| Vehicle | Year | Make | Model | Vehicle Identification Number |
|---|---|---|---|---|
| 1 | 1999 | Jeep | Grand Cherokee 4D 4X4 Lar | 1J4GW58S1XC608967 |

The laws of the Commonwealth of Pennsylvania require that you purchase liability and first-party medical benefit coverages only as follows:

Liability coverage with minimum limits of $15,000 per person, $30,000 per accident for bodily injury, $5,000 for property damage each accident, and $5,000 medical benefit each accident.

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The premium for basic coverage on your policy is:

---

farmers.com   Policy No. 19612-65-17                                    (Continued Next Page)

## Policy Notices (continued)

| Coverages | Premium | Vehicle 1 |
|---|---|---|
| Combined Bodily Injury and Property Damage Liability $35,000 Each Accident; or | | |
| Bodily Injury $15,000 Each Person $30,000 Each Accident | | $155.10 |
| Property Damage $5,000 Each Accident | | $135.90 |
| Medical Benefit $5,000 Each Accident | | $19.40 |
| Premium for coverages and limits shown above | | $310.40 |

Thank you for choosing Farmers® for your Auto insurance. We appreciate your business. If you have questions about this notice or your insurance coverage, please contact your Farmers agent.

25-3098     2-11

## Important Notice to the Policyholder

Pennsylvania State Law requires us to notify the insured of the following:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

25-3885     2-11

## Pennsylvania Surcharge Disclosure Statement

In accordance with Pennsylvania State Law, we provide this surcharge disclosure plan to explain our system of driving record points. This statement provides an overview; more detailed information is available upon request. Driving record points are assigned to operators for chargeable accidents and violations. All accidents and violations occurring in the 36-month period prior to policy inception are considered in developing a driver's policy premium. If a driver is added mid-term, accidents and violations will be charged for the entire 36-month period prior to the driver being added to the policy. Point surcharges follow the driver. To determine if the accident or violation took place in the chargeable period, we use the occurrence date instead of the conviction date. We charge for accidents and violations occurring while a driver is operating a private passenger automobile.

**Accidents -** We assess a surcharge of approximately 45% for each at-fault accident charged to an operator. Accidents are chargeable if, as a result of the accident, the insurer incurs at least $1,700 in losses in excess of any deductible for personal injury or damage to property, including the insured's. Accidents noted on the Comprehensive Loss Underwriting Exchange (CLUE) report will be considered

## Policy Notices (continued)

"at-fault" if payments were made under liability coverages in the amount of $1,700 or more on or after July 1, 2017, $1,550 or more between July 1, 2014 and June 30, 2017, $1,450 or more between July 1, 2011 and June 30, 2014, and $1,350 or more between July 1, 2008 and June 30, 2011 for the minimum accident threshold. At-fault accidents where the insurer incurs less than $1,700 on or after July 1, 2017, $1,550 between July 1, 2014 and June 30, 2017, $1,450 between July 1, 2011 and June 30, 2014, and $1,350 between July 1, 2008 and June 30, 2011 in losses in excess of any deductible for personal injury or damage to property, including the insured's, are classified as at-fault not chargeable (AFN) and assigned to the Not-at-fault group.

**Minor Violations** – We assess a surcharge of approximately 45% for the second and each subsequent conviction of routine traffic infractions like speeding or failure to yield. Most of these infractions are listed in 75 Pa C.S. Section 1535.

**Major Violations** – We assess a surcharge of approximately 59% for each conviction of a violation which suggests the presence of a materially increased risk in a motorist. Such major violations include vehicular homicide, leaving the scene of an accident involving death or injury, or fleeing a police officer.

**Driving While Intoxicated** – We assess a surcharge of approximately 38% for each Driving While Intoxicated infraction for conviction under Section 3731 (Driving under the influence of alcohol or controlled substance), notice of Section 1534 (Acceptance of Accelerated Rehabilitative Disposition), or any similar infraction.

**Unverifiable Driving Record** – Four (4) driving record points (a surcharge of approximately 59%) will be assessed on any operator whose driving record cannot be verified by a state's Bureau of Motor Vehicles. The points will be removed if Farmers Insurance Group is able to obtain a valid MVR within 30 days of policy inception. The date assigned to the points will be the day before the policy's inception date.

Drivers 18 years of age and younger will not be charged unverifiable driver record points. Drivers with learner's permits will not be charged during the first policy term. However, the points will be assessed during the second and subsequent policy terms if an MVR remains unobtainable.

**Foreign Driver's License** – One (1) driving record point (a surcharge of approximately 19%) will be assessed on any operator who does not have a valid U.S. or Canadian license, but has had an international driving permit. Those points are deleted beginning with the first renewal after a valid U.S. license has been obtained, maintained for 12 months, and reported to Farmers Insurance Group.

25-5943   2-17

# Farmers Insurance Group of Companies®
# Privacy Notice



This notice describes our privacy policies and procedures in safeguarding information about customers and former customers that obtain financial products or services for personal, family or household purposes. **Please note that if state law is more protective of an individual's privacy than federal privacy law, we will protect information in accordance with state law while also meeting federal requirements.**

## Information we collect

We collect and maintain personal information to provide you with coverage, products or services and to service your account.

We collect certain information ("nonpublic personal information") about you and the members of your household ("you") from the following sources:

- Information you provide on applications or other forms, such as your social security number, assets, income and property information;

- Information about your transactions with us, our affiliates or others, such as your policy coverage, premiums and payment history;

- Information from your visits to farmers.com or other websites we operate, use of our mobile sites and application, use of our social media sites, and interaction with our online advertisements; and

- Information we receive from a consumer reporting agency or insurance support organization, such as motor vehicle records, credit report information and claims history; and

- If you obtain a life, long-term care or disability product, information we receive from you, medical professionals who have provided care to you and insurance support organizations regarding your health.

## How we protect your information

We restrict access to personal information about you to individuals, such as our employees and agents, who provide you with our products and services. We require individuals with access to your customer information to protect it and keep it confidential. We maintain physical, electronic, and procedural safeguards that comply with applicable regulatory standards to guard your nonpublic personal information. We do not disclose any nonpublic personal information about you except as described in this notice.

## Information we disclose

We may disclose the nonpublic personal information we collect about you, as described above, to companies that perform marketing services on our behalf or to other financial institutions with which we have joint marketing agreements and to other third parties, all as permitted by law. Many employers, benefit plans or plan sponsors restrict the information that can be shared about their employees or members by companies that provide them with products or services. If you have a relationship with Farmers or one of its affiliates as a result of products or services provided through an employer, benefit plan or plan sponsor, we will follow the privacy restrictions of that organization.

We are permitted to disclose personal health information:

(1) to process a transaction, for instance, to determine eligibility for coverage, to process claims or to prevent fraud;
(2) with your written authorization, and
(3) otherwise as permitted by law.

## Sharing information with affiliates

The Farmers Insurance Group® of Companies includes affiliates that offer a variety of financial products and services in addition to insurance. Sharing information enables our affiliates to offer you a more complete range of products and services.

We may disclose nonpublic personal information, as described under **Information we collect**, to our affiliates, which include:

- Financial service providers such as insurance companies and reciprocals, investment companies, underwriters and brokers/dealers.

- Non-financial service providers, such as management companies, attorneys-in-fact and billing companies.

We are permitted by law to share information with our affiliates about our transactions with you. In addition, we may share consumer report information, such as information from credit reports and certain application information, received from you and from third parties, such as consumer reporting agencies and insurance support organizations.

# Farmers Insurance Group of Companies® Privacy Notice (continued)

## Your choice

If you prefer that we not share consumer report information with our affiliates, except as otherwise permitted by law, you may request an Opt-Out Form by calling toll free, 1-800-327-6377, (please have all of your policy numbers available when requesting Opt-Out Form). A form will be mailed to your attention, please verify that all of your Farmers policy numbers are listed and if not, please add them to the form. Once completed, mail it to the return address printed on the form. We will implement your request within a reasonable time after we receive the form.

**If you decide not to opt-out or if you have previously submitted a request to opt-out on each of your policies, no further action is required.**

## Modifications to our privacy policy

We reserve the right to change our privacy practices in the future, which may include sharing nonpublic personal information with nonaffiliated third parties. Before we make any changes, we will provide you with a revised privacy notice and give you the opportunity to opt-out of that type of information sharing.

## Website

Our website privacy notices contain additional information about website use. Please review those notices if you transmit personal information to Farmers over the Internet.

## Recipients of this notice

While any policyholder may request a copy of this notice, we are providing this notice to the named policyholder residing at the mailing address to which we send your policy information. If there is more than one policyholder on a policy, only the named policyholder will receive this notice. You may receive more than one copy of this notice if you have more than one policy with Farmers. You also may receive notices from affiliates, other than those listed below.

## More information about the federal laws

This notice is required by federal law. For more information, please visit farmers.com.

## Signed

Farmers Insurance Exchange, Fire Insurance Exchange, Truck Insurance Exchange, Mid-Century Insurance Company, Farmers Insurance Company, Inc. (A Kansas Corp.); Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance of Columbus, Inc.; Farmers New Century Insurance Company, Farmers Group, Inc.; Farmers Reinsurance Company, Farmers Services Insurance Agency, Farmers Services Corporation, Farmers Texas County Mutual Insurance Company, Farmers Underwriters Association, Farmers Value Added, Inc.; Farmers Financial Solutions, LLC member FINRA & SIPC*; FFS Holding, LLC; Farmers Services, LLC; ZFUS Services, LLC; Leschi Life Assurance Company, FIG Holding Company, FIG Leasing Co., Inc.; Fire Underwriters Association, Illinois Farmers Insurance Company, Mid-Century Insurance Company of Texas, Prematic Service Corporation (California), Prematic Service Corporation (Nevada), Texas Farmers Insurance Company, Farmers New World Life Insurance Company, Truck Underwriters Association, Civic Property and Casualty Company, Exact Property and Casualty Company, Neighborhood Spirit Property and Casualty Company and Farmers Life Insurance Company of New York.

The above is a list of the affiliates on whose behalf this privacy notice is being provided. It is not a comprehensive list of all affiliates of the Farmers Insurance Group® of Companies.

* You may obtain more information about the Securities Investor Protection Corporation (SIPC) including the SIPC brochure by contacting SIPC at (202) 371-8300 or via the internet at www.sipc.org. For information about FINRA and Broker Check you may call the FINRA Broker Check hotline at (800) 289-9999 or access the FINRA website at www.finra.org.

**farmers.com**

# Insurance Information and the Use of Consumer Reports



When you applied for insurance, you provided information regarding your previous auto insurance coverage. In addition to the information you provided, we ordered a Current Carrier report and considered the following information, in part, in determining your premium: previous lapses in coverage, liability coverage limits, duration of prior liability coverage, type of prior carrier, or a lack of prior liability insurance coverage. As a result of the information received, we were unable to offer you a lower available rate.

We received the report from the consumer reporting agency shown below:

Current Carrier
LexisNexis Consumer Center
P.O. Box 105108
Atlanta, GA 30348-5108
1-800-456-6004
www.consumerdisclosure.com

Under the Fair Credit Reporting Act, you have a right to obtain a free copy of your report from any consumer reporting agency shown above. This request must be made no later than 60 days after you receive this notice. In addition, if you find any inaccurate or incomplete information in the report, you may dispute the report with the consumer reporting agency. Please note the consumer reporting agency provided the report but did not make any decision regarding your policy and would not be able to provide an explanation of the reasons for our action. If you have any questions, please contact your Farmers® agent or visit Farmers.com.

# EXHIBIT B





# EXHIBIT C

Chad Werley
June 29, 2022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

MID-CENTURY INSURANCE COMPANY,         :

                Plaintiff,          : CIVIL DIVISION

                                :

        vs.                        : Civil Action Number:

                                : 5:21-cv-05592

CHAD WERLEY and JANE WERLEY,            :

individually and as parents and        : JURY TRIAL DEMANDED

guardians of LEVI WERLEY, a minor. :

              Defendants.          :

- - -

JUNE 29, 2022

        Oral deposition of CHAD WERLEY, held at the

offices of KOZLOFF STOUDT, located at 2640 Westview

Drive, Wyomissing, Pennsylvania on Wednesday, June 29,

2022, at approximately 9:59 a.m., before Erin Gaffney,

Court Reporter and Notary Public in and of the

Commonwealth of Pennsylvania.

1    APPEARANCES:

2

3    ON BEHALF OF THE PLAINTIFF:

4    MARGOLIS EDELSTEIN

5    BY:  CANDACE N. EDGAR, ESQUIRE

6    214 Senate Avenue, Suite 402

7    Harrisburg, Pennsylvania 17011

8    (717) 760-7504

9    cedgar@margolisedelstein.com

10

11   ON BEHALF OF THE DEFENDANTS:

12   KOZLOFF STOUDT

13   BY:  PETER F. SCHUCHMAN, ESQUIRE

14   2640 Westview Drive

15   Wyomissing, Pennsylvania 19610

16   (610) 670-2552

17   pschuchman@kozloffstoudt.com

18

19   ALSO PRESENT:  JANE WERLEY, LEVI WERLEY

20

21

22

23

24

25

Chad Werley
June 29, 2022

```
1                          INDEX

2                        -   -   -

3

4    WITNESS:                              PAGE:

5    CHAD WERLEY                              4

6

7

8                       EXAMINATION

9    BY:  MS. EDGAR                           4

10

11

12                        EXHIBITS

13   NAME                DESCRIPTION       PAGE

14   EXHIBIT 1            Photograph        11

15   EXHIBIT 2            Photograph        28

16   EXHIBIT 3     Auto Insurance Application  37

17

18

19

20

21

22

23

24

25
```

Chad Werley
June 29, 2022

1                              -   -   -

2              CHAD WERLEY, after having been duly sworn, was

3        examined and testified as follows:

4                              -   -   -

5              COURT REPORTER:  Thank you.

6                              -   -   -

7                         DIRECT EXAMINATION

8                              -   -   -

9    BY MS. EDGAR:

10   Q.        Good morning.

11   A.        Morning.

12             MR. SCHUCHMAN:  We will read and sign.

13   BY MS. EDGAR:

14   Q.        Can you please state your full name with the

15   spelling for the record?

16   A.        Chad Werley.  C-h-a-d, W-e-r-l-e-y.

17   Q.        Mr. Werley, my name is Candace Edgar.  I'm the

18   attorney with the law firm of Margolis Edelstein,

19   specifically I work out of Harrisburg.  We're here this

20   morning for your deposition in a lawsuit that's been

21   filed by my client, Mid-Century Insurance Company

22   involving a declaratory judgment action in the United

23   States District Court in the Eastern District.

24             You provided sworn testimony back, I believe, it

25   was February 29th or 28th of 2020 -- I'm sorry -- rather

Chad Werley
June 29, 2022

1    February 28th, 2020.

2            Do you recall doing so?

3    A.      Yes.

4    Q.      Because it's been more than two years since

5    you've provided that sworn testimony, I am going to go

6    over a few of the ground rules for your deposition here

7    today, just to make sure that we're all on the same

8    page.

9            As you can see, there's a court reporter here

10   who's transcribing everything that's being said.  It's

11   very important that we don't speak over one another.

12   She's not able to completely and accurately transcribe

13   what two people are saying at the same time.

14           So please let me finish my question fully before

15   moving on -- I'm sorry -- rather than beginning your

16   answer.  I'll make sure that you've completed your

17   answer fully then before moving on to my next question.

18           Do you understand?

19   A.      Yes.

20   Q.      It's also very important that all of your

21   responses be verbal or fully articulated.  That probably

22   sounds like a very obvious instruction, but what tends

23   to happen in our day-to-day communications is that we

24   will express ourselves nonverbally.  So gestures of our

25   hands, nods of our heads, even incomplete words such as

Chad Werley
June 29, 2022

```
 1     "uh-uh," "mmm-hmm."  Sitting across the table from you

 2     today, I'm going to understand how you're responding.

 3     Unfortunately, those sort of responses, once transcribed

 4     into the record, are not so clear as to how you're

 5     answering.

 6             So just to make sure that the transcript is as

 7     complete and accurate as possible, please do your best

 8     to fully verbalize your response.

 9     A.      Okay.

10     Q.      Do you understand?

11     A.      Yes.

12     Q.      If at any point today I ask a question and you

13     don't hear it, obviously just let me know you have not

14     heard the question, and I'm happy to repeat it.

15             Do you understand?

16     A.      Yes.

17     Q.      And if I've asked a question and it's confusing

18     to you in any way, again, I'm not here to try and trick

19     you.  If it's just an unclear question, sometimes it

20     just comes out in a way that's confusing, and certainly

21     not my intent.

22             All you need to do is let me know that you're

23     not understanding what I'm asking, and I'm happy to

24     re-ask the question until you do understand.

25             Does that make sense?
```

Chad Werley
June 29, 2022

```
 1   A.      Yes.
 2   Q.      Have you taken any sort of drugs, medications,
 3   or consumed any alcohol in the last 24 hours?
 4   A.      No.
 5   Q.      Is there any reason that you would not be able
 6   to hear my questions, understand them, and testify
 7   truthfully here today?
 8   A.      No.
 9   Q.      In February of 2020, you took an oath to tell
10   the truth.  Did you understand that?
11   A.      Yes.
12   Q.      And you understand that here today you've taken
13   that same oath to tell the truth?
14           Do you understand?
15   A.      Yes, yes.
16   Q.      Okay.  In preparation for your testimony here
17   today, did you review any documents?
18   A.      Not really, no.
19   Q.      When you say "not really," is that, yes, there
20   were documents you reviewed?
21   A.      I just went over some transcripts.
22   Q.      Okay.  What transcripts were those?
23   A.      From before.
24   Q.      Okay.  So your prior testimony from February of
25   2020?
```

Chad Werley
June 29, 2022

1   A.      Yes.

2   Q.      Did you review only your testimony?  Or did you

3   review your wife's and your son's?

4   A.      Mine.

5   Q.      Okay.  Yours alone?

6   A.      (Nonverbal response.)

7   Q.      Is that a "yes"?

8   A.      Yes.  Sorry.

9   Q.      It's all right.

10          Were there any other documents you reviewed?

11  A.      No.

12  Q.      Other than conversations with your lawyer, was

13  there anyone else that you spoke with in preparation for

14  your testimony today?

15  A.      No.

16  Q.      Okay.  Can you tell me, again, where you lived

17  on the date of this accident, which was June 29th of

18  2019, which was actually three years to the day.

19  A.      8188 Leaser Road, Kempton.

20  Q.      And with whom did you reside at that address?

21  A.      My wife and my son and my daughter.

22  Q.      What vehicles did you have in your residence on

23  that date?

24  A.      All of them?

25  Q.      Yes.

Chad Werley
June 29, 2022

```
 1   A.       Okay.  2013 F-150, 2011 Tahoe.

 2            THE WITNESS:  Is that what it is?

 3            MR. SCHUCHMAN:  You don't get to ask her.

 4            THE WITNESS:  I know.  I want to make sure it's

 5   2011.

 6            MR. SCHUCHMAN:  Do your best.

 7            THE WITNESS:  2011.  1974 F-150, Jeep Cherokee,

 8   and a 2003 F-450.

 9   BY MS. EDGAR:

10   Q.       Were there any vehicles in the residence that

11   were not insured?

12   A.       Yes.

13   Q.       What vehicles were those?

14   A.       Cherokees.

15   Q.       You said "Cherokees," plural, like --

16   A.       Yeah.  Two Cherokees.

17   Q.       Okay.  And I'm assuming a Jeep Cherokee; is that

18   what you're referring to?

19   A.       Yes.

20   Q.       Were there any other vehicles in the residence

21   that were not insured on the date of this accident?

22   A.       I have a backhoe.

23   Q.       A backhoe?

24   A.       Yes.

25   Q.       Okay.  Anything else?
```

Chad Werley
June 29, 2022

```
 1   A.        That's it.
 2   Q.        Okay.  Now, on the date of this accident, did
 3   you own a dirt bike?
 4   A.        Yes.
 5   Q.        How many dirt bike -- dirt bikes or maybe it was
 6   just one?
 7   A.        Two.
 8   Q.        Two?
 9   Q.        Two dirt bikes?
10   Q.        What kind were those?
11   A.        Two Yamahas.
12   Q.        Do you recall specifically what type of Yamaha?
13   A.        YZ85 and PW80.
14   Q.        Were either of those dirt bikes insured on the
15   date of the accident?
16   A.        No.
17   Q.        Were either of those dirt bikes insured at any
18   point prior to the accident when you owned them?
19   A.        No.
20   Q.        Were one of those dirt bikes that you identified
21   for me involved in this accident?
22   A.        Yes.
23   Q.        Which one?
24   A.        YZ85.
25   Q.        When did you purchase that dirt bike?
```

Chad Werley
June 29, 2022

```
 1    A.       I don't remember.
 2    Q.       That's okay.  I'm going to mark as Exhibit 1 --
 3    looks like a picture that your lawyer provided.
 4             (Exhibit 1 was marked for identification.)
 5    BY MS. EDGAR:
 6    Q.       Do you recognize the document in front of you,
 7    sir?
 8    A.       Yes.
 9    Q.       What is it?
10    A.       First one I purchased, YZ85.
11    Q.       And specifically it looks like it's a
12    handwritten note --
13    A.       Yes.
14    Q.       -- is that right?
15             Okay.  Whose handwriting is on this note?
16    A.       Thomas.
17    Q.       Mr. Ballinger?
18    A.       Yes.
19    Q.       And do you know Mr. Ballinger outside of the
20    purchase of this dirt bike?
21    A.       No.
22    Q.       Okay.  When did Mr. Ballinger provide this to
23    you?
24    A.       When we bought the bike, same day.
25    Q.       Okay.  So it's effectively like a bill of sale?
```

Chad Werley
June 29, 2022

```
 1    A.      Yes.

 2    Q.      Okay.  Is there any other documentation other

 3    than what's in front of you for that sale?

 4    A.      No.

 5    Q.      Okay.  There is a signature about the middle of

 6    the page to the right-hand side.

 7            Is that your signature?

 8    A.      Yes.

 9    Q.      Okay.  And the signature that's to the left of

10    that, whose is that?

11    A.      That's Thomas's.

12    Q.      Mr. Ballinger, okay.

13            Have you spoken with Mr. Ballinger since the

14    purchase of this dirt bike?

15    A.      No.

16    Q.      Who owns the dirt bike?  Who owned the dirt bike

17    when it was purchased?

18    A.      I bought it.

19    Q.      Did you consider your wife or your son to be

20    owners or you alone?

21    A.      I bought it, so I guess me.

22    Q.      Okay.  You paid the $1,400 for the dirt bike?

23    A.      Yes.

24    Q.      Was there any sort of title transfer for the

25    dirt bike?
```

Chad Werley
June 29, 2022

```
1    A.      No.  There was no title.
2    Q.      Okay.  At any point from the time of your
3    purchase of this dirt bike until the date of the
4    accident, did you ever register it with Penn Dot?
5    A.      No.
6    Q.      Was there any reason that you chose not to
7    register it?
8    A.      Didn't need to.
9    Q.      Why not?
10   A.      Off road.
11   Q.      And when you say "off road," do you mean that it
12   would only be driven not on any Pennsylvania roadway?
13   A.      Yes.
14   Q.      Okay.  During the approximate -- let me back up
15   a little.
16           The date of the purchase that's listed on
17   Exhibit 1 is April 28th of 2017; is that correct?
18   A.      That is correct.
19   Q.      Okay.  So from that date, April 28th of 2017,
20   until June 29th of 2019, to your knowledge was the dirt
21   bike ever driven on a Pennsylvania roadway?
22   A.      No.
23   Q.      How or where -- where was the dirt bike driven
24   when it was ridden, if you know?
25   A.      Private property.
```

Chad Werley
June 29, 2022

```
 1    Q.       And how do you know that?

 2    A.       Because either my house, my friend's house,

 3    buddy of his.

 4    Q.       I understand that's where the dirt bike was

 5    driven, but my question was:  How do you know that?

 6    A.       Because we had to take it there.

 7    Q.       Who's we?

 8    A.       Me or friends of ours.

 9    Q.       What friends?

10    A.       Family friends, friends of the neighborhood,

11    neighbors.

12    Q.       Are there specific people to whom you're

13    referring?

14    A.       I would say it'd be the whole neighborhood.

15    Q.       And how many people is that?

16    A.       Twenty.

17    Q.       Okay.  So between April of 2017 and June of

18    2019, you believe that there were approximately 20

19    people in addition to yourself that would've transported

20    this dirt bike?

21    A.       I'm guessing because I can't remember who and

22    when and how.  That'd be my best guess, yes.  10.

23    Q.       Well, let me clarify something.  I certainly

24    don't want you guessing today --

25    A.       I know.
```

Chad Werley
June 29, 2022

```
 1    Q.        -- if you don't know, you don't know.

 2    A.        Okay.  10 to 20.

 3    Q.        Okay.  Let me finish my clarification though.

 4              If you're estimating or giving an approximation,

 5    that's appropriate, but just let me know that's what

 6    you're doing so then the context of your answer is fully

 7    understood.

 8              Does that make sense?

 9    A.        Yes.

10    Q.        Okay.  So you're not guessing, but if you're

11    able to provide an estimation or approximation, do you

12    know how many people in the time period that you owned

13    the dirt bike prior to this accident would've

14    transported it?

15    A.        I don't know.

16    Q.        Okay.  When it was transported, how was it

17    transported?

18    A.        Trailer, carrier rack, pickup.

19    Q.        And I want to make sure I understand:  It's

20    transported in that matter, so at no time it's actually

21    being driven on a public roadway?

22    A.        No.

23              MR. SCHUCHMAN:   In other words, that's correct?

24              THE WITNESS: Oh, yes.  It's not driven on the --

25    that's what I meant.
```

Chad Werley
June 29, 2022

```
1    BY MS. EDGAR:

2    Q.      That's okay.  I wasn't trying to trick you, I

3    just wanted to make sure I understand,.

4            The dirt bike, it was functional, it was

5    drivable, correct, prior to the accident?

6    A.      Yes.

7    Q.      Okay.  So it could've been driven mechanically

8    speaking on a public roadway, correct?

9    A.      No.

10   Q.      No, mechanically it could not have driven --

11   A.      Yes.  Mechanically, you can't drive it on the

12   roadway.  No.  So you can't drive it on the road.

13   Q.      I'm not trying to trick you, just listen to my

14   question.  Okay?  I understand that you're saying it was

15   never driven on a public roadway.  I understand that.

16   I'm trying to get clarification, though.

17           Is the reason it was never driven on a public

18   roadway in Pennsylvania because it mechanically couldn't

19   have functioned on a public roadway?

20           Do you understand my question?

21   A.      No, I don't.

22   Q.      Okay.  At the time of the accident -- let me

23   back up.

24           From the date of its purchase --

25   A.      It's not mechanically made for the road.  No.
```

Chad Werley
June 29, 2022

```
 1    Q.      Okay.

 2    A.      Doesn't have turn signals, don't have lights.

 3    Q.      Okay.

 4    A.      So, no, it's not made for the road.

 5    Q.      So you said it doesn't have a turn signal -- it

 6    didn't have a turn signal?

 7    A.      It does not have turn signals.

 8    Q.      Okay.  And, I'm sorry, you mentioned something

 9    else.  What was the other thing you just mentioned?

10    A.      It has no lights.

11    Q.      So you're talking headlights?

12    A.      All lights.

13    Q.      Brake lights too?

14    A.      (Non-verbal response.)

15    Q.      Okay.  Any other lights that it would maybe need

16    to have to drive on the roadway, if you know?

17    A.      Parking lights.

18    Q.      Okay.  Mechanically speaking, was there any

19    other reason that the dirt bike couldn't have been

20    driven on a Pennsylvania roadway at the time of this

21    accident?

22    A.      Does not have street tires.

23    Q.      Any other reason --

24    A.      I --

25    Q.      -- that you can remember?  If you don't remember
```

Chad Werley
June 29, 2022

```
1    anything else, that's fine.
2    A.        I don't remember.
3    Q.        Okay.  Other than the mechanical reasons you
4    just identified for me and the fact that the dirt bike
5    wasn't registered with Penn Dot, was there any other
6    reason that it couldn't have been operated on a public
7    roadway in Pennsylvania at the time of the accident?
8    A.        It's not made for a public road.
9              COURT REPORTER:  Can you repeat that?
10             THE WITNESS:  It's not made for a public road.
11   BY MS. EDGAR:
12   Q.        How so?
13   A.        It's not designed that way.
14   Q.        I understand, but like how so?  Dirt bikes can
15   be driven on public roadways in Pennsylvania, correct?
16   A.        No.
17   Q.        Is it your understanding that dirt bikes cannot
18   be driven on Pennsylvania roads?
19   A.        Yes.
20   Q.        Okay.  And do you know what that understanding
21   is based upon?
22   A.        It's not designed for public roadways.
23   Q.        What about the design makes it problematic to
24   drive them on public roadways?
25   A.        What do you mean by that?
```

Chad Werley
June 29, 2022

1   Q.      I'm trying to just understand your answer.  You
2   said dirt bike are not designed for public roadways.
3   I'm asking what about their design makes it problematic
4   for them to be able to operate on a public roadway?
5   A.      It'd have to be street legal.
6   Q.      And what would that entail?
7   A.      Lights and tires and suspension and...
8   Q.      Those things that you just identified for me?
9   A.      Yes.
10  Q.      Okay.  Anything else that would be required of
11  the dirt bike in your opinion to have made it street
12  legal at the time of this accident?
13  A.      I don't know.
14  Q.      Why was the dirt bike purchased?
15  A.      You have to rephrase that.
16  Q.      Did you not understand the question?  I just
17  asked, why was the dirt bike purchased?
18  A.      It's a sport, hobby.
19  Q.      Was it purchased for anyone's specific use?
20  A.      For my son.
21  Q.      Your son Levi?
22  A.      Mmm-hmm.
23  Q.      You only have one son, correct?
24  A.      Yeah.
25  Q.      I just want to clarify.  Okay.

Chad Werley
June 29, 2022

```
1              Other than Levi, was it your intent that anyone
2    else would drive the dirt bike when it was purchased?
3    A.       No.
4    Q.       After you purchased it, did anyone else drive
5    the dirt bike other than Levi as intended?
6    A.       No.
7    Q.       Prior to the accident, do you know how
8    frequently Levi used or rode the dirt bike?
9    A.       Every other weekend, maybe.
10   Q.       Would it depend on the weather or season --
11   A.       Yes, yes.
12   Q.       I would imagine, -did he drive it more when the
13   weather was nicer and obviously less when it wasn't?
14   A.       Yes.
15   Q.       So that every other weekend estimation that you
16   gave for me, would that be typical of like spring, fall,
17   summertime when the weather was good?  Or more of a time
18   when the weather was colder and not so good?
19   A.       Spring, summer, fall.
20   Q.       Okay.  When he would ride the dirt bike every
21   other weekend on average, where would he ride it?
22   A.       The neighborhood, cabin.
23   Q.       Would this be your cabin or someone else's?
24   A.       Family.
25   Q.       And where is that located?
```

Chad Werley
June 29, 2022

```
 1    A.       Columbia County.

 2    Q.       How often would you ride it at the cabin?

 3    A.       Five times a year maybe.

 4    Q.       Do you have a lot of property at the cabin?

 5    A.       What's that?

 6    Q.       Is there a lot of property at the cabin?

 7    A.       Yes.

 8    Q.       Approximately how much?

 9    A.       Fifty acres.

10    Q.       You also said you would ride it in your

11    neighborhood.

12             How big is your neighborhood?

13    A.       You have to rephrase that.

14    Q.       So every neighborhood is different.  Do you know

15    how many houses are in what you're referring to as your

16    neighborhood?

17    A.       Is that how many houses?

18    Q.       Yeah.  I'm trying to just get a rough idea of

19    what the size of your neighborhood is.

20    A.       Well, it's very rural, so...

21    Q.       Okay.

22    A.       I mean, that's why I'm saying, how do you want

23    me to tell you the answer to that?  Acres?  Miles?

24    Q.       I would say however -- when you say "my

25    neighborhood," however it's easy for you to kind of
```

Chad Werley
June 29, 2022

1    quantify the size of what you're referring to.  Whether

2    that's acres, houses, people, however it's easiest for

3    you.

4    A.       10-mile radius.

5    Q.       Okay.  10-mile radius from your home?

6    A.       Yes.

7    Q.       Approximately how many neighbors' properties

8    would he ride the dirt bike on?

9    A.       Ten.

10   Q.       Okay.  And those ten neighbors' property would

11   be in addition to your own; is that right?

12   A.       Mine would be 11.

13   Q.       Okay.  So in addition.

14            Were you always with Levi when he rode the dirt

15   bike?

16   A.       No.

17   Q.       Would he ever ride the dirt bike by himself?

18   A.       Yes.

19   Q.       To your knowledge, when he would ride the dirt

20   bike, would there be other dirt bikes or vehicles

21   around?

22   A.       Yes.

23   Q.       How often did that occur?

24   A.       I don't know.

25   Q.       Would that be typical of when he drove the dirt

Chad Werley
June 29, 2022

```
 1    bike that other dirt bikes and other vehicles would be
 2    around?
 3    A.      Yes.
 4    Q.      Now, at the time of the accident, Levi was 15
 5    years old, correct?
 6    A.      Yes.
 7    Q.      So would it be fair to say he didn't have a
 8    Pennsylvania driver's license, correct?
 9    A.      Yes.
10    Q.      So he would -- he didn't have a class M or
11    motorcycle Pennsylvania's driver's license, correct?
12    A.      Correct.
13    Q.      Okay.  When Levi would take the dirt bike to
14    use, to your knowledge would he allow anyone else to use
15    it like his friends, for example?
16    A.      No.
17    Q.      It's your understanding that only Levi was the
18    one riding the dirt bike?
19    A.      Yes.
20    Q.      Okay.  Other than yourself, would there be
21    anyone else who would have knowledge of when and how
22    Levi used this dirt bike prior to the accident?
23    A.      No.
24    Q.      Would the neighbors who would be transporting
25    the dirt bike have knowledge of how it was used after it
```

Chad Werley
June 29, 2022

```
1    was transported to a specific location?

2    A.       I'm sure sometimes.  Yeah.

3    Q.       Okay.  So do you know who those neighbors are

4    that you're referring to?

5    A.       Well, I can't remember.

6    Q.       You don't remember?

7    A.       Everybody.  I mean, that's a long time ago.

8    Q.       Well, a few years.  Do you still live at the

9    same --

10   A.       Yes.

11   Q.       -- the same home?

12   A.       Yeah.

13   Q.       Do you still have most of the same neighbors?

14   A.       Yes.

15   Q.       So is there anyone that comes to mind as to who

16   would've been involved in either transporting the dirt

17   bike or would've been present when Levi would be using

18   it?

19   A.       I would say the whole neighborhood.

20   Q.       So the Baileys, for instance, do you consider

21   them a neighbor?

22   A.       Yes.

23   Q.       Okay.  And the Baileys own the property where

24   this accident took place; is that correct?

25   A.       No.
```

Chad Werley
June 29, 2022

```
1    Q.      Okay.  Did the accident take place on the

2    adjoining property to the Baileys?

3    A.      Yes.

4    Q.      Okay.  Do you know the individuals who own that

5    property?

6    A.      I only met them once.

7    Q.      Okay.  When did you meet them?  Before or after

8    the accident?

9    A.      Before.

10   Q.      And did you learn their name or do you know who

11   they are?

12   A.      I can't think of it off the top of my head

13   because they don't live there.

14   Q.      Okay.  At the time of this accident, was Levi

15   operating the dirt bike with your permission?

16   A.      Yes.

17   Q.      Was there ever a time that Levi used the dirt

18   bike prior to the accident without your permission?

19   A.      No.

20   Q.      Is the dirt bike self-propelled?

21   A.      Yes.

22   Q.      It's not propelled with human force, correct?

23   A.      Correct.

24   Q.      Would you consider the dirt bike to be a

25   personal assistive mobility device like a scooter?
```

Chad Werley
June 29, 2022

1          MR. SCHUCHMAN:  Objection to the form.  Go ahead
2    and answer that.
3          THE WITNESS:  Yes.
4    BY MS. EDGAR:
5    Q.     You would consider it to be an electrical
6    personal assistive mobility device?
7          MR. SCHUCHMAN:  Objection to the form.  Go ahead.
8    Electrical wasn't in your earlier question.
9          MS. EDGAR:  Sure.  Let me rephrase the question.
10   BY MS. EDGAR:
11   Q.     Do you consider the dirt bike that was involved
12   in this accident to be an electrical personal assistive
13   mobility device?
14         MR. SCHUCHMAN:  If you don't understand the
15   question, say "I don't understand the question."
16   BY MS. EDGAR:
17   Q.     Do you -- is it the phrasing that's confusing to
18   you?  Do you know what an electrical personal mobility
19   devise is?
20   A.     I want you to describe that.
21   Q.     An electrical mobility assistive device is the
22   language that's used in the statute to define what a
23   motor vehicle is not.
24         An example that I would propose of that would be
25   something like a scooter.

Chad Werley
June 29, 2022

```
 1   A.       Yeah.  But there's different types of scooters.
 2   Q.       Agreed.
 3   A.       Okay.  So what scooter are you talking about?
 4   Q.       I'm not talking about a scooter.
 5            THE WITNESS:  What's she trying to say?  No.
 6   It's very confusing --
 7            MR. SCHUCHMAN:  Yeah.  That's okay --
 8            MS. EDGAR:  Yeah.
 9            THE WITNESS:  -- there's so many different
10   scooters and she's saying "electric," so it's throwing me
11   off here.
12            MS. EDGAR:  That's okay.
13            MR. SCHUCHMAN:  And you clarified at least
14   electric is throwing you off.  If you don't understand
15   the question, you can let her know that, and she'll
16   rephrase it.
17            THE WITNESS:  I don't understand the question
18   BY MS. EDGAR:
19   Q.       Okay.  Was the dirt bike involved in this
20   accident -- strike that.  Let me rephrase it.
21            How was the dirt bike involved in this accident
22   powered, if you know?
23   A.       It's by gas.
24   Q.       Okay.  So it had a gas motor?
25   A.       Yes.
```

Chad Werley
June 29, 2022

```
 1    Q.      Okay.  I'm going to mark this photograph as
 2    Exhibit 2.
 3               (Exhibit 2 was marked for identification.)
 4               MR. SCHUCHMAN:  Do you have a copy for me,
 5    Counsel?
 6               MS. EDGAR:  Sure.
 7    BY MS. EDGAR:
 8    Q.      Do you recognize the content of that photograph?
 9    A.      Yes.
10    Q.      What does it depict?
11               MR. SCHUCHMAN:  Thank you.
12               THE WITNESS:  What's that?
13    BY MS. EDGAR:
14    Q.      What does that photograph depict or what does it
15    show?
16    A.      A YZ85.
17    Q.      And it's not necessarily the specific YZ85 that
18    Levi was driving at the time of the accident -- I just
19    wanted to clarify -- but generally speaking, is that
20    what the dirt bike that Levi was driving at the time of
21    the accident looked like?  At least that make and model.
22    A.      Yes.
23    Q.      Okay.  I believe he had testified that the dirt
24    bike was even blue; is that correct?
25    A.      Yes.
```

Chad Werley
June 29, 2022

```
 1    Q.      Is there any difference between, that you can
 2    see, from this photograph, the dirt bike that's depicted
 3    and the dirt bike that Levi was driving at the time of
 4    the accident?
 5    A.      Yes.
 6    Q.      What are the differences?
 7    A.      Had hand guards.
 8    Q.      Okay.  Anything else?  Any other differences?
 9    A.      No.
10    Q.      Okay.  From the time that you purchased the dirt
11    bike until the date of the accident, had you ever had
12    the dirt bike that Levi was driving at the time of the
13    accident inspected?
14    A.      Be more specific.
15    Q.      Okay.  I'm specifically talking about like a
16    Pennsylvania vehicle inspection being performed by a
17    licensed or certified auto mechanic or garage repair
18    shop.
19    A.      Rephrase the question.
20    Q.      Sure.  So in Pennsylvania, are you familiar with
21    the requirement that vehicles be annually inspected?
22    There are exceptions to that, but by and large that is
23    the rule in Pennsylvania.
24            Are you familiar with that?
25    A.      Yes.
```

Chad Werley
June 29, 2022

1    Q.      Okay.  So my question is:  With regard to a
2    Pennsylvania vehicle inspection that's required by Penn
3    Dot annually of most vehicles, to your knowledge was
4    such an inspection ever performed of the dirt bike that
5    Levi was driving at the time of the accident?
6    A.      This is not street legal.
7    Q.      I understand that you testified it was not
8    street legal.
9            My question though was just to clarify:  Was an
10   inspection of that vehicle ever performed?
11   A.      Where do you do that?
12   Q.      With a licensed auto mechanic or a garage repair
13   shop.
14   A.      They don't do that.
15   Q.      So you -- they don't do what?
16   A.      Inspect dirt bikes.
17   Q.      Okay.  So it's your testimony that garages and
18   auto mechanics in Pennsylvania do not perform any state
19   inspections of dirt bikes?
20   A.      Not that -- of my knowledge, no.
21   Q.      So I'm going to assume though -- and I don't
22   want to make that assumption without confirming with
23   you -- that if it was your understanding that
24   Pennsylvania mechanics and auto repair shops do not
25   perform state inspections of dirt bikes, that you never

Chad Werley
June 29, 2022

1    took that dirt bike to have one performed?

2    A.      Pennsylvania doesn't require you to do that.

3    Q.      I understand, but it's important that you listen

4    very carefully to the question that I've asked.

5            Did you ever take that dirt bike to have a state

6    inspection completed by a licensed or certified auto

7    mechanic or garage repair shop prior to the accident?

8            Your lawyer can't answer that for you, sir.

9    It's a yes or no question.

10           THE WITNESS:  I don't understand the question.

11           MR. SCHUCHMAN:  You heard that on the record, he

12   doesn't understand the question.

13           She's asking, regardless -- if I may paraphrase?

14           MS. EDGAR:  Yes.

15           MR. SCHUCHMAN:  Regardless of what is required or

16   not required, isn't it true that Levi's dirt bike was

17   never taken by you to an inspection shop -- a licensed

18   inspection shop?

19           THE WITNESS:  Yeah.  But it's not a licensed

20   vehicle.

21           MR. SCHUCHMAN:  Understood.  But you -- so you

22   never took it to a licensed inspection shop to be -- to

23   get an inspection?

24           THE WITNESS:  No, no.

25           MS. EDGAR:  Okay.  Thank you.

Chad Werley
June 29, 2022

1    BY MS. EDGAR:

2    Q.      Prior to the accident, did you ever contemplate

3    purchasing insurance coverage for the dirt bike?

4    A.      No.

5    Q.      Why not?

6    A.      I didn't know you could.

7    Q.      You didn't know that you could insure a dirt

8    bike?

9    A.      Yeah.

10   Q.      Did you ever ask an insurance agent in

11   Pennsylvania whether or not a dirt bike could be insured

12   or insurance could be purchased for it?

13   A.      No.

14   Q.      Okay.  So would be it be fair to say then you

15   never obtained an insurance quote to insure the dirt

16   bike prior to the accident?

17   A.      Yes.

18   Q.      Okay.  Would it be fair to say then that you

19   never completed an application for insurance for that

20   dirt bike prior to the accident?

21   A.      Yes.

22   Q.      Would it be fair to say then that you never paid

23   any premium for insurance coverage specific to the dirt

24   bike prior to the accident?

25   A.      I don't know what my insurance policy -- what it

Chad Werley
June 29, 2022

1    all covered.

2    Q.      Okay.  How many insurance policies did you have

3    at the time of the accident that were auto related?

4    A.      Two.

5    Q.      Okay.  To your knowledge, did either of those

6    policies have the dirt bike listed on it as a covered

7    vehicle?

8    A.      Not sure.

9    Q.      At the time of the accident, did you have an

10   understanding as to whether or not the dirt bike Levi

11   was operating was a covered vehicle under either of your

12   policies?

13   A.      Don't know.

14   Q.      You don't know if you had an understanding?

15   A.      Well, I -- no.  I just -- just had homeowners

16   insurance and car insurance.

17   Q.      Okay.  Prior to the accident, do you recall ever

18   disclosing to your auto insurance company or to your

19   insurance agent that you owned two dirt bikes and two

20   Jeep Cherokees?

21          MR. SCHUCHMAN:  Objection to the form.  You may

22   answer.

23          THE WITNESS:  Repeat the question.

24          MS. EDGAR:  Sure.

25

Chad Werley
June 29, 2022

```
1    BY MS. EDGAR:
2    Q.      Prior to the accident, do you recall ever
3    disclosing to your auto insurance company that you owned
4    two dirt bikes and two Jeep Cherokee in your household?
5    A.      No.
6            MR. SCHUCHMAN:  Objection to form.
7    BY MS. EDGAR:
8    Q.      Same question:  Prior to the accident, did you
9    disclose to your insurance agent that you owned two dirt
10   bikes and two Jeep Cherokees?
11           MR. SCHUCHMAN:  Objection to the form.  Go ahead.
12           THE WITNESS:  No.
13   BY MS. EDGAR:
14   Q.      Okay.  Was there a reason that you did not
15   disclose your ownership of these vehicles?
16           MR. SCHUCHMAN:  Objection to the form.  Go ahead.
17           THE WITNESS:  Repeat the question.
18           MS. EDGAR:  Sure.
19   BY MS. EDGAR:
20   Q.      So you just told me that you had never disclosed
21   to your insurance or to your insurance agent that you
22   owned these four vehicles -- two dirt bikes and two Jeep
23   Cherokees.
24           My question was simply:  Why not?
25   A.      Did not know.
```

Chad Werley
June 29, 2022

```
1    Q.       Did not know what?

2    A.       That there was an option.

3    Q.       What -- not sure I understand the answer.

4    A.       Yeah.  I don't know.  Yeah.  I didn't know

5    you -- there was insurance for dirt bikes.

6    Q.       Did you not ever feel it was important that they

7    know that you had these other vehicles in the household?

8             MR. SCHUCHMAN:  Objection to the form.

9             THE WITNESS:  No.  I didn't know.

10   BY MS. EDGAR:

11   Q.       Do you recall ever being asked to identify all

12   the vehicles in your household prior to the accident by

13   your insurance or your insurance agent?

14   A.       No.

15   Q.       Okay.  And that was identifying them whether or

16   not you were seeking coverage for them?

17   A.       No.

18   Q.       Okay.  The second auto policy to which you

19   referred, you said that there was one auto policy and, I

20   believe, you identified four vehicles that were insured

21   under that one.

22            There was a second auto policy, correct, that

23   only insured, I believe, it was a Jeep Cherokee?

24   A.       Yes.

25   Q.       Does that sound correct?
```

Chad Werley
June 29, 2022

1    A.      Yes.

2    Q.      I believe that you and your daughter Olivia were

3    the named insured of that policy.

4            Does that sound right?

5    A.      Yes.

6    Q.      Do you remember when you purchased that policy

7    of insurance approximately?

8    A.      I don't remember.

9    Q.      Do you recall if it was around the time of the

10   accident in 2019?

11   A.      I don't remember.

12   Q.      Do you remember how you went about obtaining

13   that policy of insurance?

14   A.      By phone.

15   Q.      And when you say "by phone," who did you call?

16   A.      My agent.

17   Q.      Who's your agent?

18   A.      Justin.

19   Q.      Justin Pradel (phonetic)?

20   A.      Yeah.

21   Q.      Okay.  And do you know approximately when you

22   called him?

23   A.      Do I know when?

24   Q.      Yes.

25   A.      No.

Chad Werley
June 29, 2022

```
1    Q.       Approximately.

2    A.       No.

3    Q.       Okay.  When you said you called him by phone,

4    can you tell me exactly what you discussed?  What was

5    said?

6    A.       I'd like to insure a 2000 Grand Cherokee.

7    Q.       Okay.  And then did he take an application for

8    that insurance policy over the phone?  Or did you come

9    in in person?  Did he mail you forms?

10            Tell me exactly what the steps were after you

11   made that initial phone call about coverage, if you

12   remember.

13   A.       I don't remember the full conversation.  No.

14   Q.       Okay.  Do you remember if there was anything

15   after that conversation that transpired about the

16   policy?

17   A.       No.

18   Q.       Okay.  I'm going to show you what we'll mark as

19   Exhibit 3.

20            (Exhibit 3 was marked for identification.)

21            MS. SCHUCHMAN:   Thank you.

22   BY MS. EDGAR:

23   Q.       Mr. Werley, take a minute to take a look at

24   Exhibit 3, which is in front of you.

25            At the top of Exhibit 3 it states, "Auto
```

Chad Werley
June 29, 2022

1      insurance application for insurance."

2              Did I read that correctly?

3      A.      Yes.

4      Q.      Okay.  And there's a policy number, an effective

5      date of May 24th, 2019.

6              Does the date that's listed there as the start

7      of that policy sound correct to you to the best of your

8      recollection?

9      A.      Yes.

10     Q.      Okay.  Do you remember any specific coverages

11     that you requested in this application or that you

12     communicated to your insurance adjustor over the phone?

13     A.      No.

14     Q.      Okay.  I want to -- if you can turn to page 4 of

15     page -- of seven pages.  If you look at number --

16     paragraph that's numbered 3 it states, "All vehicles in

17     my household intended for coverage under this policy are

18     declared on this application without exception.

19     Vehicles that appear on this application are of

20     insurance are, A, owned by me and/or my spouse,

21     resident, relative, or family member in the household

22     and, B, regularly parked, stored, or garaged at my

23     residence except when noted that the vehicle is parked

24     or garaged at a different location."

25              Did I read that correctly?

Chad Werley
June 29, 2022

```
 1    A.        Yeah.
 2    Q.        Okay.  Now, next to paragraph number 3 are the
 3    initials CW.
 4    A.        Yes.
 5    Q.        If you go to the end of the application, sir, on
 6    page 7 --
 7    A.        Page 7?
 8    Q.        Yes.  The final page, the very bottom of the
 9    page, sir, on the right-hand sides it states, "Applicant
10    signature," and above that it says, "E-signed 5/21/19 by
11    Chad Werley."
12              Did I read that right?
13    A.        Yes.
14    Q.        Okay.  Is it your recollection that you gave
15    your insurance agent the authority to electrically sign
16    this application for insurance on your behalf?
17    A.        I don't remember exactly when I signed it, but
18    I'm sure I signed it.
19    Q.        Sure.
20              So the application that's dated, sir, indicates
21    that it's E-signed, or electronically signed.
22              Do you know if you electronically signed it or
23    if your insurance agent did so?
24    A.        I don't remember.
25    Q.        Okay.  If your insurance agent did so, do you
```

Chad Werley
June 29, 2022

```
 1    have any reason to believe that he was acting outside

 2    the scope of his authority in doing so?

 3    A.      No.

 4    Q.      Okay.  At the time that you spoke with your

 5    insurance agent in May of 2019, it would've been

 6    approximately one month before the accident on June 29th

 7    of 2019.

 8            Does that sound correct?

 9    A.      I don't remember exactly.

10    Q.      Well, the application date is the end of May of

11    2019.

12            Do you have any reason to believe that that's

13    not a correct date?

14    A.      No.

15    Q.      Okay.  Do you believe that you would've spoken

16    to your insurance agent about purchasing this policy of

17    insurance at or around the time of the application is

18    E-signed?

19            MR. SCHUCHMAN:  You're referring to his policy

20    with Olivia's vehicle?

21            MS. EDGAR:  Yes.

22            MR. SCHUCHMAN:  I saw you pointing, just for the

23    record.

24            THE WITNESS:  What was the question again?

25            MS. EDGAR:  It's okay.
```

Chad Werley
June 29, 2022

1    BY MS. EDGAR:

2    Q.       Would it be accurate to assume that the

3    conversation you had with your insurance agent over the

4    telephone about purchasing a policy of insurance for the

5    Jeep Cherokee would've occurred at or around the time

6    that the application is E-signed and specifically the

7    date that's listed is May 21st, 2019?

8    A.       Yes.  Around that time.

9    Q.       Do you have a specific recollection of the

10   conversation that you had or -- or no because for

11   whatever reason, maybe the passage of time, or you just

12   don't remember.

13   A.       I don't remember.

14   Q.       Okay.  Do you know if during that conversation

15   there was any mention of either of the dirt bikes that

16   you owned?

17   A.       No.

18   Q.       No, you don't remember?  Or, no, there was no

19   such mention?

20   A.       There was no such mention.

21   Q.       Okay.  After you purchased the 85, did Levi

22   continue to also operate the 80 you owned?

23   A.       Yes.

24   Q.       Okay.  Which dirt bike, after the 85 was

25   purchased, was the primary dirt bike that Levi owned, if

Chad Werley
June 29, 2022

1    there was one?

2    A.        Rephrase that.

3    Q.        Sure.  So once the 85 dirt bike is purchased --

4    A.        Yes.

5    Q.        -- does that become the main dirt bike that Levi

6    drives?

7    A.        Yes.

8    Q.        Okay.  But are there still instances in which he

9    may also operate the 80 dirt bike that you also owned?

10   A.        Yes.

11   Q.        Okay.  Prior to the accident on June 29th of

12   2019, had there ever been any sort of accident, whether

13   it be property damage or physical injury, that involved

14   the operation of one of the dirt bikes you owned?

15   A.        No.

16   Q.        Okay.

17             MS. EDGAR:  I think those are all my questions

18   for you, sir.  Thank you.

19             THE WITNESS:  Thank you.

20             (Deposition concluded at 10:43 a.m.)

21

22

23

24

25

Chad Werley
June 29, 2022

1               C E R T I F I C A T I O N

2

3          I, Erin Gaffney, Court Reporter and Notary

4    Public, certify that the foregoing is a true and accurate

5    transcript of the foregoing deposition, that the witness

6    was first sworn by me at the time, place, and on the date

7    hereinbefore set forth.

8          I further certify that I am neither attorney

9    nor counsel for, nor related to, nor employed by any of

10   the parties to the action in which this deposition was

11   taken; further, that I am not a relative or employee of

12   any attorney or counsel employed in this case, nor am I

13   financially interested in this action.

14

15

16

17   Erin Gaffney

18   Court Reporter

19   and Notary Public

20

21

22

23

24

25

Chad Werley
June 29, 2022

| | |
|---|---|
| **Exhibits** | |

EX 0001 Werle
y 062922
    3:14 11:2,4
    13:17
EX 0002 Werle
y 062922
    3:15 28:2,3
EX 0003 Werle
y 062922
    3:16 37:19,
    20,24,25

---

**$**

$1,400
    12:22

---

**-**

-did
    20:12

---

**1**

1
    11:2,4 13:17
10
    14:22 15:2
10-mile
    22:4,5
10:43
    42:20
11
    22:12
15
    23:4
1974
    9:7

---

**2**

2
    28:2,3

---

**20**
    14:18 15:2
2000
    37:6
2003
    9:8
2011
    9:1,5,7
2013
    9:1
2017
    13:17,19
    14:17
2019
    8:18 13:20
    14:18 36:10
    38:5 40:5,7,
    11 41:7
    42:12
2020
    4:25 5:1
    7:9,25
21st
    41:7
24
    7:3
24th
    38:5
28th
    4:25 5:1
    13:17,19
29th
    4:25 8:17
    13:20 40:6
    42:11

---

**3**

3
    37:19,20,24,
    25 38:16
    39:2

---

**4**

4
    38:14

---

**5**

5/21/19
    39:10

---

**7**

7
    39:6,7

---

**8**

80
    41:22 42:9
8188
    8:19
85
    41:21,24
    42:3

---

**A**

a.m.
    42:20
able
    5:12 7:5
    15:11 19:4
above
    39:10
accident
    8:17 9:21
    10:2,15,18,
    21 13:4
    15:13 16:5,
    22 17:21
    18:7 19:12
    20:7 23:4,22
    24:24 25:1,
    8,14,18
    26:12 27:20,
    21 28:18,21
    29:4,11,13
    30:5 31:7
    32:2,16,20,
    24 33:3,9,17
    34:2,8 35:12

---

36:10 40:6
42:11,12
accurate
    6:7 41:2
accurately
    5:12
acres
    21:9,23 22:2
across
    6:1
acting
    40:1
action
    4:22
addition
    14:19 22:11,
    13
address
    8:20
adjoining
    25:2
adjustor
    38:12
agent
    32:10 33:19
    34:9,21
    35:13 36:16,
    17 39:15,23,
    25 40:5,16
    41:3
ago
    24:7
Agreed
    27:2
ahead
    26:1,7
    34:11,16
alcohol
    7:3
allow
    23:14
and/or
    38:20
annually
    29:21 30:3
answer
    5:16,17 15:6

Chad Werley
June 29, 2022

19:1 21:23
26:2 31:8
33:22 35:3
answering
6:5
anyone
8:13 20:1,4
23:14,21
24:15
anyone's
19:19
Applicant
39:9
application
32:19 37:7
38:1,11,18,
19 39:5,16,
20 40:10,17
41:6
appropriate
15:5
approximate
13:14
approximately
14:18 21:8
22:7 36:7,21
37:1 40:6
approximation
15:4,11
April
13:17,19
14:17
around
22:21 23:2
36:9 40:17
41:5,8
articulated
5:21
asked
6:17 19:17
31:4 35:11
asking
6:23 19:3
31:13
assistive
25:25 26:6,
12,21

assume
30:21 41:2
assuming
9:17
assumption
30:22
attorney
4:18
authority
39:15 40:2
auto
29:17 30:12,
18,24 31:6
33:3,18 34:3
35:18,19,22
37:25
average
20:21

**B**

back
4:24 13:14
16:23
backhoe
9:22,23
Baileys
24:20,23
25:2
Ballinger
11:17,19,22
12:12,13
based
18:21
beginning
5:15
behalf
39:16
believe
4:24 14:18
28:23 35:20,
23 36:2
40:1,12,15
best
6:7 9:6
14:22 38:7

big
21:12
bike
10:3,5,25
11:20,24
12:14,16,22,
25 13:3,21,
23 14:4,20
15:13 16:4
17:19 18:4
19:2,11,14,
17 20:2,5,8,
20 22:8,15,
17,20 23:1,
13,18,22,25
24:17 25:15,
18,20,24
26:11 27:19,
21 28:20,24
29:2,3,11,12
30:4 31:1,5,
16 32:3,8,
11,16,20,24
33:6,10
41:24,25
42:3,5,9
bikes
10:5,9,14,
17,20 18:14,
17 22:20
23:1 30:16,
19,25 33:19
34:4,10,22
35:5 41:15
42:14
bill
11:25
blue
28:24
bottom
39:8
bought
11:24 12:18,
21
Brake
17:13
buddy
14:3

**C**

C-H-A-D
4:16
cabin
20:22,23
21:2,4,6
call
36:15 37:11
called
36:22 37:3
Candace
4:17
car
33:16
carefully
31:4
carrier
15:18
certainly
6:20 14:23
certified
29:17 31:6
Chad
4:2,16 39:11
Cherokee
9:7,17 35:23
37:6 41:5
Cherokees
9:14,15,16
33:20 34:4,
10,23
chose
13:6
clarification
15:3 16:16
clarified
27:13
clarify
14:23 19:25
28:19 30:9
class
23:10
clear
6:4

Chad Werley
June 29, 2022

client
  4:21
colder
  20:18
Columbia
  21:1
come
  37:8
comes
  6:20 24:15
communicated
  38:12
communications
  5:23
company
  4:21 33:18
  34:3
complete
  6:7
completed
  5:16 31:6
  32:19
completely
  5:12
concluded
  42:20
confirming
  30:22
confusing
  6:17,20
  26:17 27:6
consider
  12:19 24:20
  25:24 26:5,
  11
consumed
  7:3
contemplate
  32:2
content
  28:8
context
  15:6
continue
  41:22

conversation
  37:13,15
  41:3,10,14
conversations
  8:12
copy
  28:4
correct
  13:17,18
  15:23 16:5,8
  18:15 19:23
  23:5,8,11,12
  24:24 25:22,
  23 28:24
  35:22,25
  38:7 40:8,13
correctly
  38:2,25
could've
  16:7
Counsel
  28:5
County
  21:1
court
  4:5,23 5:9
  18:9
coverage
  32:3,23
  35:16 37:11
  38:17
coverages
  38:10
covered
  33:1,6,11
CW
  39:3

_____

         D
_____

damage
  42:13
date
  8:17,23 9:21
  10:2,15
  13:3,16,19
  16:24 29:11

38:5,6
  40:10,13
  41:7
dated
  39:20
daughter
  8:21 36:2
day
  8:18 11:24
day-to-day
  5:23
declaratory
  4:22
declared
  38:18
define
  26:22
depend
  20:10
depict
  28:10,14
depicted
  29:2
deposition
  4:20 5:6
  42:20
describe
  26:20
design
  18:23 19:3
designed
  18:13,22
  19:2
device
  25:25 26:6,
  13,21
devise
  26:19
difference
  29:1
differences
  29:6,8
different
  21:14 27:1,9
  38:24
DIRECT
  4:7

dirt
  10:3,5,9,14,
  17,20,25
  11:20 12:14,
  16,22,25
  13:3,20,23
  14:4,20
  15:13 16:4
  17:19 18:4,
  14,17 19:2,
  11,14,17
  20:2,5,8,20
  22:8,14,17,
  19,20,25
  23:1,13,18,
  22,25 24:16
  25:15,17,20,
  24 26:11
  27:19,21
  28:20,23
  29:2,3,10,12
  30:4,16,19,
  25 31:1,5,16
  32:3,7,11,
  15,20,23
  33:6,10,19
  34:4,9,22
  35:5 41:15,
  24,25 42:3,
  5,9,14
disclose
  34:9,15
disclosed
  34:20
disclosing
  33:18 34:3
discussed
  37:4
District
  4:23
document
  11:6
documentation
  12:2
documents
  7:17,20 8:10
doing
  5:2 15:6

Chad Werley
June 29, 2022

40:2
**Dot**
  13:4 18:5
  30:3
**drivable**
  16:5
**drive**
  16:11,12
  17:16 18:24
  20:2,4,12
**driven**
  13:12,21,23
  14:5 15:21,
  24 16:7,10,
  15,17 17:20
  18:15,18
**driver's**
  23:8,11
**drives**
  42:6
**driving**
  28:18,20
  29:3,12 30:5
**drove**
  22:25
**drugs**
  7:2
**duly**
  4:2

_____

**E**

**E-SIGNED**
  39:10,21
  40:18 41:6
**earlier**
  26:8
**easiest**
  22:2
**Eastern**
  4:23
**easy**
  21:25
**Edelstein**
  4:18
**Edgar**
  4:9,13,17

9:9 11:5
16:1 18:11
26:4,9,10,16
27:8,12,18
28:6,7,13
31:14,25
32:1 33:24
34:1,7,13,
18,19 35:10
37:22 40:21,
25 41:1
42:17
**effective**
  38:4
**effectively**
  11:25
**either**
  10:14,17
  14:2 24:16
  33:5,11
  41:15
**electric**
  27:10,14
**electrical**
  26:5,8,12,
  18,21
**electrically**
  39:15
**electronically**
  39:21,22
**else's**
  20:23
**end**
  39:5 40:10
**entail**
  19:6
**estimating**
  15:4
**estimation**
  15:11 20:15
**Everybody**
  24:7
**exactly**
  37:4,10
  39:17 40:9

**EXAMINATION**
  4:7
**examined**
  4:3
**exception**
  38:18
**exceptions**
  29:22
**exhibit**
  11:2,4 13:17
  28:2,3
  37:19,20,24,
  25
**express**
  5:24

_____

**F**

**F-150**
  9:1,7
**F-450**
  9:8
**fact**
  18:4
**fair**
  23:7 32:14,
  18,22
**fall**
  20:16,19
**familiar**
  29:20,24
**family**
  14:10 20:24
  38:21
**February**
  4:25 5:1
  7:9,24
**feel**
  35:6
**Fifty**
  21:9
**filed**
  4:21
**final**
  39:8
**fine**

18:1
**finish**
  5:14 15:3
**firm**
  4:18
**First**
  11:10
**Five**
  21:3
**follows**
  4:3
**force**
  25:22
**form**
  26:1,7 33:21
  34:6,11,16
  35:8
**forms**
  37:9
**four**
  34:22 35:20
**frequently**
  20:8
**friend's**
  14:2
**friends**
  14:8,9,10
  23:15
**front**
  11:6 12:3
  37:24
**full**
  4:14 37:13
**fully**
  5:14,17,21
  6:8 15:6
**functional**
  16:4
**functioned**
  16:19

_____

**G**

**garage**
  29:17 30:12
  31:7

Chad Werley
June 29, 2022

garaged
  38:22,24
garages
  30:17
gas
  27:23,24
gave
  20:16 39:14
generally
  28:19
gestures
  5:24
giving
  15:4
going
  5:5 6:2 11:2
  28:1 30:21
  37:18
good
  4:10 20:17,
  18
Grand
  37:6
ground
  5:6
guards
  29:7
guess
  12:21 14:22
guessing
  14:21,24
  15:10

**H**

hand
  29:7
hands
  5:25
handwriting
  11:15
handwritten
  11:12
happen
  5:23

happy
  6:14,23
Harrisburg
  4:19
head
  25:12
headlights
  17:11
heads
  5:25
hear
  6:13 7:6
heard
  6:14 31:11
hobby
  19:18
home
  22:5 24:11
homeowners
  33:15
hours
  7:3
house
  14:2
household
  34:4 35:7,12
  38:17,21
houses
  21:15,17
  22:2
human
  25:22

**I**

idea
  21:18
identificatio
n
  11:4 28:3
  37:20
identified
  10:20 18:4
  19:8 35:20
identify
  35:11

identifying
  35:15
imagine
  20:12
important
  5:11,20 31:3
  35:6
incomplete
  5:25
indicates
  39:20
individuals
  25:4
initial
  37:11
initials
  39:3
injury
  42:13
Inspect
  30:16
inspected
  29:13,21
inspection
  29:16 30:2,
  4,10 31:6,
  17,18,22,23
inspections
  30:19,25
instance
  24:20
instances
  42:8
instruction
  5:22
insurance
  4:21 32:3,
  10,12,15,19,
  23,25 33:2,
  16,18,19
  34:3,9,21
  35:5,13
  36:7,13 37:8
  38:1,12,20
  39:15,16,23,
  25 40:5,16,
  17 41:3,4

insure
  32:7,15 37:6
insured
  9:11,21
  10:14,17
  32:11 35:20,
  23 36:3
intended
  20:5 38:17
intent
  6:21 20:1
involved
  10:21 24:16
  26:11 27:19,
  21 42:13
involving
  4:22

**J**

Jeep
  9:7,17 33:20
  34:4,10,22
  35:23 41:5
judgment
  4:22
June
  8:17 13:20
  14:17 40:6
  42:11
Justin
  36:18,19

**K**

Kempton
  8:19
kind
  10:10 21:25
know
  6:13,22 9:4
  11:19 13:24
  14:1,5,25
  15:1,5,12,15
  17:16 18:20
  19:13 20:7
  21:14 22:24

24:3 25:4,10
26:18 27:15,
22 32:6,7,25
33:13,14
34:25 35:1,
4,7,9 36:21,
23 39:22
41:14
**knowledge**
13:20 22:19
23:14,21,25
30:3,20 33:5

---

**L**

---

**language**
26:22
**large**
29:22
**law**
4:18
**lawsuit**
4:20
**lawyer**
8:12 11:3
31:8
**learn**
25:10
**Leaser**
8:19
**left**
12:9
**legal**
19:5,12
30:6,8
**Levi**
19:21 20:1,
5,8 22:14
23:4,13,17,
22 24:17
25:14,17
28:18,20
29:3,12 30:5
33:10 41:21,
25 42:5
**Levi's**
31:16

**license**
23:8,11
**licensed**
29:17 30:12
31:6,17,19,
22
**lights**
17:2,10,12,
13,15,17
19:7
**listed**
13:16 33:6
38:6 41:7
**listen**
16:13 31:3
**little**
13:15
**live**
24:8 25:13
**lived**
8:16
**located**
20:25
**location**
24:1 38:24
**long**
24:7
**look**
37:23 38:15
**looked**
28:21
**looks**
11:3,11
**lot**
21:4,6

---

**M**

---

**made**
16:25 17:4
18:8,10
19:11 37:11
**mail**
37:9
**main**
42:5

**make**
5:7,16 6:6,
25 9:4 15:8,
19 16:3
28:21 30:22
**makes**
18:23 19:3
**Margolis**
4:18
**mark**
11:2 28:1
37:18
**marked**
11:4 28:3
37:20
**matter**
15:20
**mean**
13:11 18:25
21:22 24:7
**meant**
15:25
**mechanic**
29:17 30:12
31:7
**mechanical**
18:3
**mechanically**
16:7,10,11,
18,25 17:18
**mechanics**
30:18,24
**medications**
7:2
**meet**
25:7
**member**
38:21
**mention**
41:15,19,20
**mentioned**
17:8,9
**met**
25:6
**Mid-century**
4:21

**middle**
12:5
**Miles**
21:23
**mind**
24:15
**Mine**
8:4 22:12
**minute**
37:23
**mmm-hmm**
6:1 19:22
**mobility**
25:25 26:6,
13,18,21
**model**
28:21
**month**
40:6
**morning**
4:10,11,20
**motor**
26:23 27:24
**motorcycle**
23:11
**moving**
5:15,17

---

**N**

---

**name**
4:14,17
25:10
**named**
36:3
**necessarily**
28:17
**need**
6:22 13:8
17:15
**neighbor**
24:21
**neighborhood**
14:10,14
20:22 21:11,
12,14,16,19,

Chad Werley
June 29, 2022

25 24:19
**neighbors**
14:11 23:24
24:3,13
**neighbors'**
22:7,10
**never**
16:15,17
30:25 31:17,
22 32:15,19,
22 34:20
**nicer**
20:13
**nods**
5:25
**non-verbal**
17:14
**nonverbal**
8:6
**nonverbally**
5:24
**note**
11:12,15
**noted**
38:23
**number**
38:4,15 39:2
**numbered**
38:16

─────────────
**O**
─────────────

**oath**
7:9,13
**Objection**
26:1,7 33:21
34:6,11,16
35:8
**obtained**
32:15
**obtaining**
36:12
**obvious**
5:22
**obviously**
6:13 20:13

**occur**
22:23
**occurred**
41:5
**okay**
6:9 7:16,22,
24 8:5,16
9:1,17,25
10:2 11:2,
15,22,25
12:2,5,9,12,
22 13:2,14,
19 14:17
15:2,3,10,16
16:2,7,14,22
17:1,3,8,15,
18 18:3,20
19:10,25
20:20 21:21
22:5,10,13
23:13,20
24:3,23
25:1,4,7,14
27:3,7,12,
19,24 28:1,
23 29:8,10,
15 30:1,17
31:25 32:14,
18 33:2,5,17
34:14 35:15,
18 36:21
37:3,7,14,18
38:4,10,14
39:2,14,25
40:4,15,25
41:14,21,24
42:8,11,16
**Olivia**
36:2
**Olivia's**
40:20
**once**
6:3 25:6
42:3
**one**
5:11 10:6,
20,23 11:10
19:23 23:18

31:1 35:19,
21 40:6
42:1,14
**operate**
19:4 41:22
42:9
**operated**
18:6
**operating**
25:15 33:11
**operation**
42:14
**opinion**
19:11
**option**
35:2
**outside**
11:19 40:1
**owned**
10:18 12:16
15:12 33:19
34:3,9,22
38:20 41:16,
22,25 42:9,
14
**owners**
12:20
**ownership**
34:15
**owns**
12:16

─────────────
**P**
─────────────

**page**
5:8 12:6
38:14,15
39:6,7,8,9
**pages**
38:15
**paid**
12:22 32:22
**paragraph**
38:16 39:2
**paraphrase**
31:13

**parked**
38:22,23
**Parking**
17:17
**passage**
41:11
**Penn**
13:4 18:5
30:2
**Pennsylvania**
13:12,21
16:18 17:20
18:7,15,18
23:8 29:16,
20,23 30:2,
18,24 31:2
32:11
**Pennsylvania's**
23:11
**people**
5:13 14:12,
15,19 15:12
22:2
**perform**
30:18,25
**performed**
29:16 30:4,
10 31:1
**period**
15:12
**permission**
25:15,18
**person**
37:9
**personal**
25:25 26:6,
12,18
**phone**
36:14,15
37:3,8,11
38:12
**phonetic**
36:19
**photograph**
28:1,8,14
29:2

Chad Werley
June 29, 2022

phrasing
  26:17
physical
  42:13
pickup
  15:18
picture
  11:3
place
  24:24 25:1
please
  4:14 5:14
  6:7
plural
  9:15
point
  6:12 10:18
  13:2
pointing
  40:22
policies
  33:2,6,12
policy
  32:25 35:18,
  19,22 36:3,
  6,13 37:8,16
  38:4,7,17
  40:16,19
  41:4
possible
  6:7
powered
  27:22
Pradel
  36:19
premium
  32:23
preparation
  7:16 8:13
present
  24:17
primary
  41:25
prior
  7:24 10:18
  15:13 16:5
  20:7 23:22

25:18 31:7
32:2,16,20,
24 33:17
34:2,8 35:12
42:11
Private
  13:25
probably
  5:21
problematic
  18:23 19:3
propelled
  25:22
properties
  22:7
property
  13:25 21:4,6
  22:10 24:23
  25:2,5 42:13
propose
  26:24
provide
  11:22 15:11
provided
  4:24 5:5
  11:3
public
  15:21 16:8,
  15,17,19
  18:6,8,10,
  15,22,24
  19:2,4
purchase
  10:25 11:20
  12:14 13:3,
  16 16:24
purchased
  11:10 12:17
  19:14,17,19
  20:2,4 29:10
  32:12 36:6
  41:21,25
  42:3
purchasing
  32:3 40:16
  41:4

PW80
  10:13

_____

Q
_____

quantify
  22:1
question
  5:14,17
  6:12,14,17,
  19,24 14:5
  16:14,20
  19:16 26:8,
  9,15 27:15,
  17 29:19
  30:1,9 31:4,
  9,10,12
  33:23 34:8,
  17,24 40:24
questions
  7:6 42:17
quote
  32:15

_____

R
_____

rack
  15:18
radius
  22:4,5
re-ask
  6:24
read
  4:12 38:2,25
  39:12
reason
  7:5 13:6
  16:17 17:19,
  23 18:6
  34:14 40:1,
  12 41:11
reasons
  18:3
recall
  5:2 10:12
  33:17 34:2
  35:11 36:9

recognize
  11:6 28:8
recollection
  38:8 39:14
  41:9
record
  4:15 6:4
  31:11 40:23
referred
  35:19
referring
  9:18 14:13
  21:15 22:1
  24:4 40:19
regard
  30:1
register
  13:4,7
registered
  18:5
regularly
  38:22
related
  33:3
relative
  38:21
remember
  11:1 14:21
  17:25 18:2
  24:5,6 36:6,
  8,11,12
  37:12,13,14
  38:10 39:17,
  24 40:9
  41:12,13,18
repair
  29:17 30:12,
  24 31:7
repeat
  6:14 18:9
  33:23 34:17
rephrase
  19:15 21:13
  26:9 27:16,
  20 29:19
  42:2

Chad Werley
June 29, 2022

reporter
  4:5 5:9 18:9
requested
  38:11
require
  31:2
required
  19:10 30:2
  31:15,16
requirement
  29:21
reside
  8:20
residence
  8:22 9:10,20
  38:23
resident
  38:21
responding
  6:2
response
  6:8 8:6
  17:14
responses
  5:21 6:3
review
  7:17 8:2,3
reviewed
  7:20 8:10
ridden
  13:24
ride
  20:20,21
  21:2,10
  22:8,17,19
riding
  23:18
right
  8:9 11:14
  22:11 36:4
  39:12
right-hand
  12:6 39:9
road
  8:19 13:10,
  11 16:12,25
  17:4 18:8,10

roads
  18:18
roadway
  13:12,21
  15:21 16:8,
  12,15,18,19
  17:16,20
  18:7 19:4
roadways
  18:15,22,24
  19:2
rode
  20:8 22:14
rough
  21:18
rule
  29:23
rules
  5:6
rural
  21:20

_____

_____

        S

sale
  11:25 12:3
saying
  5:13 16:14
  21:22 27:10
says
  39:10
SCHUCHMAN
  4:12 9:3,6
  15:23 26:1,
  7,14 27:7,13
  28:4,11
  31:11,15,21
  33:21 34:6,
  11,16 35:8
  37:21 40:19,
  22
scooter
  25:25 26:25
  27:3,4
scooters
  27:1,10

scope
  40:2
season
  20:10
second
  35:18,22
see
  5:9 29:2
seeking
  35:16
self-
propelled
  25:20
sense
  6:25 15:8
seven
  38:15
she'll
  27:15
shop
  29:18 30:13
  31:7,17,18,
  22
shops
  30:24
show
  28:15 37:18
side
  12:6
sides
  39:9
sign
  4:12 39:15
signal
  17:5,6
signals
  17:2,7
signature
  12:5,7,9
  39:10
signed
  39:17,18,21,
  22
simply
  34:24
sir
  11:7 31:8

39:5,9,20
  42:18
Sitting
  6:1
size
  21:19 22:1
son
  8:21 12:19
  19:20,21,23
son's
  8:3
sort
  6:3 7:2
  12:24 42:12
sound
  35:25 36:4
  38:7 40:8
sounds
  5:22
speak
  5:11
speaking
  16:8 17:18
  28:19
specific
  14:12 19:19
  24:1 28:17
  29:14 32:23
  38:10 41:9
specifically
  4:19 10:12
  11:11 29:15
  41:6
spelling
  4:15
spoke
  8:13 40:4
spoken
  12:13 40:15
sport
  19:18
spouse
  38:20
spring
  20:16,19
start
  38:6

Chad Werley
June 29, 2022

state
    4:14 30:18,
    25 31:5
states
    4:23 37:25
    38:16 39:9
statute
    26:22
steps
    37:10
stored
    38:22
street
    17:22 19:5,
    11 30:6,8
strike
    27:20
summer
    20:19
summertime
    20:17
sure
    5:7,16 6:6
    9:4 15:19
    16:3 24:2
    26:9 28:6
    29:20 33:8,
    24 34:18
    35:3 39:18,
    19 42:3
suspension
    19:7
sworn
    4:2,24 5:5

T

table
    6:1
Tahoe
    9:1
take
    14:6 23:13
    25:1 31:5
    37:7,23
taken
    7:2,12 31:17

talking
    17:11 27:3,4
    29:15
telephone
    41:4
tell
    7:9,13 8:16
    21:23 37:4,
    10
ten
    22:9,10
testified
    4:3 28:23
    30:7
testify
    7:6
testimony
    4:24 5:5
    7:16,24 8:2,
    14 30:17
Thank
    4:5 28:11
    31:25 37:21
    42:18,19
That'd
    14:22
thing
    17:9
things
    19:8
think
    25:12 42:17
Thomas
    11:16
Thomas's
    12:11
three
    8:18
throwing
    27:10,14
time
    5:13 13:2
    15:12,20
    16:22 17:20
    18:7 19:12
    20:17 23:4
    24:7 25:14,

    17 28:18,20
    29:3,10,12
    30:5 33:3,9
    36:9 40:4,17
    41:5,8,11
times
    21:3
tires
    17:22 19:7
title
    12:24 13:1
today
    5:7 6:2,12
    7:7,12,17
    8:14 14:24
told
    34:20
top
    25:12 37:25
Trailer
    15:18
transcribe
    5:12
transcribed
    6:3
transcribing
    5:10
transcript
    6:6
transcripts
    7:21,22
transfer
    12:24
transpired
    37:15
transported
    14:19 15:14,
    16,17,20
    24:1
transporting
    23:24 24:16
trick
    6:18 16:2,13
true
    31:16
truth
    7:10,13

truthfully
    7:7
try
    6:18
trying
    16:2,13,16
    19:1 21:18
    27:5
turn
    17:2,5,6,7
    38:14
Twenty
    14:16
two
    5:4,13 9:16
    10:7,8,9,11
    33:4,19
    34:4,9,10,22
type
    10:12
types
    27:1
typical
    20:16 22:25

U

uh-uh
    6:1
unclear
    6:19
understand
    5:18 6:2,10,
    15,24 7:6,
    10,12,14
    14:4 15:19
    16:3,14,15,
    20 18:14
    19:1,16
    26:14,15
    27:14,17
    30:7 31:3,
    10,12 35:3
understanding
    6:23 18:17,
    20 23:17
    30:23 33:10,

Chad Werley
June 29, 2022

14
**understood**
  15:7 31:21
**United**
  4:22

---

**V**

---

**vehicle**
  26:23 29:16
  30:2,10
  31:20 33:7,
  11 38:23
  40:20
**vehicles**
  8:22 9:10,
  13,20 22:20
  23:1 29:21
  30:3 34:15,
  22 35:7,12,
  20 38:16,19
**verbal**
  5:21
**verbalize**
  6:8

---

**W**

---

**W-E-R-L-E-Y**
  4:16
**want**
  9:4 14:24
  15:19 19:25
  21:22 26:20
  30:22 38:14
**wanted**
  16:3 28:19
**way**
  6:18,20
  18:13
**weather**
  20:10,13,17,
  18
**weekend**
  20:9,15,21
**went**
  7:21 36:12

**Werley**
  4:2,16,17
  37:23 39:11
**wife**
  8:21 12:19
**wife's**
  8:3
**WITNESS**
  9:2,4,7
  15:24 18:10
  26:3 27:5,9,
  17 28:12
  31:10,19,24
  33:23 34:12,
  17 35:9
  40:24 42:19
**words**
  5:25 15:23
**work**
  4:19
**would've**
  14:19 15:13
  24:16,17
  40:5,15 41:5

---

**Y**

---

**Yamaha**
  10:12
**Yamahas**
  10:11
**Yeah**
  9:16 19:24
  21:18 24:2,
  12 27:1,7,8
  31:19 32:9
  35:4 36:20
  39:1
**year**
  21:3
**years**
  5:4 8:18
  23:5 24:8
**YZ85**
  10:13,24
  11:10 28:16,
  17

Thomas Bollinger   717-357-6054

I Thomas Bollinger Sold my 2006
Y285 to Chad Werley on April 24th 2017
for $1400.
Vin # JYACB09C16A007904

Onwardd riders edge HVV253

717-334-2518

EXHIBIT
1







# **Auto Insurance** Application for Insurance

This document is an Application for Insurance. Your signature at the end of this document is required. If our records do not show that you have provided us with a signed copy of this document, we reserve the right to terminate your coverage as permitted by law. Please keep a copy for your records. Read your policy. The policy of insurance for which this application is being made, if issued, may be cancelled without cause at the option of the insurer at any time in the first 60 days during which it is in effect and at any time thereafter for reasons stated in the policy.

| | | Premiums/Fees | |
|---|---|---|---|
| **Policy Number:** | 19612-65-17 | | |
| *Effective Date:* | 5/24/2019 12:01 AM | Policy Premium | $590.10 |
| *Expiration Date:* | 11/24/2019 12:01 AM | Membership/Policy Fees* | $29.30 |
| *Named Insured(s):* | Chad Werley | (Non-Refundable) | |
| | Olivia Werley | Regulatory Charges | $0.00 |
| | 8188 Leaser Rd | ▶ **Policy Premium and Fees** | **$619.40** |
| | Kempton, PA 19529-8970 | Down Payment Received | $619.40 |
| | (610) 756-4425 | | |
| | werleys4@aol.com | | |
| *Your Farmers Agent:* | Justin Pradel | *Also see Information on Additional Fees below.* | |
| | 831 Conestoga Rd | | |
| | Bryn Mawr, PA 19010-1345 | | |
| | (484) 362-0900 | | |
| | FAX(866) 889-2910 | | |
| | jpradel@farmersagent.com | | |
| *Underwritten By:* | MID-CENTURY INSURANCE COMPANY | | |
| | 6301 Owensmouth Ave. | | |
| | Woodland Hills, CA 91367 | | |
| *Print Date:* | 5/20/2019 | | |
| *Go Paperless:* | Yes | | |
| *eSignature:* | Yes | | |



## Driver and Resident Information

The applicant, spouse, Domestic Partner and all household residents 15 years of age or older, all operators of the vehicle described in this application and all children who live away from home who drive these vehicles, even occasionally, are listed below.

| Name | Driver Status | Sex | Marital Status | DOB | Relationship | Driver License | Ride-sharing Driver |
|---|---|---|---|---|---|---|---|
| Chad Werley | Rated | Male | Married | **/**/1974 | Primary Insured | ******50 | N |
| Jane Werley | Rated | Female | Married | **/**/1968 | Spouse | ******88 | N |
| Olivia Werley | Rated | Female | Single/Separated | **/**/2002 | Other | ******84 | N |

*3*

**Application for Insurance** (continued)

### Vehicle Information

| Vehicle | Year/Make/Model/VIN | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 1999 Jeep Grand Cherokee 4D 4X4 Lar 1J4GW58S1XC608967 | Comprehensive. Collision | $100 Not Covered | |

### Auto Insurance History

| Prior Carrier | Policy Number | BI/PD: Limit | Duration |
|---|---|---|---|
| Onebeacon | 6N94290 | 250,000/500,000 | Continuous for 83 month(s) |

### Discounts

| Discount Type | Applies to Vehicle(s) | Discount Type | Applies to Vehicle(s) |
|---|---|---|---|
| Paid In Full | 1 | Homeownership | 1 |
| Good Payer | 1 | ePolicy | 1 |
| Passive Restraint | 1 | | |

### Surcharges

| Surcharge Type |
|---|
| Comp without Collision |

### Coverage Information

| Coverage | Limits (applicable to all vehicles) | Premiums by Vehicle Vehicle 1 |
|---|---|---|
| Bodily Injury Liability | $250,000 each person $500,000 each accident Full Tort | $288.50 |
| Property Damage Liability | $100,000 each accident | $175.30 |
| Uninsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $12.30 |
| Underinsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $56.60 |
| Comprehensive | | $38.00 |
| Collision | | Not Covered |
| Towing and Road Service | | Not Covered |
| FIRST PARTY BENEFITS Medical Coverage | $5,000 each person | $19.40 |
| Funeral Expense Benefits | | Not Covered |
| Income Loss Benefits | | Not Covered |

**Application for Insurance** (continued)

| Coverage | Limits (applicable to all vehicles) | Premiums by Vehicle |
|---|---|---|
| | | Vehicle 1 |
| Accidental Death Benefits | | Not Covered |
| Combination Package | | Not Covered |
| Extraordinary Medical Benefits | | Not Covered |
| Total Premium Per Vehicle | | $590.10 |
| ▶ **Policy Premium** | | **$590.10** |

## Fee Detail

| | Total |
|---|---|
| Policy Fee | $29.30 |
| ▶ **Fees** | **$29.30** |
| ▶ **Policy Premium and Fees** | **$619.40** |

**The Quoted Premium Is Subject To Change (Increase Or Decrease).** The quoted premium is determined by base rates in effect on the effective date of the Application as referenced above, which are subject to change without notice. The Insurer also reserves the right to accept, reject, or modify the requested coverage and/or the quoted premium after review of this Application, and after review of other underwriting information.

## Rating Information

| Details | Vehicle 1 |
|---|---|
| Garaging Zip | 19529 |
| Vehicle Usage | Non-Business |

**Application for Insurance** (continued)

*Declarations of Applicant*

**(Applicant Must initial all items)**

1) **C.W.**  All persons in my household are declared on this application with no exception, including, but not limited to:
   a. All persons of legal driving age, whether or not they are licensed to drive, including permit drivers;
   b. All persons whether or not they are related to me by blood, marriage, or adoption, including students attending school away from home, and;
   c. All persons whether or not they are insured by another insurer.

2) **C.W.**  All persons who regularly operate any car insured under this policy are declared on this application. Regularly operate means operating any car insured under this policy for more than 30 days per year.

3) **C.W.**  All vehicles in my household, intended for coverage under this policy, are declared on this application without exception. Vehicles that appear on this application of insurance are:
   a. Owned by me and/or my spouse, resident relative, or family member in the household, and;
   b. Regularly parked, stored or garaged at my residence, except when noted that the vehicle is parked, stored or garaged at a different location.

4) **C.W.**  None of the vehicles listed on this application are used:
   a. to carry persons for a charge or fee, such as for a limousine, taxi service, or rideshare service unless I have disclosed my or any driver's participation in such rideshare service (like Uber or Lyft) to my agent or the Company and purchased/have available coverage for such rideshare service. I understand that use in a shared-expense car pool is acceptable;
   b. in the business of selling, repairing, servicing, storing, or parking of vehicles;
   c. in any racing, speed, or demolition event or contest or stunting activity or in preparation for such an event, contest, or activity;
   d. as a vehicle rented or leased to others;
   e. by my employee (unless by a domestic employee, such as maids, chauffeurs, or nannies which must be listed on the policy);
   f. in the pick-up or delivery of goods or services, including but not limited to the business or occupation of pizza delivery, farm produce delivery, mail delivery, newspaper delivery, messenger service, or;
   g. for emergency services.

5) **C.W.**  I have disclosed all vehicles owned, maintained or operated in any full or part-time profession, occupation, trade or commercial enterprise

6) **C.W.**  None of the drivers declared on this application have been convicted of insurance fraud.

7) **C.W.**  At least one vehicle listed on the application is garaged in Pennsylvania at least ten (10) months a year.

## Application for Insurance (continued)

**Coverage Period.** I understand that coverage will not be effective any earlier than the date and time the application is bound by the Insurer, signed by me and the premium paid.

I understand that the Coverage Period is effective as shown above and after the time for which applied. The policy may be renewed for an additional policy term, only as specified in any renewal offer, which is subject to the insured's payment of the specified premium in advance of the respective renewal date.

**Policy Coverage.** I understand that the Insurer provides insurance only for those coverages indicated by a specific limit, deductible or other notation and for which a premium for the coverage is shown. Physical Damage Coverage (if afforded) is based on the actual cash value of the factory standard motor vehicle and no coverage exists for customizing, add-on equipment or accessories that are not factory standard unless listed on this application.

**Consumer reports.** I agree to allow the Insurer to share my name, address, date of birth and social security number with third party consumer reporting agencies and insurance support organizations in order to obtain consumer reports, as permitted by law, for this application, any policy, renewals, or for any claim.

**Credit History Disclosure.** In connection with this application for insurance, we may review your credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of your insurance score.

**Fraud Warning.** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

**Insurance Binder.** The insurance reflected in this Application is applied for and is hereby temporarily bound until the earlier of (i) **30** days from the Effective Date of this Application; (ii) the issuance of a policy originally applied for to the Named Insured; or (iii) at least ten days, or any longer period required by applicable state law, from the date we mail notice that coverage has been cancelled. If coverage under this binder expires, no further notice is required to be sent to the Named Insured. *The terms of this binder take precedence over any other policy terms with regard to notice of termination.*

**E-Mail Disclosure.** I understand that by providing my e-mail address to the Insurer, I may receive emails regarding my coverage – including but not limited to, premiums due, the status of my coverage, and renewals – and customer satisfaction or other surveys regarding my experience with Farmers. I understand that the Insurer and its affiliates will not sell or furnish my e-mail address to any non-affiliated third party and that I may opt out of receiving e-mails. Further, I understand that providing my email address is not a condition of purchase.

**Initial Premium Payment.** I understand that if any initial premium is remitted by check, draft, money order, credit/debit card, or Electronic Funds Transfer (EFT), such payment is a conditional payment and is only accepted subject to collection, and it is agreed that if the premium remittance is not honored, the Insurer may, at its option, rescind (void) my coverage from inception.

**Loss History.** I understand that the Insurer will consider my loss history in determining whether to decline, cancel, nonrenew or surcharge my coverage and that any claim made under my coverage will be reported to an insurance support organization.

**Policy Fee.** I understand a Policy Fee applies to this policy, if set forth on the **Declarations Page**. The fees are fully earned and are not refundable, unless required by state law. However, if **we** cancel **your** policy during the initial policy period, policy fees will be refunded in full.

**Paperless Document Delivery.** I understand that I have the option of enrolling in paperless delivery of policy and/or billing documents. If I choose, or have chosen, paperless (electronic) delivery, I will be required to log onto Farmers.com, review and accept the terms and conditions of Go Paperless/Paperless Policy and/or Paperless Billing  If I do not accept the terms of paperless delivery, I will continue to receive Policy and/or Billing documents by mail. I understand that my enrollment in paperless delivery is not a condition of purchase.

**Application for Insurance** (continued)

### Important Notice

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.*

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715 (d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

**Application for Insurance** (continued)

---

### *Information on Additional Fees

The "Fees" stated in the "Premium/Fees" section on the front apply on a per-policy, not an account basis. The following additional fees also apply:

1. **Service Charge per installment** (In consideration of our agreement to allow you to pay in installments):
   - For Recurring Electronic Funds Transfer (EFT) and fully enrolled online billing (paperless): **$0.00** (applied per account)
   - For other Recurring EFT plans: **$2.00** (applied per account)
   - For all other payment plans: **$5.00** (applied per account)

If this account is for more than one policy, changes in these fees are not effective until the revised fee information is provided for each policy.

2. **Late Fee: $10.00** (applied per account)
3. **Returned Payment Charge: $20.00** (applied per check, electronic transaction, or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account)
4. **Reinstatement Fee: $25.00** (applied per policy)

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.

I agree that the amount of any fee charged may change with any renewal of coverage and that the Insurer retains the right to change the amount, terms or conditions of the assessment of any fee with any such renewal. I understand that if the Insurer changes the amount of the assessment of any fee listed above, the Insurer will notify me of these changes in their offer to renew my policy.

I further understand that I am required to pay all fees assessed. My failure to pay more than a single late fee or failure to pay more than a single installment fee may result in cancellation of my coverage. Failure to pay any fees may result in the assessment of additional fees or the possibility of my account being assigned to a collections bureau.

**Acknowledgment. I** represent that I have applied for the insurance coverage(s) and limits as set forth in this Application for Insurance. I confirm that I have provided true, correct and complete information to the best of my knowledge in this Application, including the statements I was required to initial in the Declarations of Applicant section. The information provided above and my promises are offered to the Insurer as an inducement to issue the policy for which I am applying. I acknowledge and agree that a failure to provide any and all additional information requested within the time required, or my having concealed or misrepresented any material information requested in this Application or in the Declarations of Applicant section may cause an increase in the risk of loss for the insurer and may, depending upon the law of the State in which I am signing, result in a declination of my Application, an increase in premium, failure to pay my claim(s), cancellation, nonrenewal or rescission (voiding) of any policy that may be issued to me.

I have read the above Application for Insurance. I agree that the application accurately summarizes the insurance for which I have applied and agree to the terms and conditions of the insurance as described in the Application.

Signed this _____ day of _____,
                Month    Year

**X** E-SIGNed 05/21/2019 by
CHAD WERLEY

Applicant's Signature (if applicant is a minor, parent or guardian must also sign)

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


- - -

MID-CENTURY INSURANCE COMPANY,          :

      Plaintiff,  : CIVIL DIVISION

           :

    vs.      : Civil Action Number:

           : 5:21-cv-05592

CHAD WERLEY and JANE WERLEY,          :

individually and as parents and : JURY TRIAL DEMANDED

guardians of LEVI WERLEY, a minor. :

      Defendants.  :

- - -


JUNE 29, 2022

   Oral deposition of LEVI WERLEY, held at the
offices of KOZLOFF STOUDT, located at 2640 Westview
Drive, Wyomissing, Pennsylvania on Wednesday, June 29,
2022, at approximately 11:11 a.m., before Erin Gaffney,
Court Reporter and Notary Public in and of the
Commonwealth of Pennsylvania.

Levi Werley
June 29, 2022

1    APPEARANCES:

2

3    ON BEHALF OF THE PLAINTIFF:

4    MARGOLIS EDELSTEIN

5    BY:  CANDACE N. EDGAR, ESQUIRE

6    214 Senate Avenue, Suite 402

7    Harrisburg, Pennsylvania 17011

8    (717) 760-7504

9    cedgar@margolisedelstein.com

10

11   ON BEHALF OF THE DEFENDANT:

12   KOZLOFF STOUDT

13   BY:  PETER F. SCHUCHMAN, ESQUIRE

14   2640 Westview Drive

15   Wyomissing, Pennsylvania 19610

16   (610) 670-2552

17   pschuchman@kozloffstoudt.com

18

19   ALSO PRESENT:  CHAD WERLEY, JANE WERLEY

20

21

22

23

24

25

Levi Werley
June 29, 2022

1                                    INDEX

2                              -    -    -

3

4     WITNESS:                                              PAGE:

5     LEVI WERLEY                                              4

6

7

8                            EXAMINATION

9     BY:  MS. EDGAR                                          4

10

11

12                             EXHIBITS

13                    (No exhibits were marked.)

14

15

16

17

18

19

20

21

22

23

24

25

Levi Werley
June 29, 2022

```
 1                         -   -   -

 2              LEVI WERLEY, after having been duly sworn, was

 3       examined and testified as follows:

 4                         -   -   -

 5              COURT REPORTER:  Thank you.

 6                         -   -   -

 7                    DIRECT EXAMINATION

 8                         -   -   -

 9       BY MS. EDGAR:

10       Q.      Okay.  State your full name for the record with

11       spelling.

12       A.      Levi Werley.  L-e-v-i, W-e-r-l-e-y.

13       Q.      Mr. Werley, my name is Candace Edgar.  I'm an

14       attorney with the law firm of Margolis Edelstein in

15       Harrisburg.

16              You were present for the depositions of your

17       both your father, Chad Werley, and your mother, Jane

18       Werley.

19              Correct?

20       A.      Correct.

21       Q.      And during their depositions you heard me give

22       them instructions about articulating your answers, not

23       speaking over me, things along that line.

24              Would you like me to repeat any of the

25       instructions for you?  Or are you comfortable moving
```

Levi Werley
June 29, 2022

```
 1    forward without them being repeated?

 2    A.      I'm comfortable moving forward.

 3    Q.      Okay.  In preparation for your testimony today,

 4    did you review any documents?

 5    A.      Yes.

 6    Q.      What documents were those?

 7    A.      Transcripts.

 8    Q.      Transcripts of what?

 9    A.      Our last meeting.

10    Q.      Okay.  Your --

11    A.      Or deposition.

12    Q.      Sure.  Your sworn testimony provided back in

13    February of 2020.  Does that sound correct?

14    A.      Yes.

15    Q.      Okay.  You testified and your parents also

16    testified at that time, correct?

17    A.      Yes.

18    Q.      Did you review only your testimony?  Or did you

19    read the testimony of your parents as well?

20    A.      Just me and my father's.

21    Q.      Okay.  Were there any other documents, other

22    than those transcripts you identified for me, that you

23    reviewed?

24    A.      No.

25    Q.      Did you have any conversations with anyone in
```

Levi Werley
June 29, 2022

```
1    preparation for your testimony here today, other than
2    those with your attorney?
3    A.      No.
4    Q.      On the date of the accident, June 29th, 2019,
5    where did you live?
6    A.      8188 Lisa Road, Kempton, PA.
7    Q.      And with whom did you live?
8    A.      My mom, my dad and my sister.
9    Q.      Do you remember what vehicles were in the
10   household at that time?
11   A.      Not really all of them.  They've changed --
12   Q.      Sure.
13   A.      -- but some.
14   Q.      What vehicles do you remember?
15   A.      My dad's F-150, his F-450, my mom's Tahoe, my
16   dirt bike, the two Jeep Cherokees.
17   Q.      Now, are you talking about Jeep Cherokees that
18   were considered to be off-road Cherokees?
19   A.      Yes.
20   Q.      Did your sister also drive a Cherokee at that
21   time, if you remember?
22   A.      I'm not sure --
23   Q.      Okay.
24   A.      -- but she did have one.
25   Q.      Okay.
```

Levi Werley
June 29, 2022

1    A.      I'm not sure when she got it exactly.

2    Q.      Fair enough.

3            Do you remember any other vehicles?

4    A.      No.  A backhoe.

5    Q.      Okay.  Any other vehicles?

6    A.      No.

7    Q.      You referenced "my dirt bike."  Are you

8    referring to the dirt bike you were driving at the time

9    of the accident?

10   A.      Yes.

11   Q.      Was there a second dirt bike that your family

12   owned at that time?

13   A.      Yes.

14   Q.      What dirt bike was that?

15   A.      A PW80.

16   Q.      And how long had you had that dirt bike, if you

17   remember?

18   A.      I could give an estimate.

19   Q.      If you can, sure.

20   A.      I think I got it when I was 8.

21   Q.      Okay.  Were you involved at all with the

22   decision to purchase the dirt bike that was involved in

23   this accident?

24   A.      With the decision to get it?

25   Q.      Did you have any say or input?

Levi Werley
June 29, 2022

```
 1    A.        Some.  I mean, I told my parents I wanted to get
 2    a different dirt bike.
 3    Q.        Why did you want a different one?
 4    A.        Because my old one was getting small for me.
 5    Q.        Do you recall how old you were at the time the
 6    new dirt bike was purchased?
 7    A.        I believe 13 --
 8    Q.        Okay.
 9    A.        -- years old.
10    Q.        Did you financially contribute at all to the
11    purchase of that dirt bike?
12    A.        No.
13    Q.        Did you have any input or say on the specific
14    dirt bike that was bought?
15    A.        Somewhat.  I -- I told them kind of what I
16    wanted and that I wanted a Yamaha again.
17    Q.        Did you go with your dad to purchase this dirt
18    bike that was involved in the accident?
19    A.        Yes.
20    Q.        Okay.  After it was purchased, did anyone other
21    than you use it?
22    A.        No.
23    Q.        Can you tell me what your use was like?  And
24    just in terms of the frequency, how often would you use
25    the dirt bike?
```

Levi Werley
June 29, 2022

```
 1    A.       I could give an estimate.  I would say once a

 2    week, if not once every two weeks, if the weather was

 3    nice --

 4    Q.       Okay.

 5    A.       -- and I could have time to get it out in the

 6    nice weather.

 7    Q.       Where would you ride it?

 8    A.       Mostly my house and sometimes friends' houses.

 9    Q.       How often would you take it to a friend's house?

10    A.       I don't know.

11    Q.       Was it something you did regularly?  Or was it

12    something that was typically irregular or infrequent?

13    A.       I wouldn't say irregular, but not an all the

14    time thing.

15    Q.       Okay.  Were there specific friends that you

16    would take your dirt bike to their houses?

17    A.       Yes.

18    Q.       What friends were those?

19    A.       The Bailey's house, a friend Landon's house.

20    Q.       Anyone else?

21    A.       I'm not sure.

22    Q.       Did you ever drive the dirt bike on a public

23    roadway?

24    A.       No.

25    Q.       Why not?
```

Levi Werley
June 29, 2022

1    A.        Because it wasn't made for the road, and I

2    wasn't allowed to.

3    Q.        Do you know if there was anything that could've

4    been done to the dirt bike to have made it permissible

5    to be on the roadway?

6              MR. SCHUCHMAN:  Objection to form.  Go ahead.

7              THE WITNESS:  I'm not exactly sure if it ever

8    could be made for the street, but I know some of the

9    requirements you need to have a bike on the street and it

10   did not have them.

11   BY MS. EDGAR:

12   Q.        Okay.  What would be some of those requirements

13   that it didn't have that you know of?

14   A.        Lights, different DOT-approved street tires,

15   possibly different suspension --

16   Q.        Okay.

17   A.        -- and I'm not sure what else.

18   Q.        Would any of your friends drive their dirt bikes

19   on public roadways?

20   A.        No.

21   Q.        Okay.  If you would need to get your dirt bike

22   from your home to a friend's house, how would you get it

23   there?

24   A.        Normally my dad would haul it, but sometimes

25   other people would transport it.

Levi Werley
June 29, 2022

1    Q.      Would you ever let anyone else drive your dirt

2    bike like a friend or someone like that?

3    A.      Not that I could remember.  I was stingy.

4    Q.      And why is that?

5    A.      I just never really liked letting other people

6    use it.  It was important to me and it was one of my

7    favorite things, so I just kept it to myself.

8    Q.      Did you ever, that you can recall, have

9    conversations with your parents about registering the

10   dirt bike with Penn Dot?

11   A.      No.

12   Q.      And I want to clarify:  No, you don't remember?

13   Or, no, you never had those conversations?

14   A.      I don't recall ever having a conversation about

15   that.

16   Q.      Okay.  Do you recall any conversations with your

17   parents about insurance for the dirt bike?

18   A.      No.

19   Q.      You were 15 at the time of this accident,

20   correct?

21   A.      I believe so.

22   Q.      And so presumably you didn't have a Pennsylvania

23   driver's license; is that right?

24   A.      No.

25   Q.      Okay.  Did you financially contribute at all to

Levi Werley
June 29, 2022

```
 1    the dirt bike in terms of its maintenance if it needed

 2    something repaired or replaced?  Anything like that?

 3    A.      Sometimes -- sometimes I would chip in.

 4    Q.      Okay.  Now, when your mom testified, she said

 5    that there were some rules for use of the dirt bike and

 6    she identified some of those rules.

 7            Having heard her testimony, is there anything in

 8    terms of those rules that you would add or clarify?

 9    A.      I could never ride it in the dark.

10    Q.      Okay.  Anything else?

11    A.      No.  Not that I can think of.

12    Q.      Okay.  I know you were only 15 at the time of

13    this accident, but did you ever have any conversations

14    with your insurance agent about any of the insurance

15    coverage for vehicles in your home?

16    A.      No.

17    Q.      All right.

18            MS. EDGAR:  I think those are all my questions

19    for you.  Thank you.

20            COURT REPORTER:  Would you both like a copy for

21    all witnesses today?

22            MS. EDGAR:  They're going to review and sign.

23            MR. SCHUCHMAN:  Actually, we'll waive reading and

24    signing at this point.  We'll take minis and electronic

25    is fine.
```

Levi Werley
June 29, 2022

1          MS. EDGAR:  Same for me.  Thank you.

2          COURT REPORTER:  Thank you.

3              (Deposition concluded at 11:21 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Levi Werley
June 29, 2022

1                    C E R T I F I C A T I O N

2

3           I, Erin Gaffney, Court Reporter and Notary

4    Public, certify that the foregoing is a true and accurate

5    transcript of the foregoing deposition, that the witness

6    was first sworn by me at the time, place, and on the date

7    hereinbefore set forth.

8           I further certify that I am neither attorney

9    nor counsel for, nor related to, nor employed by any of

10   the parties to the action in which this deposition was

11   taken; further, that I am not a relative or employee of

12   any attorney or counsel employed in this case, nor am I

13   financially interested in this action.

14

15

16

17   Erin Gaffney

18   Court Reporter

19   and Notary Public

20

21

22

23

24

25

Levi Werley
June 29, 2022

| | |
|---|---|
| **1** | |
| **11:21** | |
| 13:3 | |
| **13** | |
| 8:7 | |
| **15** | |
| 11:19 12:12 | |

**2**

2019
6:4
2020
5:13
29th
6:4

**8**

8
7:20
8188
6:6

**A**

a.m.
13:3
accident
6:4 7:9,23
8:18 11:19
12:13
add
12:8
agent
12:14
ahead
10:6
allowed
10:2
answers
4:22
anyone
5:25 8:20

9:20 11:1
articulating
4:22
attorney
4:14 6:2

**B**

back
5:12
backhoe
7:4
Bailey's
9:19
believe
8:7 11:21
bike
6:16 7:7,8,
11,14,16,22
8:2,6,11,14,
18,25 9:16,
22 10:4,9,21
11:2,10,17
12:1,5
bikes
10:18
bought
8:14

**C**

Candace
4:13
Chad
4:17
changed
6:11
Cherokee
6:20
Cherokees
6:16,17,18
chip
12:3
clarify
11:12 12:8

comfortable
4:25 5:2
concluded
13:3
considered
6:18
contribute
8:10 11:25
conversation
11:14
conversations
5:25 11:9,
13,16 12:13
copy
12:20
correct
4:19,20
5:13,16
11:20
could've
10:3
COURT
4:5 12:20
13:2
coverage
12:15

**D**

dad
6:8 8:17
10:24
dad's
6:15
dark
12:9
date
6:4
decision
7:22,24
deposition
5:11 13:3
depositions
4:16,21
different
8:2,3 10:14,

15
DIRECT
4:7
dirt
6:16 7:7,8,
11,14,16,22
8:2,6,11,14,
17,25 9:16,
22 10:4,18,
21 11:1,10,
17 12:1,5
documents
5:4,6,21
Dot
11:10
DOT-APPROVED
10:14
drive
6:20 9:22
10:18 11:1
driver's
11:23
driving
7:8
duly
4:2

**E**

Edelstein
4:14
Edgar
4:9,13 10:11
12:18,22
13:1
electronic
12:24
estimate
7:18 9:1
exactly
7:1 10:7
EXAMINATION
4:7
examined
4:3

Levi Werley
June 29, 2022

**F**

F-150
  6:15
F-450
  6:15
Fair
  7:2
family
  7:11
father
  4:17
father's
  5:20
favorite
  11:7
February
  5:13
financially
  8:10 11:25
fine
  12:25
firm
  4:14
follows
  4:3
form
  10:6
forward
  5:1,2
frequency
  8:24
friend
  9:19 11:2
friend's
  9:9 10:22
friends
  9:15,18
  10:18
friends'
  9:8
full
  4:10

**G**

getting
  8:4
give
  4:21 7:18
  9:1
going
  12:22

**H**

Harrisburg
  4:15
haul
  10:24
heard
  4:21 12:7
home
  10:22 12:15
house
  9:8,9,19
  10:22
household
  6:10
houses
  9:8,16

**I**

identified
  5:22 12:6
important
  11:6
infrequent
  9:12
input
  7:25 8:13
instructions
  4:22,25
insurance
  11:17 12:14
involved
  7:21,22 8:18

irregular
  9:12,13

**J**

Jane
  4:17
Jeep
  6:16,17
June
  6:4

**K**

Kempton
  6:6
kept
  11:7
kind
  8:15
know
  9:10 10:3,8,
  13 12:12

**L**

L-E-V-I
  4:12
Landon's
  9:19
law
  4:14
letting
  11:5
Levi
  4:2,12
license
  11:23
Lights
  10:14
line
  4:23
Lisa
  6:6
live
  6:5,7

long
  7:16

**M**

made
  10:1,4,8
maintenance
  12:1
Margolis
  4:14
mean
  8:1
meeting
  5:9
minis
  12:24
mom
  6:8 12:4
mom's
  6:15
mother
  4:17
moving
  4:25 5:2

**N**

name
  4:10,13
need
  10:9,21
needed
  12:1
never
  11:5,13 12:9
nice
  9:3,6

**O**

Objection
  10:6
off-road
  6:18

Levi Werley
June 29, 2022

Okay
  4:10 5:3,10,
  15,21 6:23,
  25 7:5,21
  8:8,20 9:4,
  15 10:12,16,
  21 11:16,25
  12:4,10,12
once
  9:1,2
one
  6:24 8:3,4
  11:6
owned
  7:12

**P**

PA
  6:6
parents
  5:15,19 8:1
  11:9,17
Penn
  11:10
Pennsylvania
  11:22
people
  10:25 11:5
permissible
  10:4
point
  12:24
possibly
  10:15
preparation
  5:3 6:1
present
  4:16
presumably
  11:22
provided
  5:12
public
  9:22 10:19
purchase
  7:22 8:11,17

purchased
  8:6,20
PW80
  7:15

**Q**

questions
  12:18

**R**

read
  5:19
reading
  12:23
recall
  8:5 11:8,14,
  16
record
  4:10
referenced
  7:7
referring
  7:8
registering
  11:9
regularly
  9:11
remember
  6:9,14,21
  7:3,17 11:3,
  12
repaired
  12:2
repeat
  4:24
repeated
  5:1
replaced
  12:2
REPORTER
  4:5 12:20
  13:2
requirements
  10:9,12

review
  5:4,18 12:22
reviewed
  5:23
ride
  9:7 12:9
right
  11:23 12:17
road
  6:6 10:1
roadway
  9:23 10:5
roadways
  10:19
rules
  12:5,6,8

**S**

SCHUCHMAN
  10:6 12:23
second
  7:11
sign
  12:22
signing
  12:24
sister
  6:8,20
small
  8:4
sound
  5:13
speaking
  4:23
specific
  8:13 9:15
spelling
  4:11
State
  4:10
stingy
  11:3
street
  10:8,9,14

sure
  5:12 6:12,22
  7:1,19 9:21
  10:7,17
suspension
  10:15
sworn
  4:2 5:12

**T**

Tahoe
  6:15
take
  9:9,16 12:24
talking
  6:17
tell
  8:23
terms
  8:24 12:1,8
testified
  4:3 5:15,16
  12:4
testimony
  5:3,12,18,19
  6:1 12:7
Thank
  4:5 12:19
  13:1,2
thing
  9:14
things
  4:23 11:7
think
  7:20 12:11,
  18
time
  5:16 6:10,21
  7:8,12 8:5
  9:5,14 11:19
  12:12
tires
  10:14
today
  5:3 6:1
  12:21

Levi Werley
June 29, 2022

| | | |
|---|---|---|
| **told**<br>  8:1,15 | **years**<br>  8:9 | |
| **transcripts**<br>  5:7,8,22 | | |
| **transport**<br>  10:25 | | |
| **two**<br>  6:16  9:2 | | |
| **typically**<br>  9:12 | | |

---

### V

**vehicles**
  6:9,14  7:3,5
  12:15

---

### W

**W-E-R-L-E-Y**
  4:12
**waive**
  12:23
**want**
  8:3  11:12
**wanted**
  8:1,16
**weather**
  9:2,6
**week**
  9:2
**weeks**
  9:2
**Werley**
  4:2,12,13,
  17,18
**WITNESS**
  10:7
**witnesses**
  12:21

---

### Y

**Yamaha**
  8:16

Thomas Bollinger   717-357-6854

I Thomas Bollinger sold my 2006
YZ85 to Chad Werley on April 24th 2017
for $1400.
Vin# JYACB04C76A087904

Cleasant riders edge HVA253
717-334-2518

EXHIBIT
1



EXHIBIT

2

# **Auto Insurance** Application for Insurance



**FARMERS**
INSURANCE

This document is an Application for Insurance. Your signature at the end of this document is required. If our records do not show that you have provided us with a signed copy of this document, we reserve the right to terminate your coverage as permitted by law. Please keep a copy for your records. Read your policy. The policy of insurance for which this application is being made, if issued, may be cancelled without cause at the option of the insurer at any time in the first 60 days during which it is in effect and at any time thereafter for reasons stated in the policy.

| | | Premiums/Fees | |
|---|---|---|---|
| **Policy Number:** | **19612-65-17** | | |
| *Effective Date:* | 5/24/2019 12:01 AM | Policy Premium | $590.10 |
| *Expiration Date:* | 11/24/2019 12:01 AM | Membership/Policy Fees* | $29.30 |
| *Named Insured(s):* | Chad Werley | (Non-Refundable) | |
| | Olivia Werley | Regulatory Charges | $0.00 |
| | 8188 Leaser Rd | ► **Policy Premium and Fees** | **$619.40** |
| | Kempton, PA 19529-8970 | Down Payment Received | $619.40 |
| | (610) 756-4425 | | |
| | werleys4@aol.com | | |
| *Your Farmers Agent:* | Justin Pradel | *Also see Information on Additional Fees below.* | |
| | 831 Conestoga Rd | | |
| | Bryn Mawr, PA 19010-1345 | | |
| | (484) 362-0900 | | |
| | FAX(866) 889-2910 | | |
| | jpradel@farmersagent.com | | |
| *Underwritten By:* | MID-CENTURY INSURANCE COMPANY | | |
| | 6301 Owensmouth Ave. | | |
| | Woodland Hills, CA 91367 | | |
| *Print Date:* | 5/20/2019 | | |
| *Go Paperless:* | Yes | | |
| *eSignature:* | Yes | | |



## *Driver and Resident Information*

The applicant, spouse, Domestic Partner and all household residents 15 years of age or older, all operators of the vehicle described in this application and all children who live away from home who drive these vehicles, even occasionally, are listed below.

| Name | Driver Status | Sex | Marital Status | DOB | Relationship | Driver License | Ride-sharing Driver |
|---|---|---|---|---|---|---|---|
| Chad Werley | Rated | Male | Married | **/**/1974 | Primary Insured | ******50 | N |
| Jane Werley | Rated | Female | Married | **/**/1968 | Spouse | ******88 | N |
| Olivia Werley | Rated | Female | Single/Separated | **/**/2002 | Other | ******84 | N |

*3*

**Application for Insurance** (continued)

### Vehicle Information

| Vehicle | Year/Make/Model/VIN | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 1999 Jeep Grand Cherokee 4D 4X4 Lar<br>1J4GW58S1XC608967 | Comprehensive.<br>Collision: | $100<br>Not Covered | |

### Auto Insurance History

| Prior Carrier | Policy Number | BI/PD: Limit | Duration |
|---|---|---|---|
| Onebeacon | 6N94290 | 250,000/500,000 | Continuous for 83 month(s) |

### Discounts

| Discount Type | Applies to Vehicle(s) | Discount Type | Applies to Vehicle(s) |
|---|---|---|---|
| Paid In Full | 1 | Homeownership | 1 |
| Good Payer | 1 | ePolicy | 1 |
| Passive Restraint | 1 | | |

### Surcharges

| Surcharge Type |
|---|
| Comp without Collision |

### Coverage Information

| Coverage | Limits<br>(applicable to all vehicles) | Premiums by Vehicle<br>Vehicle 1 |
|---|---|---|
| Bodily Injury Liability | $250,000 each person<br>$500,000 each accident<br>Full Tort | $288.50 |
| Property Damage Liability | $100,000 each accident | $175.30 |
| Uninsured Motorist Bodily<br>Injury-without Stacking | $250,000 each person<br>$500,000 each accident | $12.30 |
| Underinsured Motorist Bodily<br>Injury-without Stacking | $250,000 each person<br>$500,000 each accident | $56.60 |
| Comprehensive | | $38.00 |
| Collision | | Not Covered |
| Towing and Road Service | | Not Covered |
| FIRST PARTY BENEFITS<br>Medical Coverage | $5,000 each person | $19.40 |
| Funeral Expense Benefits | | Not Covered |
| Income Loss Benefits | | Not Covered |

## Application for Insurance (continued)

| Coverage | Limits<br>(applicable to all vehicles) | Premiums by Vehicle<br>Vehicle 1 |
|---|---|---|
| Accidental Death Benefits | | Not Covered |
| Combination Package | | Not Covered |
| Extraordinary Medical Benefits | | Not Covered |
| Total Premium Per Vehicle | | $590.10 |
| ► **Policy Premium** | | **$590.10** |

### Fee Detail

| | Total |
|---|---|
| Policy Fee | $29.30 |
| ► **Fees** | **$29.30** |
| ► **Policy Premium and Fees** | **$619.40** |

**The Quoted Premium Is Subject To Change (Increase Or Decrease).** The quoted premium is determined by base rates in effect on the effective date of the Application as referenced above, which are subject to change without notice. The Insurer also reserves the right to accept, reject, or modify the requested coverage and/or the quoted premium after review of this Application, and after review of other underwriting information.

### Rating Information

| Details | Vehicle 1 |
|---|---|
| Garaging Zip | 19529 |
| Vehicle Usage | Non-Business |

**Application for Insurance** (continued)

### *Declarations of Applicant*

**(Applicant Must initial all items)**

1) <u>**C.W.**</u>  All persons in my household are declared on this application with no exception, including, but not limited to:
   a. All persons of legal driving age, whether or not they are licensed to drive, including permit drivers;
   b. All persons whether or not they are related to me by blood, marriage, or adoption, including students attending school away from home, and;
   c. All persons whether or not they are insured by another insurer.

2) <u>**C.W.**</u>  All persons who regularly operate any car insured under this policy are declared on this application. Regularly operate means operating any car insured under this policy for more than 30 days per year

3) <u>**C.W.**</u>  All vehicles in my household, intended for coverage under this policy, are declared on this application without exception. Vehicles that appear on this application of insurance are:
   a. Owned by me and/or my spouse, resident relative, or family member in the household, and;
   b. Regularly parked, stored or garaged at my residence, except when noted that the vehicle is parked, stored or garaged at a different location.

4) <u>**C.W.**</u>  None of the vehicles listed on this application are used:
   a. to carry persons for a charge or fee, such as for a limousine, taxi service, or rideshare service unless I have disclosed my or any driver's participation in such rideshare service (like Uber or Lyft) to my agent or the Company and purchased/have available coverage for such rideshare service. I understand that use in a shared-expense car pool is acceptable;
   b. in the business of selling, repairing, servicing, storing, or parking of vehicles;
   c. in any racing, speed, or demolition event or contest or stunting activity or in preparation for such an event, contest, or activity;
   d. as a vehicle rented or leased to others;
   e. by my employee (unless by a domestic employee, such as maids, chauffeurs, or nannies which must be listed on the policy);
   f. in the pick-up or delivery of goods or services, including but not limited to the business or occupation of pizza delivery, farm produce delivery, mail delivery, newspaper delivery, messenger service, or;
   g. for emergency services

5) <u>**C.W.**</u>  I have disclosed all vehicles owned, maintained or operated in any full or part-time profession, occupation, trade or commercial enterprise

6) <u>**C.W.**</u>  None of the drivers declared on this application have been convicted of insurance fraud.

7) <u>**C.W.**</u>  At least one vehicle listed on the application is garaged in Pennsylvania at least ten (10) months a year.

## Application for Insurance (continued)

**Coverage Period.** I understand that coverage will not be effective any earlier than the date and time the application is bound by the Insurer, signed by me and the premium paid.

I understand that the Coverage Period is effective as shown above and after the time for which applied. The policy may be renewed for an additional policy term, only as specified in any renewal offer, which is subject to the insured's payment of the specified premium in advance of the respective renewal date.

**Policy Coverage.** I understand that the Insurer provides insurance only for those coverages indicated by a specific limit, deductible or other notation and for which a premium for the coverage is shown. Physical Damage Coverage (if afforded) is based on the actual cash value of the factory standard motor vehicle and no coverage exists for customizing, add-on equipment or accessories that are not factory standard unless listed on this application.

**Consumer reports.** I agree to allow the Insurer to share my name, address, date of birth and social security number with third party consumer reporting agencies and insurance support organizations in order to obtain consumer reports, as permitted by law, for this application, any policy, renewals, or for any claim.

**Credit History Disclosure.** In connection with this application for insurance, we may review your credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of your insurance score.

**Fraud Warning.** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

**Insurance Binder.** The insurance reflected in this Application is applied for and is hereby temporarily bound until the earlier of (i) **30** days from the Effective Date of this Application; (ii) the issuance of a policy originally applied for to the Named Insured; or (iii) at least ten days, or any longer period required by applicable state law, from the date we mail notice that coverage has been cancelled. If coverage under this binder expires, no further notice is required to be sent to the Named Insured. *The terms of this binder take precedence over any other policy terms with regard to notice of termination.*

**E-Mail Disclosure.** I understand that by providing my e-mail address to the Insurer, I may receive emails regarding my coverage – including but not limited to, premiums due, the status of my coverage, and renewals – and customer satisfaction or other surveys regarding my experience with Farmers. I understand that the Insurer and its affiliates will not sell or furnish my e-mail address to any non-affiliated third party and that I may opt out of receiving e-mails. Further, I understand that providing my email address is not a condition of purchase.

**Initial Premium Payment.** I understand that if any initial premium is remitted by check, draft, money order, credit/debit card, or Electronic Funds Transfer (EFT), such payment is a conditional payment and is only accepted subject to collection, and it is agreed that if the premium remittance is not honored, the Insurer may, at its option, rescind (void) my coverage from inception.

**Loss History.** I understand that the Insurer will consider my loss history in determining whether to decline, cancel,nonrenew or surcharge my coverage and that any claim made under my coverage will be reported to an insurance support organization.

**Policy Fee.** I understand a Policy Fee applies to this policy, if set forth on the **Declarations Page**. The fees are fully earned and are not refundable, unless required by state law. However, if **we** cancel **your** policy during the initial policy period, policy fees will be refunded in full.

**Paperless Document Delivery.** I understand that I have the option of enrolling in paperless delivery of policy and/or billing documents. If I choose, or have chosen, paperless (electronic) delivery, I will be required to log onto Farmers com, review and accept the terms and conditions of Go Paperless/Paperless Policy and/or Paperless Billing If I do not accept the terms of paperless delivery, I will continue to receive Policy and/or Billing documents by mail. I understand that my enrollment in paperless delivery is not a condition of purchase.

**Application for Insurance** (continued)

### *Important Notice*

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.*

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715 (d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

## Application for Insurance (continued)

### *Information on Additional Fees

The "Fees" stated in the "Premium/Fees" section on the front apply on a per-policy, not an account basis. The following additional fees also apply:

1.  **Service Charge per installment** (In consideration of our agreement to allow you to pay in installments):
    - For Recurring Electronic Funds Transfer (EFT) and fully enrolled online billing (paperless): **$0.00** (applied per account)
    - For other Recurring EFT plans: **$2.00** (applied per account)
    - For all other payment plans: **$5.00** (applied per account)

If this account is for more than one policy, changes in these fees are not effective until the revised fee information is provided for each policy.

2.  **Late Fee: $10.00** (applied per account)
3.  **Returned Payment Charge: $20.00** (applied per check, electronic transaction, or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account)
4.  **Reinstatement Fee: $25.00** (applied per policy)

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.

I agree that the amount of any fee charged may change with any renewal of coverage and that the Insurer retains the right to change the amount, terms or conditions of the assessment of any fee with any such renewal. I understand that if the Insurer changes the amount of the assessment of any fee listed above, the Insurer will notify me of these changes in their offer to renew my policy.

I further understand that I am required to pay all fees assessed. My failure to pay more than a single late fee or failure to pay more than a single installment fee may result in cancellation of my coverage. Failure to pay any fees may result in the assessment of additional fees or the possibility of my account being assigned to a collections bureau.

**Acknowledgment.** I represent that I have applied for the insurance coverage(s) and limits as set forth in this Application for Insurance. I confirm that I have provided true, correct and complete information to the best of my knowledge in this Application, including the statements I was required to initial in the Declarations of Applicant section. The information provided above and my promises are offered to the Insurer as an inducement to issue the policy for which I am applying. I acknowledge and agree that a failure to provide any and all additional information requested within the time required, or my having concealed or misrepresented any material information requested in this Application or in the Declarations of Applicant section may cause an increase in the risk of loss for the insurer and may, depending upon the law of the State in which I am signing, result in a declination of my Application, an increase in premium, failure to pay my claim(s), cancellation, nonrenewal or rescission (voiding) of any policy that may be issued to me.

I have read the above Application for Insurance. I agree that the application accurately summarizes the insurance for which I have applied and agree to the terms and conditions of the insurance as described in the Application.

Signed this _____ day of _____,
                      Month      Year

**X**    E-SIGNed 05/21/2019 by
       CHAD WERLEY

Applicant's Signature (if applicant is a minor, parent or guardian must also sign)

# EXHIBIT E

Jane Werley
June 29, 2022

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

MID-CENTURY INSURANCE COMPANY,          :

                  Plaintiff,          : CIVIL DIVISION

                                :

        vs.          : Civil Action Number:

                                : 5:21-cv-05592

CHAD WERLEY and JANE WERLEY,          :

individually and as parents and          : JURY TRIAL DEMANDED

guardians of LEVI WERLEY, a minor. :

              Defendants.          :

- - -

JUNE 29, 2022

        Oral deposition of JANE WERLEY, held at the

offices of KOZLOFF STOUDT, located at 2640 Westview

Drive, Wyomissing, Pennsylvania on Wednesday, June 29,

2022, at approximately 10:54 a.m., before Erin Gaffney,

Court Reporter and Notary Public in and of the

Commonwealth of Pennsylvania.

Jane Werley
June 29, 2022

1    APPEARANCES:

2

3    ON BEHALF OF THE PLAINTIFF:

4    MARGOLIS EDELSTEIN

5    BY:  CANDACE N. EDGAR, ESQUIRE

6    214 Senate Avenue, Suite 402

7    Harrisburg, Pennsylvania 17011

8    (717) 760-7504

9    cedgar@margolisedelstein.com

10

11   ON BEHALF OF THE DEFENDANT:

12   KOZLOFF STOUDT

13   BY:  PETER F. SCHUCHMAN, ESQUIRE

14   2640 Westview Drive

15   Wyomissing, Pennsylvania 19610

16   (610) 670-2552

17   pschuchman@kozloffstoudt.com

18

19   ALSO PRESENT:  CHAD WERLEY, LEVI WERLEY

20

21

22

23

24

25

Jane Werley
June 29, 2022

1                          INDEX

2                         -   -   -

3

4     WITNESS:                                    PAGE:

5     JANE WERLEY                                    4

6

7

8                      EXAMINATION

9     BY:  MS. EDGAR                                 4

10

11

12               PREVIOUSLY MARKED EXHIBITS

13    NAME                  DESCRIPTION           PAGE

14    EXHIBIT 1                Photograph           7

15

16

17

18

19

20

21

22

23

24

25

Jane Werley
June 29, 2022

```
 1                         -   -   -
 2              JANE WERLEY, after having been duly sworn, was
 3      examined and testified as follows:
 4                         -   -   -
 5              COURT REPORTER:   Thank you.
 6                         -   -   -
 7                       DIRECT EXAMINATION
 8                         -   -   -
 9      BY MS. EDGAR:
10      Q.      Could you please state your full name with
11      spelling for the record?
12      A.      Jane, J-a-n-e, Werley, W-e-r-l-e-y.
13      Q.      Ms. Werley, my name is Candace Edgar.  I'm an
14      attorney with the law firm of Margolis Edelstein in
15      Harrisburg.
16              You were present for your husband's deposition,
17      which was just completed, correct?
18      A.      Yes.
19      Q.      And at the beginning of his deposition, I went
20      over some ground rules or instructions for the
21      deposition.
22              Did you hear those?
23      A.      Yes.
24      Q.      Would you like me to repeat them for you?  Or do
25      you feel comfortable moving forward without the
```

Jane Werley
June 29, 2022

1   repetition?

2   A.      We can move forward.

3   Q.      Okay.  You understand that you've taken an oath

4   to tell the truth today, correct?

5   A.      Yes.

6   Q.      And that is the same oath that you took back in

7   February of 2020 when you provided sworn testimony.

8           Do you understand that?

9   A.      Yes.

10  Q.      In preparation for your testimony today, did you

11  review any documents?

12  A.      Yes.

13  Q.      What documents were those?

14  A.      The transcripts from February.

15  Q.      Did you review the transcript of your sworn

16  testimony?  Or did you review the testimony of others?

17  A.      Mine.  I -- I read them all.

18  Q.      Okay.  And when you say "all," are you referring

19  to the testimony of your husband and your son?

20  A.      Yes.

21  Q.      Would there be anyone else's testimony other

22  than yours, your husband's, or son's that you would've

23  reviewed?

24  A.      No.

25  Q.      Were there any other documents other than those

Jane Werley
June 29, 2022

1   transcripts you reviewed?

2   A.      No.

3   Q.      Other than conversations with your lawyers, did

4   you speak with anyone in preparation for your testimony

5   today?

6   A.      No.

7   Q.      Were you involved with the purchase of the dirt

8   bike that was involved in the accident on June 29th of

9   2020 -- I'm sorry -- 2019 rather?

10  A.      Yes.

11  Q.      What was your involvement?

12  A.      We talked about purchasing the dirt bike for

13  Levi.

14  Q.      When you say "we," to whom are you referring?

15  A.      Chad and I.

16  Q.      Your husband?

17  A.      Yes.

18  Q.      Okay.  And why did you decide that you wanted to

19  purchase a dirt bike for Levi?

20  A.      He outgrew the other one.

21  Q.      And that would've been the --

22  A.      The 80.

23  Q.      The Yamaha 80?

24  A.      Yes.

25  Q.      Okay.  What other involvement did you have in

Jane Werley
June 29, 2022

1    the decision to purchase the dirt bike that was involved

2    in the underlying accident?

3    A.     I don't know much about purchasing dirt bikes,

4    so Chad handled most of that.

5    Q.     Did you contribute any of the money that was

6    paid in exchange for this dirt bike?

7    A.     We're a married couple.  So the money all comes

8    from the same place.

9    Q.     I understand.  So you consider it joint money?

10   A.     Yes.

11   Q.     Understood.  Every married couple is different,

12   so I don't want to make that assumption.

13          Did you have any involvement once the dirt bike

14   was purchased with either its use or maintenance or

15   ownership?

16          MR. SCHUCHMAN:  Objection to the form, but go

17   ahead and answer that.

18          THE WITNESS:  Can you repeat that?

19          MS. EDGAR:  Sure.

20   BY MS. EDGAR:

21   Q.     After the dirt bike was purchased in April --

22   well, let me back up a little bit.

23          Exhibit 1 of your husband's deposition was a

24   handwritten notation.

25   A.     Yes.

Jane Werley
June 29, 2022

1    Q.      Have you seen that before today?

2    A.      Yes.

3    Q.      When did you first see it?

4    A.      When they came home with the dirt bike and put

5    it in the safe.

6    Q.      Okay.  The date that's listed there as the date

7    of purchase is April 28th of 2017.

8            Does that sound correct to you?

9    A.      That's what it says.  I -- I assume it's

10   correct.

11   Q.      Okay.  You don't have any reason to believe that

12   it may be incorrect?

13   A.      No.

14   Q.      Okay.  After the date of purchase of that dirt

15   bike, did you have any continued involvement with the

16   dirt bike?

17   A.      I don't know what you mean by "continued

18   involvement".

19   Q.      Sure.

20   A.      The dirt bike is at my house.

21   Q.      Okay.

22   A.      So I don't work on the dirt bike, but it's

23   there.

24   Q.      So it's stored at your home -- it was stored at

25   your home?

Jane Werley
June 29, 2022

 1    A.       Yes.

 2    Q.       Okay.  Was it ever stored elsewhere at any

 3    point?

 4    A.       No.

 5    Q.       After its purchase, did you ever use or ride the

 6    dirt bike?

 7    A.       No.

 8    Q.       Were you ever present when the dirt bike was

 9    used or ridden by Levi after its purchase?

10    A.       Yes.

11    Q.       Do you recall approximately on how many

12    occasions you would've been present?

13    A.       He -- he rode it on our property.  So -- so, you

14    know, I was present a lot of times.  I can't estimate

15    how many.

16    Q.       Okay.  And I appreciate that.

17             So from the time of its purchase in April of

18    2017 until the accident in June of 2019, that's a little

19    bit more than two years.

20             Does your recollection of that time, do you know

21    how often Levi would ride the dirt bike?

22    A.       I'm -- I'm not sure.  I could guess, if you

23    wanted me to guess.

24    Q.       Well, as I explained to your husband, ma'am, I

25    don't want you to guess, but certainly if you have an

Jane Werley
June 29, 2022

```
1    estimation or approximation, that's okay.  Just let me
2    know that you're estimating or approximating so I
3    understand the context of your answer.
4    A.      The dirt bike mostly on weekends, but on our
5    property it could've been more often than that --
6    Q.      Okay.
7    A.      -- because he can ride it whenever he wanted to
8    when he was at home.
9    Q.      Did he have to ask permission before riding it?
10   A.      Not always.
11   Q.      When did he have to ask permission?
12   A.      If he wanted to ride on someone else's property.
13   Q.      Do you recall any instances in which he asked
14   permission to ride the dirt bike on someone else's
15   property and you refused it?
16   A.      No.
17   Q.      Do you know what other properties he would ride
18   the dirt bike on other than your own?
19   A.      There's the cabin up in Columbia County where
20   they spent time.  And some of his friends who also ride
21   dirt bikes, he would ride with them at their house
22   sometimes.
23   Q.      To your knowledge, did anyone other than Levi
24   ever operate the dirt bike that was involved in this
25   accident?
```

Jane Werley
June 29, 2022

1    A.      No.

2    Q.      You said that there would be times when he would

3    operate the dirt bike with his friends who would also be

4    riding their own dirt bikes.

5            Is that right?

6    A.      Yes.

7    Q.      Would he ever operate the dirt bike when other

8    vehicles were being operated as well?

9    A.      Yes.

10   Q.      Do you know how often that happened

11   approximately?

12   A.      No, not very often.

13   Q.      When Levi would operate the dirt bike off of

14   your property, would you usually be present for those

15   uses?

16   A.      Occasionally.

17   Q.      So if you were only present occasionally, would

18   it be fair to say when he used the dirt bike off of your

19   property, that most of the time that you weren't there?

20   A.      Correct.

21   Q.      Levi did not have a Pennsylvania driver's

22   license at the time of this accident, correct?

23   A.      No.

24           MR. SCHUCHMAN:  So that's correct?

25           THE WITNESS:  Yes, it's correct.

Jane Werley
June 29, 2022

```
 1    BY MS. EDGAR:

 2    Q.      Was the dirt bike registered?

 3    A.      No.

 4    Q.      Did you have any involvement in the decision not

 5    to register the dirt bike?

 6            MR. SCHUCHMAN:  Objection to the form.  Go ahead.

 7            THE WITNESS:  To my knowledge, it didn't need to

 8    be registered.  It was an off-road vehicle.

 9    BY MS. EDGAR:

10    Q.      When you say "an off-road vehicle," can you

11    explain to me what you mean by that?

12    A.      A dirt bike can only be ridden off-road.  It

13    can't be registered to be driven on a street.  You --

14    they're not made for that.

15    Q.      Okay.  So that's your understanding of the law,

16    that a dirt bike can never be registered to be operated

17    on a public roadway?

18    A.      Yes.

19    Q.      The dirt bike was also uninsured at the time of

20    the accident, correct?

21    A.      Yes.

22    Q.      Why was it not insured?

23            MR. SCHUCHMAN:  Objection to the form.  Go ahead.

24            THE WITNESS:  Because it's an unregistered

25    vehicle.  I was not aware that we could insure it on our
```

Jane Werley
June 29, 2022

1   auto policy.

2   BY MS. EDGAR:

3   Q.      Did you ever take any steps to research whether

4   or not insurance coverage was an option?

5   A.      I didn't.

6   Q.      You did or did not?

7   A.      I did not.

8   Q.      Sorry.  Okay.

9           Given your testimony that the dirt bike was

10  off-road, if Levi wanted to operate it off of your

11  property, how would the dirt bike get to wherever he

12  wanted to ride it?

13  A.      It would have to be transported with another

14  vehicle.  So sometimes it went on a trailer, sometimes

15  it went on a rack that it hangs on, almost like a

16  bicycle rack on a vehicle.  Put it in the back of a

17  pickup truck and drive it over, but it would have to be

18  transported there.  It couldn't be driven.

19  Q.      To your knowledge, was the dirt bike ever driven

20  on a public roadway?

21  A.      No.

22  Q.      Did you ever have a conversation with Levi about

23  not driving the dirt bike on any public roadways?

24  A.      Yes.

25  Q.      Can you tell me about those conversations?

Jane Werley
June 29, 2022

1    A.      Well, he was rather young when he got his first

2    one and I'm very strict with the rules of the dirt bike.

3    You don't ride it on the road, ever.  You don't ride it

4    without equipment, ever, or I take the dirt bike away.

5           And we're very strict about the safety of when

6    he was riding and where he was riding.

7    Q.      When you say "you were strict about the safety,"

8    what other considerations other than what you just told

9    me about use of equipment not on public roadways?

10   A.      You're asking me specific to my strictness on

11   safety?

12   Q.      I'm just trying to understand what you mean by

13   safety.  So safety is kind of a very broad word.

14          Were there other considerations other than what

15   you already told me about in terms of Levi not riding

16   the dirt bike on a public roadway and not using

17   equipment?

18   A.      Well, there's a lot of things depending where

19   you're riding and what the terrain is like, but mainly,

20   you know, it's never to be driven on the road.  You

21   always have your equipment on.  So helmet, you know,

22   gloves, whatever equipment they need.

23          And I always knew where he was.  I wasn't always

24   with him, but I knew where he was.

25   Q.      Did you know who he was with?

Jane Werley
June 29, 2022

1  A.       Mostly, yes.  I mean, there could've been other
2  kids there that I wasn't aware of, but...
3  Q.       Did you know if the people he was with were
4  operating dirt bikes or vehicles around his use of the
5  dirt bike?
6  A.       He'd ride with other dirt bikes.  Yes.
7  Q.       Were you involved at all in the purchase of the
8  insurance policies for vehicles in your household?
9  A.       Yes.
10  Q.       What was your involvement there?
11  A.       I would just get all the information to the
12  agent of what needed to be insured, and would instruct
13  Justin to make sure that we had full coverage on
14  everything.
15  Q.       When you reference info to the agent, what sort
16  of information would you provide him with?
17  A.       I don't remember.  I mean, if you -- if we
18  bought a truck for the business, let's say, he just
19  wanted a copy of the title or the pink slip with the VIN
20  number.  That's pretty much all he asked for.
21  Q.       Okay.  Do you recall any conversations with
22  Justin about your ownership or use of dirt bikes?
23  A.       No.
24  Q.       Your husband testified that you also had two
25  Jeep Cherokees in your household at the time of the

Jane Werley
June 29, 2022

```
1    accident that were not insured.

2            Is that correct?

3    A.      I believe that's correct.  Yes.

4    Q.      Other than the two dirt bikes and the two Jeep

5    Cherokees that were uninsured, were there any other

6    vehicles in your household that were not insured at the

7    time of the accident?

8    A.      No.

9    Q.      Okay.  To your knowledge, had the dirt bike

10   undergone any sort of state vehicle inspection prior to

11   the accident, following its purchase?

12   A.      State inspection is not required for a dirt

13   bike.  So if you're asking me, did we take it to a state

14   inspection shop like you would a car or a truck?  No.

15   Q.      Okay.

16           MS. EDGAR:  Those are all my questions for you.

17   Thank you.

18           MR. SCHUCHMAN:  Can I ask real quick?

19                          -   -   -

20                    CROSS-EXAMINATION

21                          -   -   -

22   BY MR. SCHUCHMAN:

23   Q.      There's a couple of Cherokees, were those

24   off-road vehicles -- uninsured Cherokees were those

25   off-road vehicles?
```

Jane Werley
June 29, 2022

1    A.      Yes.

2            MR. SCHUCHMAN:   That's it.

3            MS. EDGAR:    Thank you.

4              (Deposition concluded at 11:10 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jane Werley
June 29, 2022

1                    C E R T I F I C A T I O N

2

3              I, Erin Gaffney, Court Reporter and Notary

4     Public, certify that the foregoing is a true and accurate

5     transcript of the foregoing deposition, that the witness

6     was first sworn by me at the time, place, and on the date

7     hereinbefore set forth.

8              I further certify that I am neither attorney

9     nor counsel for, nor related to, nor employed by any of

10    the parties to the action in which this deposition was

11    taken; further, that I am not a relative or employee of

12    any attorney or counsel employed in this case, nor am I

13    financially interested in this action.

14

15

16

17    Erin Gaffney

18    Court Reporter

19    and Notary Public

20

21

22

23

24

25

Jane Werley
June 29, 2022

### Exhibits

EX 0001 Werle
y 062922
  3:14  7:23

---

### 1

1
  7:23
11:10
  17:4

---

### 2

2017
  8:7  9:18
2019
  6:9  9:18
2020
  5:7  6:9
28th
  8:7
29th
  6:8

---

### 8

80
  6:22,23

---

### A

a.m.
  17:4
accident
  6:8  7:2  9:18
  10:25  11:22
  12:20  16:1,
  7,11
agent
  15:12,15
ahead
  7:17  12:6,23

answer
  7:17  10:3
anyone
  5:21  6:4
  10:23
appreciate
  9:16
approximately
  9:11  11:11
approximating
  10:2
approximation
  10:1
April
  7:21  8:7
  9:17
around
  15:4
asked
  10:13  15:20
asking
  14:10  16:13
assume
  8:9
assumption
  7:12
attorney
  4:14
auto
  13:1
aware
  12:25  15:2

---

### B

back
  5:6  7:22
  13:16
beginning
  4:19
believe
  8:11  16:3
bicycle
  13:16
bike
  6:8,12,19

7:1,6,13,21
8:4,15,16,
20,22  9:6,8,
21  10:4,14,
18,24  11:3,
7,13,18
12:2,5,12,
16,19  13:9,
11,19,23
14:2,4,16
15:5  16:9,13
bikes
  7:3  10:21
  11:4  15:4,6,
  22  16:4
bit
  7:22  9:19
bought
  15:18
broad
  14:13
business
  15:18

---

### C

cabin
  10:19
Candace
  4:13
car
  16:14
certainly
  9:25
Chad
  6:15  7:4
Cherokees
  15:25  16:5,
  23,24
Columbia
  10:19
comes
  7:7
comfortable
  4:25
completed
  4:17

concluded
  17:4
consider
  7:9
consideration
s
  14:8,14
context
  10:3
continued
  8:15,17
contribute
  7:5
conversation
  13:22
conversations
  6:3  13:25
  15:21
copy
  15:19
correct
  4:17  5:4
  8:8,10
  11:20,22,24,
  25  12:20
  16:2,3
could've
  10:5  15:1
County
  10:19
couple
  7:7,11  16:23
COURT
  4:5
coverage
  13:4  15:13
CROSS-
EXAMINATION
  16:20

---

### D

date
  8:6,14
decide
  6:18

Jane Werley
June 29, 2022

decision
  7:1 12:4
depending
  14:18
deposition
  4:16,19,21
  7:23 17:4
different
  7:11
DIRECT
  4:7
dirt
  6:7,12,19
  7:1,3,6,13,
  21 8:4,14,
  16,20,22
  9:6,8,21
  10:4,14,18,
  21,24 11:3,
  4,7,13,18
  12:2,5,12,
  16,19 13:9,
  11,19,23
  14:2,4,16
  15:4,5,6,22
  16:4,9,12
documents
  5:11,13,25
drive
  13:17
driven
  12:13 13:18,
  19 14:20
driver's
  11:21
driving
  13:23
duly
  4:2

E

Edelstein
  4:14
Edgar
  4:9,13 7:19,
  20 12:1,9

13:2 16:16
  17:3
either
  7:14
else's
  5:21 10:12,
  14
equipment
  14:4,9,17,
  21,22
estimate
  9:14
estimating
  10:2
estimation
  10:1
EXAMINATION
  4:7
examined
  4:3
exchange
  7:6
Exhibit
  7:23
explain
  12:11
explained
  9:24

F

fair
  11:18
February
  5:7,14
feel
  4:25
firm
  4:14
first
  8:3 14:1
following
  16:11
follows
  4:3

form
  7:16 12:6,23
forward
  4:25 5:2
friends
  10:20 11:3
full
  4:10 15:13

G

get all
  15:11
Given
  13:9
gloves
  14:22
ground
  4:20
guess
  9:22,23,25

H

handled
  7:4
handwritten
  7:24
hangs
  13:15
happened
  11:10
Harrisburg
  4:15
hear
  4:22
helmet
  14:21
home
  8:4,24,25
  10:8
house
  8:20 10:21
household
  15:8,25 16:6

husband
  5:19 6:16
  9:24 15:24
husband's
  4:16 5:22
  7:23

I

incorrect
  8:12
info
  15:15
information
  15:11,16
inspection
  16:10,12,14
instances
  10:13
instruct
  15:12
instructions
  4:20
insurance
  13:4 15:8
insure
  12:25
insured
  12:22 15:12
  16:1,6
involved
  6:7,8 7:1
  10:24 15:7
involvement
  6:11,25 7:13
  8:15,18 12:4
  15:10

J

J-A-N-E
  4:12
Jane
  4:2,12
Jeep
  15:25 16:4

Jane Werley
June 29, 2022

joint
  7:9
June
  6:8 9:18
Justin
  15:13,22

**K**

kids
  15:2
kind
  14:13
knew
  14:23,24
know
  7:3 8:17
  9:14,20
  10:2,17
  11:10 14:20,
  21,25 15:3
knowledge
  10:23 12:7
  13:19 16:9

**L**

law
  4:14 12:15
lawyers
  6:3
Levi
  6:13,19 9:9,
  21 10:23
  11:13,21
  13:10,22
  14:15
license
  11:22
listed
  8:6
little
  7:22 9:18
lot
  9:14 14:18

**M**

made
  12:14
maintenance
  7:14
make
  7:12 15:13
Margolis
  4:14
married
  7:7,11
mean
  8:17 12:11
  14:12 15:1,
  17
Mine
  5:17
money
  7:5,7,9
move
  5:2
moving
  4:25

**N**

name
  4:10,13
need
  12:7 14:22
needed
  15:12
never
  12:16 14:20
notation
  7:24
number
  15:20

**O**

oath
  5:3,6

Objection
  7:16 12:6,23
occasionally
  11:16,17
occasions
  9:12
off-road
  12:8,10,12
  13:10 16:24,
  25
okay
  5:3,18 6:18,
  25 8:6,11,
  14,21 9:2,16
  10:1,6 12:15
  13:8 15:21
  16:9,15
once
  7:13
one
  6:20 14:2
operate
  10:24 11:3,
  7,13 13:10
operated
  11:8 12:16
operating
  15:4
option
  13:4
outgrew
  6:20
ownership
  7:15 15:22

**P**

paid
  7:6
Pennsylvania
  11:21
people
  15:3
permission
  10:9,11,14
pickup
  13:17

pink
  15:19
place
  7:8
please
  4:10
point
  9:3
policies
  15:8
policy
  13:1
preparation
  5:10 6:4
present
  4:16 9:8,12,
  14 11:14,17
pretty
  15:20
prior
  16:10
properties
  10:17
property
  9:13 10:5,
  12,15 11:14,
  19 13:11
provide
  15:16
provided
  5:7
public
  12:17 13:20,
  23 14:9,16
purchase
  6:7,19 7:1
  8:7,14 9:5,
  9,17 15:7
  16:11
purchased
  7:14,21
purchasing
  6:12 7:3
put
  8:4 13:16

Jane Werley
June 29, 2022

---

**Q**

questions
  16:16
quick
  16:18

---

**R**

rack
  13:15,16
read
  5:17
real
  16:18
reason
  8:11
recall
  9:11 10:13
  15:21
recollection
  9:20
record
  4:11
reference
  15:15
referring
  5:18 6:14
refused
  10:15
register
  12:5
registered
  12:2,8,13,16
remember
  15:17
repeat
  4:24 7:18
repetition
  5:1
REPORTER
  4:5
required
  16:12

research
  13:3
review
  5:11,15,16
reviewed
  5:23 6:1
ridden
  9:9 12:12
ride
  9:5,21 10:7,
  12,14,17,20,
  21 13:12
  14:3 15:6
riding
  10:9 11:4
  14:6,15,19
right
  11:5
road
  14:3,20
roadway
  12:17 13:20
  14:16
roadways
  13:23 14:9
rode
  9:13
rules
  4:20 14:2

---

**S**

safe
  8:5
safety
  14:5,7,11,13
says
  8:9
SCHUCHMAN
  7:16 11:24
  12:6,23
  16:18,22
  17:2
see
  8:3
shop
  16:14

slip
  15:19
son
  5:19
son's
  5:22
sort
  15:15 16:10
sound
  8:8
speak
  6:4
specific
  14:10
spelling
  4:11
spent
  10:20
state
  4:10 16:10,
  12,13
steps
  13:3
stored
  8:24 9:2
street
  12:13
strict
  14:2,5,7
strictness
  14:10
sure
  7:19 8:19
  9:22 15:13
sworn
  4:2 5:7,15

---

**T**

take
  13:3 14:4
  16:13
taken
  5:3
talked
  6:12

tell
  5:4 13:25
terms
  14:15
terrain
  14:19
testified
  4:3 15:24
testimony
  5:7,10,16,
  19,21 6:4
  13:9
Thank
  4:5 16:17
  17:3
things
  14:18
time
  9:17,20
  10:20 11:19,
  22 12:19
  15:25 16:7
times
  9:14 11:2
title
  15:19
today
  5:4,10 6:5
  8:1
told
  14:8,15
trailer
  13:14
transcript
  5:15
transcripts
  5:14 6:1
transported
  13:13,18
truck
  13:17 15:18
  16:14
truth
  5:4
trying
  14:12

---

Jane Werley
June 29, 2022

two
9:19 15:24
16:4

**U**

undergone
16:10
underlying
7:2
understand
5:3,8 7:9
10:3 14:12
understanding
12:15
Understood
7:11
uninsured
12:19 16:5,
24
unregistered
12:24

**V**

vehicle
12:8,10,25
13:14,16
16:10
vehicles
11:8 15:4,8
16:6,24,25
VIN
15:19

**W**

W-E-R-L-E-Y
4:12
want
7:12 9:25
wanted
6:18 9:23
10:7,12
13:10,12
15:19

weekends
10:4
went
4:19 13:14,
15
Werley
4:2,12,13
WITNESS
7:18 11:25
12:7,24
word
14:13
work
8:22
would've
5:22 6:21
9:12

**Y**

Yamaha
6:23
years
9:19
young
14:1

Thomas Bollinger   717-357-6054

I Thomas Bollinger sold my 2006
YZ85 to Chad Werley on April 24th 2017
for $1400
Vin # JYACB04C16A007904

riders edge WVA 252

717-334-2518

EXHIBIT
1





# **Auto Insurance** Application for Insurance



**F A R M E R S**
**INSURANCE**

This document is an Application for Insurance. Your signature at the end of this document is required. If our records do not show that you have provided us with a signed copy of this document, we reserve the right to terminate your coverage as permitted by law. Please keep a copy for your records. Read your policy. The policy of insurance for which this application is being made, if issued, may be cancelled without cause at the option of the insurer at any time in the first 60 days during which it is in effect and at any time thereafter for reasons stated in the policy.

| | |
|---|---|
| **Policy Number:** | **19612-65-17** |
| *Effective Date:* | 5/24/2019 12:01 AM |
| *Expiration Date:* | 11/24/2019 12:01 AM |
| *Named Insured(s):* | Chad Werley |
| | Olivia Werley |
| | 8188 Leaser Rd |
| | Kempton, PA 19529-8970 |
| | (610) 756-4425 |
| | werleys4@aol.com |
| *Your Farmers Agent:* | Justin Pradel |
| | 831 Conestoga Rd |
| | Bryn Mawr, PA 19010-1345 |
| | (484) 362-0900 |
| | FAX(866) 889-2910 |
| | jpradel@farmersagent.com |
| *Underwritten By:* | MID-CENTURY INSURANCE COMPANY |
| | 6301 Owensmouth Ave. |
| | Woodland Hills, CA 91367 |
| *Print Date:* | 5/20/2019 |
| *Go Paperless:* | Yes |
| *eSignature:* | Yes |

### Premiums/Fees

| | |
|---|---|
| Policy Premium | $590.10 |
| Membership/Policy Fees* | $29.30 |
| (Non-Refundable) | |
| Regulatory Charges | $0.00 |
| ▶ **Policy Premium and Fees** | **$619.40** |
| Down Payment Received | $619.40 |

*Also see Information on Additional Fees below.



EXHIBIT

3

EMG  6/29/22

## Driver and Resident Information

The applicant, spouse, Domestic Partner and all household residents 15 years of age or older, all operators of the vehicle described in this application and all children who live away from home who drive these vehicles, even occasionally, are listed below.

| Name | Driver Status | Sex | Marital Status | DOB | Relationship | Driver License | Ride-sharing Driver |
|---|---|---|---|---|---|---|---|
| Chad Werley | Rated | Male | Married | **/**/1974 | Primary Insured | ******50 | N |
| Jane Werley | Rated | Female | Married | **/**/1968 | Spouse | ******88 | N |
| Olivia Werley | Rated | Female | Single/Separated | **/**/2002 | Other | ******84 | N |

3

**Application for Insurance** (continued)

### Vehicle Information

| Vehicle | Year/Make/Model/VIN | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 1999 Jeep Grand Cherokee 4D 4X4 Lar 1J4GW58S1XC608967 | Comprehensive. Collision· | $100 Not Covered | |

### Auto Insurance History

| Prior Carrier | Policy Number | BI/PD: Limit | Duration |
|---|---|---|---|
| Onebeacon | 6N94290 | 250,000/500,000 | Continuous for 83 month(s) |

### Discounts

| Discount Type | Applies to Vehicle(s) | Discount Type | Applies to Vehicle(s) |
|---|---|---|---|
| Paid In Full | 1 | Homeownership | 1 |
| Good Payer | 1 | ePolicy | 1 |
| Passive Restraint | 1 | | |

### Surcharges

| Surcharge Type |
|---|
| Comp without Collision |

### Coverage Information

| Coverage | Limits (applicable to all vehicles) | Premiums by Vehicle Vehicle 1 |
|---|---|---|
| Bodily Injury Liability | $250,000 each person $500,000 each accident Full Tort | $288.50 |
| Property Damage Liability | $100,000 each accident | $175.30 |
| Uninsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $12.30 |
| Underinsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $56.60 |
| Comprehensive | | $38.00 |
| Collision | | Not Covered |
| Towing and Road Service | | Not Covered |
| FIRST PARTY BENEFITS Medical Coverage | $5,000 each person | ☒$19.40 |
| Funeral Expense Benefits | | Not Covered |
| Income Loss Benefits | | Not Covered |

## Application for Insurance (continued)

| Coverage | Limits (applicable to all vehicles) | Premiums by Vehicle Vehicle 1 |
|---|---|---|
| Accidental Death Benefits | | Not Covered |
| Combination Package | | Not Covered |
| Extraordinary Medical Benefits | | Not Covered |
| Total Premium Per Vehicle | | $590.10 |
| ► Policy Premium | | **$590.10** |

### Fee Detail

| | Total |
|---|---|
| Policy Fee | $29.30 |
| ► Fees | **$29.30** |
| ► Policy Premium and Fees | **$619.40** |

**The Quoted Premium Is Subject To Change (Increase Or Decrease).** The quoted premium is determined by base rates in effect on the effective date of the Application as referenced above, which are subject to change without notice. The Insurer also reserves the right to accept, reject, or modify the requested coverage and/or the quoted premium after review of this Application, and after review of other underwriting information.

### Rating Information

| Details | Vehicle 1 |
|---|---|
| Garaging Zip | 19529 |
| Vehicle Usage | Non-Business |

**Application for Insurance** (continued)

### *Declarations of Applicant*

**(Applicant Must initial all items)**

1)  **c.w.**  All persons in my household are declared on this application with no exception, including, but not limited to:
   a.  All persons of legal driving age, whether or not they are licensed to drive, including permit drivers;
   b.  All persons whether or not they are related to me by blood, marriage, or adoption, including students attending school away from home, and;
   c.  All persons whether or not they are insured by another insurer.

2)  **c.w.**  All persons who regularly operate any car insured under this policy are declared on this application. Regularly operate means operating any car insured under this policy for more than 30 days per year

3)  **c.w.**  All vehicles in my household, intended for coverage under this policy, are declared on this application without exception. Vehicles that appear on this application of insurance are:
   a.  Owned by me and/or my spouse, resident relative, or family member in the household, and;
   b.  Regularly parked, stored or garaged at my residence, except when noted that the vehicle is parked, stored or garaged at a different location.

4)  **c.w.**  None of the vehicles listed on this application are used:
   a.  to carry persons for a charge or fee, such as for a limousine, taxi service, or rideshare service unless I have disclosed my or any driver's participation in such rideshare service (like Uber or Lyft) to my agent or the Company and purchased/have available coverage for such rideshare service. I understand that use in a shared-expense car pool is acceptable;
   b.  in the business of selling, repairing, servicing, storing, or parking of vehicles;
   c.  in any racing, speed, or demolition event or contest or stunting activity or in preparation for such an event, contest, or activity;
   d.  as a vehicle rented or leased to others;
   e.  by my employee (unless by a domestic employee, such as maids, chauffeurs, or nannies which must be listed on the policy);
   f.  in the pick-up or delivery of goods or services, including but not limited to the business or occupation of pizza delivery, farm produce delivery, mail delivery, newspaper delivery, messenger service, or;
   g.  for emergency services

5)  **c.w.**  I have disclosed all vehicles owned, maintained or operated in any full or part-time profession, occupation, trade or commercial enterprise

6)  **c.w.**  None of the drivers declared on this application have been convicted of insurance fraud.

7)  **c.w.**  At least one vehicle listed on the application is garaged in Pennsylvania at least ten (10) months a year.

## Application for Insurance (continued)

**Coverage Period.** I understand that coverage will not be effective any earlier than the date and time the application is bound by the Insurer, signed by me and the premium paid.

I understand that the Coverage Period is effective as shown above and after the time for which applied. The policy may be renewed for an additional policy term, only as specified in any renewal offer, which is subject to the insured's payment of the specified premium in advance of the respective renewal date.

**Policy Coverage.** I understand that the Insurer provides insurance only for those coverages indicated by a specific limit, deductible or other notation and for which a premium for the coverage is shown. Physical Damage Coverage (if afforded) is based on the actual cash value of the factory standard motor vehicle and no coverage exists for customizing, add-on equipment or accessories that are not factory standard unless listed on this application.

**Consumer reports.** I agree to allow the Insurer to share my name, address, date of birth and social security number with third party consumer reporting agencies and insurance support organizations in order to obtain consumer reports, as permitted by law, for this application, any policy, renewals, or for any claim.

**Credit History Disclosure.** In connection with this application for insurance, we may review your credit report or obtain or use a credit-based insurance score based on the information contained in that credit report. We may use a third party in connection with the development of your insurance score.

**Fraud Warning.** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall. upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

**Insurance Binder.** The insurance reflected in this Application is applied for and is hereby temporarily bound until the earlier of (i) **30** days from the Effective Date of this Application; (ii) the issuance of a policy originally applied for to the Named Insured; or (iii) at least ten days, or any longer period required by applicable state law, from the date we mail notice that coverage has been cancelled. If coverage under this binder expires, no further notice is required to be sent to the Named Insured. *The terms of this binder take precedence over any other policy terms with regard to notice of termination.*

**E-Mail Disclosure.** I understand that by providing my e-mail address to the Insurer, I may receive emails regarding my coverage – including but not limited to, premiums due, the status of my coverage, and renewals – and customer satisfaction or other surveys regarding my experience with Farmers. I understand that the Insurer and its affiliates will not sell or furnish my e-mail address to any non-affiliated third party and that I may opt out of receiving e-mails. Further, I understand that providing my email address is not a condition of purchase.

**Initial Premium Payment.** I understand that if any initial premium is remitted by check, draft, money order, credit/debit card, or Electronic Funds Transfer (EFT), such payment is a conditional payment and is only accepted subject to collection, and it is agreed that if the premium remittance is not honored, the Insurer may, at its option, rescind (void) my coverage from inception.

**Loss History.** I understand that the Insurer will consider my loss history in determining whether to decline, cancel,nonrenew or surcharge my coverage and that any claim made under my coverage will be reported to an insurance support organization.

**Policy Fee.** I understand a Policy Fee applies to this policy, if set forth on the **Declarations Page.** The fees are fully earned and are not refundable, unless required by state law. However, if **we** cancel **your** policy during the initial policy period, policy fees will be refunded in full.

**Paperless Document Delivery.** I understand that I have the option of enrolling in paperless delivery of policy and/or billing documents. If I choose, or have chosen, paperless (electronic) delivery, I will be required to log onto Farmers com, review and accept the terms and conditions of Go Paperless/Paperless Policy and/or Paperless Billing If I do not accept the terms of paperless delivery, I will continue to receive Policy and/or Billing documents by mail. I understand that my enrollment in paperless delivery is not a condition of purchase.

## Application for Insurance (continued)

### Important Notice

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.*

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715 (d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

farmers.com      Policy No. 19612-65-17

**Application for Insurance** (continued)

---

### *Information on Additional Fees

The "Fees" stated in the "Premium/Fees" section on the front apply on a per-policy, not an account basis. The following additional fees also apply:

1. **Service Charge per installment** (In consideration of our agreement to allow you to pay in installments):
   - For Recurring Electronic Funds Transfer (EFT) and fully enrolled online billing (paperless): **$0.00** (applied per account)
   - For Non Recurring EFT plans: **$2.00** (applied per account)
   - For all other payment plans: **$5.00** (applied per account)

If this account is for more than one policy, changes in these fees are not effective until the revised fee information is provided for each policy.

2. **Late Fee: $10.00** (applied per account)
3. **Returned Payment Charge: $20.00** (applied per check, electronic transaction, or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account)
4. **Reinstatement Fee: $25.00** (applied per policy)

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.

I agree that the amount of any fee charged may change with any renewal of coverage and that the Insurer retains the right to change the amount, terms or conditions of the assessment of any fee with any such renewal. I understand that if the Insurer changes the amount of the assessment of any fee listed above, the Insurer will notify me of these changes in their offer to renew my policy.

I further understand that I am required to pay all fees assessed. My failure to pay more than a single late fee or failure to pay more than a single installment fee may result in cancellation of my coverage. Failure to pay any fees may result in the assessment of additional fees or the possibility of my account being assigned to a collections bureau.

**Acknowledgment.** I represent that I have applied for the insurance coverage(s) and limits as set forth in this Application for Insurance. I confirm that I have provided true, correct and complete information to the best of my knowledge in this Application, including the statements I was required to initial in the Declarations of Applicant section. The information provided above and my promises are offered to the Insurer as an inducement to issue the policy for which I am applying. I acknowledge and agree that a failure to provide any and all additional information requested within the time required, or my having concealed or misrepresented any material information requested in this Application or in the Declarations of Applicant section may cause an increase in the risk of loss for the insurer and may, depending upon the law of the State in which I am signing, result in a declination of my Application, an increase in premium, failure to pay my claim(s), cancellation, nonrenewal or rescission (voiding) of any policy that may be issued to me.

I have read the above Application for Insurance. I agree that the application accurately summarizes the insurance for which I have applied and agree to the terms and conditions of the insurance as described in the Application.

Signed this _____ day of _____,
                            Month      Year

**X** E-SIGNed 05/21/2019 by
CHAD WERLEY
_____
Applicant's Signature (if applicant is a minor, parent or guardian must also sign)

---

# EXHIBIT F


**FARMERS**
**INSURANCE**

Farmers Insurance
PO Box 2602
Grand Rapids MI
49501-2602

August 1, 2019

Insured:  Chad Werley Jane Werley
Policy Number:  19180-15-76
Claim Number:  3013060117-1-1
Loss Date:  6/29/2019
Policy Term:  6    Months

☐ Attached is a certified true copy of the original information sent to the insured.

☐ Attached is a certified true copy of the original declarations page, policyback and endorsements.

☒ Attached is a certified true copy of the original declaration page. The attached policyback and endorsements did not mail with this declaration page, but are included as requested.

☐ Attached is a certified true copy of the original declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page only.

☐ Attached is a certified reconstructed copy of the declaration page, policyback and endorsements.

☐ Attached is a certified reconstructed copy of the cancellation.

☐ Attached is a certified true copy of the original cancellation.

Any additional Declaration Sheet(s) included with these documents labeled as "change or change-misc." may reflect a mid-term change in the policy and therefore a time period of less than the original policy term, however the dates reflect the most current policy information on file, up to and including the date of loss for the above-referenced claim.

JUSTIN PRADEL
831 CONESTOGA RD
BRYN MAWR, PA 19010



# **Auto Insurance** Renewal

CHAD WERLEY
JANE WERLEY
8186 LEASER RD
KEMPTON PA 19529-8970

### *Your Farmers Policy*

Policy Number: 19180-15-76
Effective: 6/1/2019 12:01 AM
Expiration: 12/1/2019 12:01 AM

### *Your Farmers Agent*

**Justin Pradel**
831 Conestoga Rd
Bryn Mawr, PA 19010
(484) 362-0900
jpradel@farmersagent.com

*To file a claim call*
1-800-435-7764

4/5/2019

Dear Chad Werley and Jane Werley,

Thank you for choosing Farmers for your automobile insurance needs. We appreciate the opportunity to provide continued coverage for you and your family.

As a reminder, your policy includes **Accident Forgiveness, Incident Forgiveness, and Guaranteed Renewal** at no additional cost. You earned these benefits on a previous renewal in recognition of your excellent claims history and continued business with Farmers. For more information about how these benefits work, refer to the *Farmers Auto Rewards* endorsement(s) on your policy or contact your agent.

Please review the documents that have been enclosed:

- ID cards
- Renewal Billing Summary
- Declaration page - a summary of your insurance coverages, limits, and deductibles.

A summary of your premium information is shown below.

## *Premium at-a-glance*

| | |
|---|---|
| Policy Premium | **$1,728.20** |

If you prefer, you can log into farmers.com today to review your balance and make a payment. You can also contact us at 1-877-327-6392 or visit your agent's office with your payment.

Sincerely,

Farmers Insurance Group®

### *Did you know?*

 **Farmers Auto Rewards**

Congratulations! You are now qualified for Farmers Auto Rewards and eligible to earn accident forgiveness, incident forgiveness or guaranteed renewal. Check your declaration page to see which rewards have been applied to your policy.

**Farmers Friendly Review**

Contact your agent to learn more about the policy discounts, coverage options, and other product offerings that may be available to you.

**Go Paperless**

Save stamps, time and trees....Go Paperless! You can choose to receive your Farmers policy documents and/or billing statement electronically. Enroll at farmers.com and choose the paperless option!



**FARMERS**
INSURANCE

# Auto Insurance Billing Summary

4/5/2019

Chad Werley and Jane Werley,

**Your renewal balance is due by your renewal date - 6/1/2019.**

You can pay now with the options displayed below or an itemized billing statement will be sent on 5/2/2019.

## Your Account Summary



| | |
|---|---|
| Current term remaining balance | $0.00 |
| Renewal Premium | $1,723.20 |
| Account balance | $1,723.20 |

This is a summary and actual billed amount may change based on payment activity and future transactions. Changes made after April 5, 2019, will reflect on your statement.

**Your Current balance includes a discount for paying in full of $225.60**

### Payment Options

**Save time and never forget a bill with automatic payments.**
Sign up at farmers.com or contact your agent to set up automatic payments.
Your payment due will be automatically debited on your due date.
Pay online. Visit us at farmers.com.

**Pay by phone,** Call 1-877-327-6392 or contact your agent.

**Pay your agent directly.** Your agent can accept payment in a variety of methods.

---

**Auto Policy**
19180-15-76

**Billing Account**
W656340706

**Your Farmers Agent**
**Justin Pradel**
831 Conestoga Rd
Bryn Mawr, PA 19010
(484) 362-0900
jpradel@farmersagent.com

**Billing Questions?**

1-877-327-6392
7:00 am - 11:00 pm (CT) Mon - Fri
8:00 am - 8:00 pm (CT) Sat - Sun

---

**farmers.com**

26-6903  2-18



**FARMERS**
INSURANCE

# Auto Insurance Declaration Page

| | |
|---|---|
| **Policy Number:** 19180-15-76 | **Premiums** |
| **Effective:** 6/1/2019 12:01 AM | Policy Premium **$1,723.20** |
| **Expiration:** 12/1/2019 12:01 AM | |
| **Named Insured(s):** Chad Werley | This is not a bill. |
| Jane Werley | Your bill with the amount due will be mailed separately. |
| 8188 Leaser Rd | |
| Kempton, PA 19529-8970 | |
| werleys4@aol.com | |
| **Underwritten By:** MID-CENTURY INSURANCE COMPANY | |
| 6301 Owensmouth Ave. | |
| Woodland Hills, CA 91367 | |

## Household Drivers

All persons who drive or will occasionally be driving any of the cars on the policy should be listed below. If anyone is missing or needs to be added, such as a newly licensed driver, you should contact your agent or the company to add that person before they begin to drive any of the cars covered on the policy.

| Name | Driver Status | Name | Driver Status |
|---|---|---|---|
| Chad Werley | Covered | Jane Werley | Covered |

## Vehicle Information

| Veh. # | Year/Make/Model/VIN | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 2003 Chevrolet Truck Tahoe 4Door 4X4 | Comprehensive: | $100 | |
| | 1GNEK13Z83J308751 | Collision: | $500 | |
| 2 | 2013 Ford Truck F150 Super Pu 4X4 Super | Comprehensive: | $500 | |
| | 1FTFX1EF8DKD50366 | Collision: | $1,000 | |
| 3 | 2003 Ford Truck F450 Chassis C 4X4 Drw | Comprehensive: | $1,000 | |
| | 1FDXF47P83EC66859 | Collision: | $1,000 | |
| 4 | 1991 Ford Truck Ranger Pickup 4X4 | Comprehensive: | $100 | |
| | 1FTCR11A7MUC56823 | Collision: | Not Covered | |

## Vehicle Level Coverage Items

| | | Premiums by Vehicle | | | |
|---|---|---|---|---|---|
| Coverage | Limits (applicable to all vehicles) | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
| Bodily Injury Liability | $250,000 each person $500,000 each accident Full Tort | $100.90 | $114.90 | $109.00 | $61.30 |
| Property Damage Liability | $100,000 each accident | $60.90 | $56.30 | $148.50 | $39.90 |
| Comprehensive | | $91.40 | $66.50 | $193.10 | $30.30 |
| Collision | | $66.30 | $66.50 | $190.50 | Not Covered |

farmers.com   Policy No. 19180-15-76   **Questions?** Call your agent Justin Pradel at (484) 362-0900 or email jpradel@farmersagent.com   **Manage your account:** Go to www.farmers.com to access your account any time!

56-6176   1st Edition 5-17   4/6/2019   Page 1 of 3

## Declaration Page (continued)

| Coverage | Limits (applicable to all vehicles) | Premiums by Vehicle | | | |
|---|---|---|---|---|---|
| | | Vehicle 1 | Vehicle 2 | Vehicle 3 | Vehicle 4 |
| Towing and Road Service | | $7.70 | Not Covered | Not Covered | Not Covered |
| FIRST PARTY BENEFITS | | $23.90 | $15.90 | $26.80 | $21.80 |
| Medical Coverage | $5,000 each person | | | | |
| Funeral Expense Benefits | $2,500 each person | $0.40 | $0.30 | $0.40 | $0.40 |
| Income Loss Benefits | $1,000 per month $15,000 aggregate | $7.90 | $5.30 | $8.90 | $7.30 |
| Accidental Death Benefits | | Not Covered | Not Covered | Not Covered | Not Covered |
| Combination Package | | Not Covered | Not Covered | Not Covered | Not Covered |
| Extraordinary Medical Benefits | | Not Covered | Not Covered | Not Covered | Not Covered |

### Policy Level Coverage Items

| Coverage | Limits (for all vehicles) | Per Policy |
|---|---|---|
| Uninsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $30.10 |
| Underinsured Motorist Bodily Injury-without Stacking | $250,000 each person $500,000 each accident | $169.80 |
| 🡒 **Policy Premium** | | **$1,723.20** |

### Discounts

| Discount Type | Applies to Vehicle(s) | Discount Type | Applies to Vehicle(s) |
|---|---|---|---|
| Auto/Home | 1, 2, 3, 4 | Multiple Car | 1, 2, 3, 4 |
| Transfer | 1, 2, 3, 4 | Paid in Full | 1, 2, 3, 4 |
| Early Shopping | 1, 2, 3, 4 | Auto/Specialty | 1, 2, 3, 4 |
| Anti-Theft Dvce | 1, 2, 3 | Passive Restraint | 1, 2 |

### Other Policy Features and Benefits

- Accident Forgiveness - prevents one accident from impacting your premium
- Incident Forgiveness - protects your premium from increases due to minor traffic violations
- Guaranteed Renewal - claims activity will not lead to cancellation or nonrenewal

### Policy and Endorsements

This section lists the policy form number and any applicable endorsements that make up your insurance contract. Any endorsements that you have purchased to extend coverage on your policy are also listed in the coverages section of this declarations document: 56-5750 1st ed.; J6284 1st ed.; J6887 1st ed.; J6934 1st ed.; J7204 2nd ed.; PA032 1st ed.

farmers.com     Policy No. 19180-15-76

Questions?
Call your agent Justin Pradel at (484) 362-0900 or email jpradel@farmersagent.com

Manage your account:
Go to www.farmers.com to access your account any time!

## Declaration Page (continued)

### Other Information

- Total Citation/Accident surcharge for this policy is $0.00.
- Vehicle 1,2,3,4 - Deductible waived if glass repaired rather than replaced.
- Go Green by logging onto Farmers.com or contacting your Farmers Agent.
- If this policy includes part G "Collision" coverage, then this policy covers "Collision" damage to rental vehicles ("non-owned auto") as described and limited by the terms of part G of the policy.
- Farmers Friendly Reviews are a great way to make sure you are receiving all the discounts for which you qualify, and identify any potential gaps in coverage. Contact your agent to learn more about the policy discounts, coverage options, and other product offerings that may be available to you.

### *Information on Additional Fees

The "Fees" stated in the "Premium/Fees" section on the front apply on a per-policy, not an account basis. The following additional fees also apply:

1. **Service Charge per Installment** (In consideration of our agreement to allow you to pay in installments):
   - For Recurring Electronic Funds Transfer (EFT) and fully enrolled online billing (paperless): $0.00 (applied per account)
   - For other Recurring EFT plans: $2.00 (applied per account)
   - For all other payment plans: $5.00 (applied per account)

   If this account is for more than one policy, changes in these fees are not effective until the revised fee information is provided for each policy.

2. **Late Fee:** $10.00 (applied per account)

3. **Returned Payment Charge:** $20.00 (applied per check, electronic transaction, or other remittance which is not honored by your financial institution for any reason including but not limited to insufficient funds or a closed account)

4. **Reinstatement Fee:** $25.00 (applied per policy)

One or more of the fees or charges described above may be deemed a part of premium under applicable state law.

Countersignature

Authorized Representative

farmers.com      Policy No. 19180-15-76

**Questions?**
Call your agent Justin Pradel at (484) 362-0900 or email jpradel@farmersagent.com

**Manage your account:**
Go to www.farmers.com to access your account any time!

56-6176   1st Edition   5-17

Page 3 of 3

# Personal Auto Policy



## Index of Policy Provisions

**Declarations**
Your Personal Coverage Page is attached.

**Insuring Agreement** .............................3

**Definitions Used Throughout This Policy** ......3

**Your Duty to Report Changed Circumstances** .4

**No Coverage in Mexico** .........................4

**Financed Vehicles** .............................4

**Part I - Liability**
Coverage A - Bodily Injury Coverage....................4
Coverage B - Property Damage Coverage ...............4
Additional Definitions Used in This Part Only...........4
General Statement of Coverage .......................4
Supplementary Payments .............................5
Exclusions - What Is Not Covered.....................5
Limit of Liability ..................................5
Conformity with Financial Responsibility Law ..........5
Other Insurance.....................................5

**Part II - Uninsured Motorist/Underinsured Motorist**
Insuring Agreement Uninsured Motorist Coverage..........6
Insuring Agreement Underinsured Motorist Coverage.......6
Additional Definitions................................7
Limit of Liability ..................................8
Non-Stacked Limit of Liability ......................8
Limits of Liability applicable to Stacked and Non-Stacked Coverage..........................................8
Stacked Limit of Liability ..........................8
Exclusions that apply to Part II Uninsured/ Underinsured Motorist Coverage................................9
Other Insurance.....................................9
Arbitration.........................................10

**Part III - First Party Benefits Coverage**
Additional Definitions...............................10
Insuring Agreement - Basic First Party Benefit..........10
Insuring Agreement - Added First Party Benefits .........11
Insuring Agreement - Combination First Party Benefits .......11
Warning............................................11
Exclusions that apply to Part III First Party Benefits Coverage..........................................12
Limit of Liability ..................................12
Priorities of Policies ................................13
Other Insurance.....................................13

**Part IV - Damage to Your Vehicle**
Coverage F - Comprehensive Coverage .................13
Coverage G - Collision Coverage .....................13
Coverage H - Towing and Road Service Coverage .........13
Additional Definitions Used in This Part Only............14
Supplementary Payments .............................14
Exclusions - What Is Not Covered......................14
Limits of Liability ................................15
Payment of Loss ...................................15
No Benefit to Bailee................................15
Other Insurance.....................................15
Appraisal .........................................15

**Part V - Conditions**
1. Policy Period and Territory ........................15
2. Changes .........................................15
3. Legal Action Against Us...........................15
4. Transfer of Your Interest..........................16
5. Our Right to Recover Payment......................17
6. Two or More Vehicles Insured......................17
7. Bankruptcy......................................17
8. Termination .....................................17
9. Concealment or Fraud .............................18
10. Terms Conformed to Statutes......................18
11. Coverage Deemed Granted by Out-of-State Statute .......18
12. Constitutionality Clause ..........................19

farmers.com

## Personal Auto Policy (continued)

13. Proof of Mailing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

14. Policy and/or Filing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . .19

15. Additional Premium Due – Loss Settlement . . . . . . . . . . . . . . .19

16. Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

What to Do in Case of Accident . . . . . . . . . . . . . . . . .19

Special Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . .19

**READ YOUR POLICY CAREFULLY.**
* Any additional provisions affecting your policy are attached as "endorsements."
* This policy is a legal contract between you (the policyholder) and us (the Company). It Contains Certain Exclusions.

farmers.com

## Personal Auto Policy (continued)

### Insuring Agreement

We agree with you, in return for your premium payment, to insure you subject to all the terms of this policy. We will insure you for the coverages and the limits of liability shown in the Declarations of this policy.

### Definitions Used Throughout This Policy

Throughout this policy "you" and "your" mean the "named insured" shown in the Declarations and your spouse or registered domestic partner under applicable state law if a resident of the same household with you. Any domestic partner must be registered as required by applicable state law prior to the date of a loss. "We," "us" and "our" mean the Company named in the Declarations which provides this insurance.

In addition, the words that appear in bold type have specific definitions.

**Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **insured person**.

**Additional vehicle** means a **private passenger vehicle** of which you acquire possession either by purchase, or by a written lease of at least six continuous months. This definition applies only if you:

1. Acquire the vehicle during the policy period; and
2. Notify us within 30 days of its acquisition.

An **additional auto** will have the broadest coverage we provide for any auto shown in the Declarations.

**Bodily injury** means accidentally sustained bodily harm to an individual and that individual's illness, disease or death resulting therefrom, and includes a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

**Damages** are the cost of compensating those who suffer **bodily injury** or **property damage** from an accident.

**Family member** means a person who resides with you and who is related to you by blood, marriage, adoption, or registered domestic partnership under applicable state law (before the loss), including a ward or foster child and including a minor in the custody of you or of a person related to you who resides with you. Unmarried children of the named insured, residing elsewhere while attending school or in the armed forces, are considered to reside with the named insured, provided they are not emancipated.

**Noneconomic loss** means pain and suffering and other nonmonetary detriment.

**Non-owned vehicle** means any **private passenger vehicle** or **utility trailer**, other than your **insured vehicle**, having a gross vehicle weight of 12,000 pounds (lbs.) or less, and that is not owned by, furnished or available for regular use by you or a **family member**.

**Occupying** means in, on, getting into or out of.

**Private passenger vehicle** means a four-wheel private passenger vehicle of the coupe, sedan, station wagon, pick up truck, van or sport utility vehicle type, actually licensed for use upon public highways, and which has a gross weight not exceeding 12,000 pounds. It does not include a motor home.

**Property damage** means physical injury to or destruction of tangible property, including loss of its use.

**Rental vehicle** means any **private passenger vehicle** or **utility trailer** having a gross vehicle weight of 12,000 pounds (lbs.) or less rented by you on a daily or weekly basis not to exceed 30 consecutive days, provided that this vehicle or **utility trailer** is not owned by, furnished or available for regular use by you or a **family member**.

**Replacement vehicle** means a **private passenger vehicle** that you acquire as a replacement of any vehicle described in the Declarations, either by purchase, or by a written lease of at least six continuous months. This definition applies only if you:

1. Acquire the vehicle during the policy period; and
2. Notify us within 30 days of its acquisition.

A **replacement vehicle** will have the same coverage as any vehicle it replaces.

**Serious injury** means a **bodily injury** or a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

**State** means the District of Columbia and any state, territory or possession of the United States, Puerto Rico or any province of Canada.

**Substitute vehicle** means a **private passenger vehicle**, not owned by you, but being temporarily used by you as a substitute for any vehicle described in the Declarations. This applies only while the vehicle described in the Declarations is withdrawn from normal use because of breakdown, repair, servicing, loss, or destruction.

**Utility trailer** means a vehicle designed to be towed by a **private passenger vehicle** and includes a farm wagon or farm implement while towed by a **private passenger vehicle**. It does

## Personal Auto Policy (continued)

not include a trailer used as an office, store, display or passenger trailer.

**Your insured vehicle means:**

1. Any vehicle described in the Declarations of this policy;
2. A replacement vehicle;
3. A substitute vehicle;
4. A rental vehicle;
5. An additional vehicle;
6. Any utility trailer:
   a. That you own, or
   b. If not owned by you, while attached to your insured vehicle.

### Your Duty to Report Changed Circumstances

Your policy was issued in reliance on the information you provided, including information concerning any vehicle and persons insured by the policy. To properly insure any vehicle, you must promptly notify us when you change your address or whenever any resident operators insured by your policy are added or deleted. You agree by acceptance of this policy that all information shown on the Declarations page of your policy or on the Memorandum of Insurance is accurate. You agree that if any information changes, is incorrect or incomplete, you must notify us and we may adjust your coverage and premium accordingly during the policy period. Any calculation by us of your premium or changes in your coverage will be made using the rules, rates and forms used in your state.

### No Coverage in Mexico

This policy does not provide any coverage for any accident, occurrence or loss occurring in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write insurance in order to avoid complications and other possible penalties under the laws of Mexico.

### Financed Vehicles

If a creditor is shown in the Declarations, we may pay any Comprehensive or Collision loss to:

1. You and, if unpaid, the repairer; or
2. You and such creditor, as its interest may appear, when we find it is not practical to repair your insured vehicle;
3. To the creditor, as to its interest, if your insured vehicle has been repossessed.

When we pay the creditor for loss for which you are not covered, we are entitled to the creditor's right of recovery against you to

the extent of our payment. Our right of recovery shall not impair the creditor's right to recover the full amount of its claim.

The coverage for the creditor's interest only is valid until we terminate it.

We will not terminate such coverage because of:

1. Any act or negligence of the owner or borrower; or
2. A change in the ownership or interest unknown to us, unless the creditor knew of it and failed to tell us within 10 days; or
3. An error in the description of your insured vehicle.

The date of termination of the creditor's interest will be at least 20 days after the date we mail or electronically transmit the termination notice.

### Part I - Liability

**Coverage A** - Bodily Injury Coverage
**Coverage B** - Property Damage Coverage
Additional Definitions Used in This Part Only
**Insured person** as used in this Part means:

1. You or any family member.
2. Any person using your insured vehicle.
3. Any other person or organization with respect only to legal liability for acts or omissions of:
   a. Any person covered under this Part while using your insured vehicle.
   b. You or any family member covered under this Part while using any private passenger vehicle, other than your insured vehicle if not owned or hired by that person or organization.

**Insured person** does not mean:

1. The United States of America or any of its agencies.
2. Any person, including but not limited to a family member, for bodily injury or property damage arising from the operation of a vehicle by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply.
3. Any person, including but not limited to a family member, who uses a vehicle without having sufficient reason to believe that the use is with the permission of the owner.

### General Statement of Coverage

We will pay damages for which any insured person is legally liable because of bodily injury to any person and property damage arising out of the ownership, maintenance or use of

## Personal Auto Policy (continued)

your insured vehicle or a private passenger vehicle. At our expense and with an attorney of our choice we will defend an insured person against any covered suit. We may settle any claim or suit when and on the terms we consider appropriate. We will not defend any suit after we have paid the applicable limits of liability for the coverage at issue.

### Supplementary Payments

In addition to our limit of liability, we will pay these benefits as respects an insured person:

1. All costs we incur in the settlement of any claim or defense of any suit.

2. Interest after entry of judgment on any amount that does not exceed our limit of liability.

3. Prejudgment interest awarded against the insured person on the part of any judgment we pay. Any prejudgment interest awarded against the insured person is subject to the applicable Pennsylvania Rules of Civil Procedure.

4. Bonds:
   a. Premiums on appeal bonds on any suit we defend.
   b. Premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy.
   c. Up to $300 for the cost of bail bonds required because of accident or traffic law violation arising out of use of your insured vehicle.
   d. We are not obligated to apply for, furnish, or provide collateral or security for any of the above bonds.

5. Actual loss of wages or salary up to $200 a day, but not other income, when we ask you to attend a trial or hearing.

6. Expenses you incur for first aid to others at the time of an accident involving any vehicle insured under Part I - Liability.

7. Other reasonable expenses incurred at our request.

### Exclusions - What is Not Covered

1. We will not cover bodily injury or property damage arising out of the ownership, maintenance or use of a vehicle while used to carry persons or property for a charge. This exclusion does not apply to shared-expense car pools.

2. We will not cover bodily injury or property damage:
   a. Caused intentionally by, or at the direction of, an insured person.

b. Caused by an intentional act of an insured person whether or not such person intended to cause damage or injury of any nature.

3. We will not cover bodily injury or property damage with respect to which any person is insured under nuclear energy insurance. This exclusion applies even if the limits of that insurance are exhausted.

4. We will not cover bodily injury to an employee of an insured person arising in the course of employment. This exclusion does not apply to bodily injury to a domestic employee unless workers' compensation benefits are required.

5. We will not cover bodily injury or property damage resulting from an insured person's employment, or other involvement, in the business or occupation of transporting, selling, repairing, servicing, storing or parking of vehicles, including road testing or delivery.

   This exclusion does not apply to the ownership, maintenance or use of your insured vehicle by you, any family member, or any partner, agent, or employee of you or any family member.

6. We will not cover bodily injury or property damage resulting from the use of any vehicle by an insured person in any business or occupation where the insured person's primary duty is the delivery of goods or services, including but not limited to, the business or occupation of pizza delivery, newspaper delivery or messenger service.

7. We will not cover bodily injury or property damage resulting from the use of any vehicle by an insured person in an emergency occupation on a full-time, part-time, or volunteer basis. Such occupations include, but are not limited to, Fire Fighting, Police or Ambulance activities. This exclusion does not apply to any vehicle described in the Declarations, an additional vehicle, replacement vehicle or substitute vehicle, while used by an insured person in such activities.

8. We will not cover bodily injury or property damage resulting from the use of any vehicle that is part of a fleet or pool of vehicles provided for the regular use by an insured person in the course of his or her employment. This exclusion does not apply to any vehicle described in the Declarations, an additional vehicle, replacement vehicle or substitute vehicle.

9. We will not cover damage to property owned or being transported by an insured person.

## Personal Auto Policy (continued)

10. We will not cover damage to property rented to, or in the charge of, an insured person except for property damage to a residence or private garage not owned by that person.

11. We will not cover bodily injury or property damage arising out of the ownership, maintenance or use of any motorized vehicle with less than four wheels.

12. We will not cover bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle other than your insured vehicle, which is owned by or furnished or available for regular use by you or a family member.

13. We will not cover bodily injury or property damage resulting from liability assumed under any contract or agreement. This exclusion does not apply to liability you assume in a written contract relating to the use of a rental vehicle or non-owned vehicle.

14. We will not cover bodily injury or property damage resulting from an insured person, or your insured vehicle, taking part in any racing, speed, demolition, stunting or performance driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity.

15. We will not cover bodily injury or property damage arising out of the ownership, maintenance, or use by any person of a vehicle in which you have sold or transferred ownership. This exclusion applies even if the sale or transfer does not result in the transfer of full ownership because of any failure to comply with motor vehicle laws.

16. We will not cover punitive or exemplary damages or the cost of defense related to such damages.

17. We will not cover charges, fees and administrative expenses for services performed by law enforcement and municipal personnel when responding to a motor vehicle accident or loss.

### Limits of Liability

The limits of liability shown in the Declarations apply subject to the following:

1. The bodily injury liability limit for "each person" is the maximum for bodily injury sustained by one person in any occurrence. Any claim for loss of consortium, injury to the relationship, or bystander emotional distress arising from this injury shall be included in this limit.

   If the financial responsibility law of the place of the accident treats the loss of consortium as a separate claim, the applicable financial responsibility limits will be furnished as appropriate.

2. Subject to the bodily injury liability limit for "each person", the bodily injury liability limit for "each occurrence" is the maximum combined amount for bodily injury sustained by two or more persons in any occurrence.

3. The property damage liability limit for "each occurrence" is the maximum for all damages to all property in any one occurrence.

4. We will pay no more than the maximum limits for any vehicle insured by this policy regardless of the number of vehicles or premiums shown in the Declarations, insured persons, claims, claimants, policies, or vehicles involved in the occurrence.

This means that stacking or aggregation of liability coverage - bodily injury and property damage - will not be permitted by this policy.

### Conformity with Financial Responsibility Laws

When we certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by law.

### Other Insurance

If there is other applicable auto liability insurance on any other policy that applies to a loss covered by this Part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. The highest limits of liability shown on the Declarations for any one vehicle will apply.

## Part II - Uninsured Motorist/Underinsured Motorist

### Insuring Agreement Uninsured Motorist Coverage

If you pay us the premium when due for this coverage, we will pay for damages an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured person, caused by an accident, and arising out of the ownership, maintenance or use of an uninsured motor vehicle.

### Insuring Agreement Underinsured Motorist Coverage

If you pay us the premium when due for this coverage, we will pay for damages an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured person, caused by an accident, and arising out of the ownership, maintenance or use of an underinsured motor vehicle.

## Personal Auto Policy (continued)

We will pay under Part II only after the limits of liability under all liability policies applicable to an uninsured motor vehicle have been exhausted by payment of judgments or settlements.

We will pay under Part II only after the limits of liability under all liability bonds and policies applicable to an underinsured motor vehicle have been exhausted by payment of judgments or settlements.

No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle or underinsured motor vehicle is binding on us unless we have:

1. received reasonable notice of the filing of the lawsuit resulting in the judgment; and

2. had a reasonable opportunity to protect our interests in the lawsuit.

An insured person must notify us in writing at least 30 days before entering into any settlement with the owner or operator of an uninsured motor vehicle or underinsured motor vehicle, or that person's liability insurer. In order to preserve our right of subrogation, we may elect to pay any sum offered in settlement by, or on behalf of, an owner or operator of an uninsured motor vehicle or underinsured motor vehicle.

If we do this, the insured person shall assign to us all rights that insured person has against the owner or operator of the uninsured motor vehicle or underinsured motor vehicle, to the extent of our payment.

### Additional Definitions
When used in this Part II:

1. Insured person means:
   a. You, any family member or any other person listed as an additional driver in the Declarations;
   b. Any other person while occupying your insured vehicle, provided the actual use or occupancy thereof is with the permission of the named insured; and
   c. Any person entitled to recover damages for bodily injury covered under Part II of this policy sustained by a person meeting the definition of an insured person in 1.a. or 1.b. above.

2. Underinsured motor vehicle means a land motor vehicle or trailer of any type to which a bodily injury liability policy applies at the time of the accident but the sum of all applicable limits of liability for bodily injury is less than the full amount that an insured person is legally entitled to recover as damages. However, an underinsured motor vehicle does not include:

   a. A land motor vehicle or trailer, if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle;
   b. Any vehicle or equipment designed mainly for use off public roads, while not on public roads;
   c. A vehicle owned by or furnished for the regular or frequent use of an insured person or any member of the household of the insured person;
   d. Any vehicle or equipment to which coverage under Part I applies; or
   e. Any vehicle or equipment that is an uninsured motor vehicle.

3. Uninsured motor vehicle means a land motor vehicle or trailer of any type:
   a. For which no liability policy or bond applies at the time of the accident;
   b. To which a liability policy applies at the time of the accident but the insuring company:
      i. Denies coverage;
      ii. Refuses to admit coverage except conditionally or with reservation; or
      iii. Is or becomes insolvent, declared bankrupt, or subject to the appointment of a receiver;
   c. Which is a hit and run vehicle whose owner or operator cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:
      i. You or any family member;
      ii. A vehicle which you or any family member are occupying; or
      iii. Your covered auto.

If there is no contact with the hit and run vehicle, the facts of the accident must be proved, and the insured person or someone on his or her behalf must file a police report within 48 hours and notify us within 30 days, or as soon as practicable thereafter, that the insured person has a cause of action arising out of such accident.

However, uninsured motor vehicle does not include any vehicle:
   a. Owned by an insured person or furnished or available for the regular use of an insured person;
   b. Owned or operated by a self-insurer except a self-insurer which becomes insolvent;
   c. Operated on rails or crawler treads or while located for use as a residence or premises;

## Personal Auto Policy (continued)

d. Designed mainly for use off public roads, while not on public roads;

e. That is an underinsured motor vehicle; or

f. For which coverage under Part I applies.

### Limit of Liability

The limit of Uninsured/Underinsured Motorist Coverage shown in the Declarations is the most we will pay regardless of the number of:

1. Insured person's;
2. Claims made;
3. Vehicles or premiums shown in the Declarations;
4. Vehicles involved in the accident; or
5. Premiums paid.

### Non-stacked Limit of Liability

If you have selected non-stacked coverage under this Part II, the following shall also apply:

If the Declarations show that a split limit applies:

1. The limit of liability shown in the Declarations for each person for Uninsured/Underinsured Motorist Coverage is the maximum we will pay for bodily injury sustained by any one person in any one accident, including all claims of others derived from such bodily injury, which include, but are not limited to, emotional injury or mental anguish resulting from the bodily injury of another or from witnessing the bodily injury to another, loss of consortium, loss of services, loss of companionship, or injury to any personal relationship. Bodily injury to any one person includes all injury and damages to others resulting from this bodily injury.

2. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured/Underinsured Motorist Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

If the Declarations show that a "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all damages resulting in any one accident. This is the most we will pay regardless of the number of:

1. Insured persons;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or

stacked to determine the limit of insurance coverage available as uninsured motorist coverage or underinsured motorist coverage benefits.

### Limits of Liability applicable to Stacked and Non-Stacked Coverage

In determining the amount payable under this Part II, the amount of damages that an insured person is entitled to recover for bodily injury will be reduced by all sums:

1. paid or payable because of bodily injury by or on behalf of any persons or organizations that may be legally responsible. This includes all payments made to an insured person's attorney either directly or as part of the payment made to the insured person; and

2. paid or payable because of bodily injury under any of the following or similar laws:

   a. worker's compensation law; or

   b. disability benefits law.

However, if an insured person enters into a settlement agreement for an amount less than the sum of the limits of liability under all applicable bodily injury liability bonds and policies, our limit of liability for Underinsured Motorist Coverage shall not exceed the difference between the damages sustained by the insured person and the sum of the applicable bodily injury liability limits.

The limits of liability under this part II shall be reduced by all sums paid under Part I - Liability Coverage.

No one will be entitled to duplicate payments for the same elements of damages.

If multiple auto policies issued by us are in effect for you, we will pay no more than the highest limit of liability for this coverage available under any one policy.

### Stacked Limit of Liability

If you have selected stacked coverage under this Part II, the following shall also apply to bodily injury sustained by you or a family member:

1. If bodily injury is sustained in accident by you or any family member, the limit of liability shall be the limit available under Non-Stacked Limits of Liability described above and the limits shown in the Declarations multiplied by the number of insured vehicles that are not listed on the Declarations.

2. If you or a family member sustain bodily injury while not occupying an insured vehicle, the limit of liability shall be the limit shown in the Declarations multiplied by the number of insured vehicles. No one will be entitled

## Personal Auto Policy (continued)

to receive duplicate payments for the same elements of loss under this coverage and Part I or Part II of this policy.

3. We will not make a duplicate payment under this coverage for any element of damage for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

4. Stacked Limits of Liability shall not increase the limit of liability applicable to any insured person other than you or a family member. The non-stacked limits of liability will apply to any insured person other than you or a family member. As with non-stacked limits, the limit of liability for each person is the maximum we will pay for bodily injury sustained by any one person in any one accident, including all claims of others derived from such bodily injury, which include, but are not limited to, emotional injury or mental anguish resulting from the bodily injury of another or from witnessing the bodily injury to another, loss of consortium, loss of services, loss of companionship, or injury to any personal relationship. Bodily injury to any one person includes all injury and damages to others resulting from this bodily injury.

**Exclusions that apply to Part II – Uninsured/Underinsured Motorist Coverage**
Coverage under Part II does not apply:

1. If the insured person or their legal representative settles or prosecutes to a judgment a claim for bodily injury without our consent. This exclusion does not apply if such settlement does not adversely affect our rights.

2. To bodily injury arising out of the ownership, maintenance or operation of any vehicle while it is being used to carry persons or property for compensation or a fee, including but not limited to the pickup or delivery or return from a pick-up or delivery of products, documents, newspapers, or food. This exclusion does not apply to a share-the-expense car pool.

3. To bodily injury when an insured person is using a vehicle without a reasonable belief that the person is entitled to do so.

4. To bodily injury sustained by you or any family member while occupying or when struck by any motor vehicle owned by you or any family member which is not insured for this coverage under any similar form. This includes a trailer of any type used with that vehicle.

5. To bodily injury sustained by a family member who does not own an auto while occupying or when struck

by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

6. Directly or indirectly to benefit:
   a. Any insurer or self-insurer under any of the following or similar law:
      i. worker's compensation law; or
      ii. disability benefits law.

7. To any claim for punitive, exemplary, multiple damages, fines, penalties, or restitution.

8. To noneconomic loss sustained by any insured person to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an uninsured motor vehicle or an underinsured motor vehicle, unless the bodily injury sustained is a serious injury. This exclusion does not apply if the owner or operator of the uninsured motor vehicle or underinsured motor vehicle:
   a. Is convicted or accepts Accelerated Rehabilitative Disposition for driving under the influence of alcohol or a controlled substance in that accident;
   b. Is operating a motor vehicle registered in another state; or
   c. Intends to injure himself or another person, provided that the individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting harm to himself or another person;
   d. If that insured person is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

**Other Insurance**
If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

First, the uninsured or underinsured motorist coverage applicable to the vehicle the insured person was occupying at the time of the accident.

Second, the policy affording uninsured or underinsured motorist coverage to the insured person as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is

## Personal Auto Policy (continued)

thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

If non-stacked coverage is shown on the Declarations, the following provisions also apply:

1. When there is insurance available under the First priority:
   a. The limit of liability applicable to the motor vehicle the insured person was occupying, under the policy in the First priority, shall first be exhausted; and
   b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for UM/UIM for any one vehicle under any one policy providing coverage to you or any family member.

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest limit of any one motor vehicle under any one policy.

We will not pay for any damages which would duplicate any payment made for damages under other insurance.

### Arbitration

A. If we and an insured person do not agree:
   1. Whether that insured person is legally entitled to recover damages;
   2. As to the amount of damages which are recoverable by that insured person;

   from the owner or operator of an uninsured motor vehicle or an underinsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage may not be arbitrated.

   Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If the parties cannot agree upon an arbitrator within 30 days, or if the two arbitrators cannot select a third arbitrator, either party may request that selection of an arbitrator be made by a judge of a court having jurisdiction.

B. Each party will:
   1. Pay the expenses it incurs; and
   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

### Part III - First Party Benefits Coverage

If Added First Party Benefits or Combination First Party Benefits are not shown as applicable in the Declarations, only the Basic First Party Benefit applies.

### Additional Definitions

When used in this Part III:

1. The Act refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

2. Bodily injury means accidental bodily harm to a person and that persons resulting illness, disease or death.

3. Your insured vehicle means a private passenger vehicle:
   a. To which Part I of this policy applies and for which a specific premium is charged; and
   b. For which First Party Benefits Coverage required by the Act is maintained.

   If your insured vehicle is parked and unoccupied, it is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

4. Motor vehicle means a self-propelled vehicle operated or designed for use upon public roads. However, motor vehicle does not include a vehicle operated:
   a. By muscular power; or
   b. On rails or tracks.

5. Insured person as used in this Part III means:
   a. You or any family member.
      i. Any other person while:
         1. Occupying your covered auto; or
         2. Not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving your covered auto.

   If your insured vehicle is parked and unoccupied it is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

### Insuring Agreement - Basic First Party Benefit

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an insured person who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle. Subject to the limit shown in the Declarations, the Basic First Party Benefit consists of:

farmers.com

## Personal Auto Policy (continued)

1. Medical expenses. Reasonable and necessary medical expenses incurred for an insured person's:
   a. Care;
   b. Recovery; or
   c. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing. Medical expenses will be paid if incurred within 18 months from the date of the accident causing bodily injury.

However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

**Insuring Agreement – Added First Party Benefits**
If the Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an insured person who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle. These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.
2. Work loss.
   a. Loss of income. Up to 80% of gross income actually lost by an insured person as a result of the accident.
   b. Reasonable expenses actually incurred to reduce loss of income by hiring:
      (i) Special help, thereby enabling an insured person to work; or
      (ii) A substitute to perform the work a self-employed insured person would have performed.

   However, work loss does not include:

   a. Loss of expected income or expenses incurred for services performed after the death of an insured person; or
   b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the insured person did not work due to bodily injury.
3. Funeral expenses. Funeral or burial expenses actually incurred if bodily injury causes an insured person's death within 24 months from the date of the accident.

4. Accidental death. A death benefit paid if bodily injury causes the death of you or any family member within 24 months from the date of the accident. We will pay accidental death to the executor or administrator of the deceased insured person's estate. If there is no executor or administrator, the benefit shall be paid to:
   a. The deceased insured person's surviving spouse; or
   b. If there is no surviving spouse, the deceased insured person's surviving children; or
   c. If there is no surviving spouse or children, to the deceased insured person's estate.

**Insuring Agreement – Combination First Party Benefits**
If the Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an insured person who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle. These benefits are subject to the provisions of the Act.

We will only pay for expenses or loss incurred within three years from the date of the accident.

Subject to the limits shown in the Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

1. Medical expenses.
2. Work loss.
3. Funeral expenses.
4. Accidental death.

**Insuring Agreement – Extraordinary Medical Benefits Coverage**
Limited Benefit. Extraordinary Medical Benefits Coverage provides coverage only for medical expenses.

**Warning**
You should be aware that Extraordinary Medical Benefits Coverage does not apply to the first $100,000 of medical expenses incurred by an insured person. You can avoid having to pay some of your own medical bills by purchasing Added First Party Benefits Coverage with a $100,000 limit of liability for medical expenses.

If the Declarations indicates that Extraordinary Medical Benefits Coverage applies, we will pay, in accordance with the Act, extraordinary medical benefits to or for an insured person who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle.

## Personal Auto Policy (continued)

Subject to the limit shown in the Declarations, extraordinary medical benefits consist of reasonable and necessary medical expenses incurred for an insured person's care, recovery or rehabilitation. This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay extraordinary medical benefits only after $100,000 of medical expenses has been incurred by any one insured person as a result of any one accident.

We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an insured person as a result of an accident.

The limit of liability shown in the Declarations for Extraordinary Medical Benefits Coverage is the most we will pay to or for each insured person as the result of any one accident, regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing Extraordinary Medical Benefits.

Extraordinary medical benefits are subject to an annual limit of $50,000 for each insured person. However, this limit does not apply to medical expenses incurred within 18 months from the date the insured person incurs $100,000 of medical expenses as a result of the accident.

Any amounts payable under this coverage shall be excess over any amounts available to an insured person for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

If an insured person is eligible for benefits under both this coverage and the Catastrophic Loss Trust Fund, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Declarations.

### Exclusions That Apply to Part III - First Party Benefits Coverage

We do not provide First Party Benefits Coverage for bodily injury:

1. Sustained by any insured person while intentionally causing or attempting to cause bodily injury to himself or any other person.

2. Sustained by any insured person while committing a felony.

3. Sustained by any insured person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any insured person while maintaining or using a motor vehicle knowingly converted by that insured person. However, this exclusion does not apply to you.

5. Sustained by any insured person who, at the time of the accident, is:
   a. The owner of one or more registered motor vehicles, none of which have in effect the financial responsibility required by the Act; or
   b. Occupying a motor vehicle owned by that insured person for which the financial responsibility required by the Act is not in effect.

6. Sustained by any insured person maintaining or using a motor vehicle while located for use as a residence or premises.

7. Sustained by any insured person while occupying a
   a. recreational vehicle designed for use off public roads; or
   b. motorcycle, moped or similar-type vehicle.

8. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. However, this exclusion does not apply to you or any family member.

9. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental;)
   b. War (declared or undeclared;)
   c. Civil war;
   d. Insurrection; or
   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. Nuclear reaction;
    b. Radiation; or
    c. Radioactive contamination.

### Limit of Liability

The limits of liability shown in the Declarations for the First Party Benefits that apply are the most we will pay to or for each insured person as the result of any one accident, regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations;

## Personal Auto Policy (continued)

3. Vehicles involved in the accident; or
4. Insurers providing First Party Benefits.

If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision will not change our maximum limit of liability.

Any amounts payable under this Part III shall be excess over any amounts:

1. Paid;
2. Payable; or
3. Required to be provided;

to an insured person under any workers compensation law or similar law.

**Priorities of Policies**
We will pay First Party Benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category is the lowest level of priority.

The priority order is:

First, the insurer providing benefits to the insured person as a named insured.

Second, the insurer providing benefits to the insured person as a family member who is not a named insured under another policy providing coverage under the Act.

Third, the insurer of the motor vehicle which the insured person is occupying at the time of the accident.

Fourth, the insurer of any motor vehicle involved in the accident if the named insured is not:

a. Occupying a motor vehicle; and
b. Not entitled to First Party Benefits under any other automobile policy.

An unoccupied parked motor vehicle is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

If two or more policies have equal priority within the highest applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the Fourth priority, pro ration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an insured person will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

**Other Insurance**
No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance including self-insurance.

Any amount payable under this Part III shall be excess over any amounts paid, payable or required to be provided to an insured under any workers' compensation law or similar law.

## Part IV – Damage to Your Vehicle
**Coverage F – Comprehensive Coverage**
If you pay us the premium when due for this coverage, we will pay for loss to your insured vehicle, the equipment of your insured vehicle and the customized equipment of your insured vehicle caused by any accidental means except collision, less any applicable deductibles. Any deductible amount will apply separately to each loss.

Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, colliding with a bird or animal, or breakage of glass is not deemed loss caused by collision. If breakage of glass results from a collision, you may elect to have it treated as loss caused by collision.

If a loss to auto safety glass is repaired rather than replaced, the deductible applying to this coverage is waived. If the auto safety glass is replaced, the deductible applying to this coverage will remain in force.

**Coverage G – Collision Coverage**
If you pay us the premium when due for this coverage, we will pay for loss to your insured vehicle and its equipment caused by collision less any applicable deductibles. Any deductible shall apply separately to each loss.

**Coverage H – Towing and Road Service Coverage**
If you pay us the premium when due for this coverage, we will pay for reasonable and necessary towing and labor costs incurred to the nearest repair facility because of disablement of your insured vehicle. The labor must be performed at the place of disablement.

## Personal Auto Policy (continued)

**Additional Definitions Used In This Part Only**
As used in Part - IV - Damage to Your Vehicle:

Additional equipment means any equipment, which is not the vehicle's factory available equipment, including but not limited to:

1. Any video, electronic sound reproducing or transceiving equipment, and its component parts but not limited to DVD, Game System, MP3 player.

2. Any painted or finished surface, whether refinished in whole or in part, of any automobile insured under this Part where the claim exceeds the cost of duplicating the vehicle's factory applied surface finish.

3. Tires, wheels or any exterior surface equipment, or modification thereto, which exceeds the cost of repairing or replacing the vehicle's factory available equipment.

4. Any engine, transmission or suspension parts, or modification thereto, which exceeds the cost of repairing or replacing the vehicle's factory available equipment.

5. GPS navigational systems.

Collision means collision of your insured vehicle with another object or upset of your insured vehicle.

Equipment means equipment permanently attached to your insured vehicle and common to its use.

Loss means direct and accidental loss of or damage to your insured vehicle, including its equipment, but does not include any decrease in your insured vehicle's value, however measured, resulting from the loss and/or repair.

Replacement cost means the cost to purchase your insured vehicle: When available in a local market, a vehicle of the same year, make, model, body type and equipment as your insured vehicle; or

1. When not available in the local market, an equivalent vehicle to your insured vehicle. An equivalent vehicle means a vehicle that matches as closely as possible the same year, make, model, body type and equipment as your insured vehicle.

2. We reserve the right to determine what is equivalent.

**Supplementary Payments**
We will pay up to, but not more than, $200 for loss of clothing or luggage in your insured vehicle and belonging to you or a family member if the loss is caused by:

1. Collision of your insured vehicle while covered by this policy

2. Fire, lightning, flood, earthquake, explosion, falling aircraft, or the entire theft of your insured vehicle; and

loss occurs to your insured vehicle from the same cause while covered for comprehensive by this policy.

**Exclusions - What is Not Covered**
The coverages of Part IV- Damage to Your Vehicle does not apply to loss:

1. To your insured vehicle while used to carry persons or property for a charge. This exclusion does not apply to shared-expense car pools.

2. Caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, nuclear reaction, radiation or radioactive contamination, chemical contamination, or biological contamination or any consequence of any of these. This exclusion also applies to loss due to confiscation by a governmental agency.

3. Caused by theft to equipment designed for the reproduction of sound, or any radio receiving or radio receiving and transmitting equipment. This applies to such equipment as a tape player, tape recorder, citizens band radio and two-way mobile radio, telephone, television or scanning monitor receiver. It also applies to any electronic device incorporating any of this equipment, as well as accessories and antennas.

   This exclusion does not apply to that equipment which is permanently installed in the opening of your insured vehicle normally used by the motor vehicle manufacturer.

4. Consisting of theft to tapes, records, reels, cassettes, cartridges, discs, carrying cases or other devices for use with equipment designed for the reproduction of sound.

5. To a camper body, canopy or utility trailer owned by you or a family member and not described in the Declarations. But, coverage does apply to a camper body, canopy or utility trailer ownership of which you acquire during the policy period if you ask us to insure it within 30 days after you acquire it.

6. To awnings, cabanas, or equipment designed to provide additional living facilities.

7. Due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, or road damage to tires. But coverage does apply if the loss results from burning of wiring. Also coverage does apply if the loss results from the total theft of your insured vehicle.

8. To a vehicle not owned by you when used in auto business operations.

9. During active participation in any organized or agreed-upon racing, speed, demolition, stunting or performance

## Personal Auto Policy (continued)

driving contest, demonstration, instruction or activity, or in practice or preparation for any such activity.

10. To any additional equipment in excess of the amount shown on the Declarations page after the application of the applicable deductible related to Part IV- Damage to Your Vehicle.

11. Caused by or consisting of mold, fungi or bacteria.

12. Permanently attached or detachable camper body, slide-on camper, tonneau covers, camper shell.

13. Due to theft of your insured vehicle by a relative or family member.

14. To theft or unlawful conversion by any person after custody of your insured vehicle has been entrusted to another party for the purpose of selling or leasing your insured vehicle.

15. Resulting from the use of any vehicle by an insured person in any business or occupation where the insured person's primary duty is the delivery of goods or services, including but not limited to, the business or occupation of pizza delivery, newspaper delivery or messenger service.

16. Due to lack of routine maintenance including but not limited to lack of lubricant, coolant, or loss resulting from seepage of water.

17. To tires, unless caused by fire, malicious mischief, vandalism, theft, or unless the damage occurs at the same time and from the same cause as other covered damage.

18. To a van, pickup, or panel truck due to increased cost of repair or replacement of the following furnishings or equipment:
    a. Special carpeting, insulation, wall paneling, furniture or bars.
    b. Dining, kitchen and sleeping facilities including enclosures or bathroom facilities.
    c. Height-extending roofs.
    d. Murals, special paint and/or methods of painting, decals or graphics.

19. To radar detectors.

20. Caused:
    a. Intentionally by, or at the direction of, an insured person.
    b. By an intentional act of an insured person whether or not such person intended to cause damage of any nature.

However, this exclusion does not apply to a loss to your covered auto to the extent of the legal interest of you or a family member who:

1. Sustains the loss as the result of family violence by:
    a. You;
    b. A family member;
    c. A former spouse; or
    d. any person who resides in or has resided in your household;

2. Did not direct, participate in, or consent to the intentional act causing the loss; and

3. Filed a family violence complaint against the person who caused the violence resulting in the loss.

### Limits of Liability

Our limits of liability for loss shall not exceed:

1. The amount necessary to repair or replace the property or parts with other of like kind and quality; or with new property or parts, less an adjustment for physical deterioration and/or depreciation. Property or parts of like kind and quality includes, but is not limited to, parts made for or by the vehicle manufacturer. It also includes parts from other sources such as rebuilt parts, quality recycled (used) parts and parts supplied by non-original equipment manufacturers

2. $500 for a utility trailer not owned by you, or a family member.

If we, at our option, elect to pay the loss in money or repair or replace damaged or stolen property or parts in accordance with subsection 1, above, our liability does not include any decrease in the property's or parts value, however measured, resulting from the loss and/or repair. If the repair or replacement results in betterment of the property or part, meaning that the value of the repaired or replaced property or part has been increased above its pre-loss market value as a result of the repair or replacement, you may be responsible, subject to applicable laws and regulations, for the amount of the betterment.

Deductions for betterment or depreciation will be taken only for parts or a specific repair process normally subject to repair or replacement during the useful life of your insured vehicle. Deductions will be limited to an amount equal to the proportion that the expired life of the part or specific repair process to be repaired or replaced bears to the normal useful life of that part or repair process.

## Personal Auto Policy (continued)

**Payment of Loss**

We will pay the loss in money or repair or replace damaged or stolen property. We may, at any time before the loss is paid or the property is replaced, return, at our expense, any stolen property either to you or to the address shown in the Declarations, with payment for the resulting damage. We may keep all or part of the property at the agreed or appraised value.

**No Benefit to Bailee**

This coverage shall not directly or indirectly benefit any carrier or other bailee for hire liable for loss to your insured vehicle.

**Other Insurance**

If there is other applicable similar insurance on any other policy that applies to a loss covered by this Part, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. This coverage does not apply to any substitute vehicle or non-owned vehicle if there is similar coverage on it. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

If any applicable insurance other than this auto policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limit of liability of the single policy providing the highest limit of liability.

**Appraisal**

If we and you do not agree on the amount of loss, then we and you may agree to an appraisal of the loss. If we and you agree to an appraisal, each party will select a competent appraiser and notify the other party in writing of the appraisers identity within 30 days of the request for appraisal. The two appraisers will select an umpire. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A written decision agreed to by any two will be binding.

Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

We do not waive any of our rights under this policy by agreeing to an appraisal.

## Part V – Conditions

**1. Policy Period and Territory**

This policy applies only to accidents, occurrences, and losses during the policy period shown in the Declarations which occur within the United States, its territories or possession, Puerto Rico and Canada, or while the vehicle is being shipped between their ports.

**2. Changes**

This policy with the Declarations includes all agreements between you and us relating to this insurance. No other change or waiver may be made in this policy except by endorsement, new Declarations or a new policy issued by us. The premium for each term of this policy is determined by information in our possession at the inception of that term. Any changes in this information which would affect the rating of your policy will allow us to make an additional charge or refund on a pro rata basis. If a premium adjustment is necessary, we will make the adjustment as of the effective date of the change.

When we broaden coverage during the policy period without charge, the policy will automatically provide the broadened coverage when effective in your state. We may make other changes or replace this policy, to conform to coverage currently in use at the next policy period. The change or new policy will be delivered to you, or mailed to you at your mailing address shown in the Declarations at least 30 days before the effective date of the new policy period.

Policy terms which conflict with laws of Pennsylvania are hereby amended to conform to such laws.

**3. Legal Action Against Us**

No legal action may be brought against us until there has been full compliance with all the terms and conditions of this policy. In addition, under Part I – Liability Coverage of this policy, no legal action may be brought against us until:

1. We agree in writing that the insured person has an obligation to pay; or
2. The amount of that obligation has been finally determined by judgment after trial.

No person or organization has any right under this policy to bring us into any action brought to determine the liability of an insured person. Any action brought against us pursuant to coverage under Part II – Uninsured/Underinsured Motorist Coverage must be brought in the county in which the person seeking benefits resides, or in the United States District Court serving that county.

**4. Transfer of Your Interest**

Interest in this policy may not be assigned without our written consent. But, if the insured person(s) in the Declarations dies, the policy will cover:

a. The survivor;
b. The legal representative of the deceased person while acting within the scope of duties of a legal representative; or

## Personal Auto Policy (continued)

c. Any person having proper custody of your insured vehicle until a legal representative is appointed.

**5. Our Right to Recover Payment**

1. If we make a payment under this policy, and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice our rights.

2. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   1. Hold in trust for us the proceeds of the recovery; and

   2. Reimburse us to the extent of our payment within 30 days of receipt of the proceeds of any recovery'

3. If we are not reimbursed, we may pursue recovery of that amount directly against that insured person. If an insured person under this policy makes recovery from a responsible party without our written consent, the insured person's right to payment under any affected coverage will no longer exist.

4. If we exercise our right to recovery against another, we will also attempt to recover any deductible incurred by an insured person. We reserve the right to compromise or settle the deductible and property damage claims against the responsible parties for less than the full amount. We reserve the right to reduce reimbursement of the deductible by the proportion that the amount we recover bears to the total amount of our subrogated claim. We will also reduce reimbursement of the deductible by the proportionate share of the collection expenses including attorney fees incurred with our recovery efforts. We will not recover the deductible if you instruct us not to.

5. Our rights in this provision do not apply under Part II – Uninsured Motorist/Underinsured Motorists Coverage if we:

   1. Have been given prompt written notice of a tentative settlement between an insured person and the insurer of an uninsured motor vehicle or an underinsured motor vehicle; and

   2. Fail to advance payment to the insured person in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If we advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification:

   1. That payment will be separate from any amount the insured is entitled to recover under the provisions of Underinsured Motorists Coverage; and

   2. We also have the right to recover the advanced payment.

6. Our rights in this provision do not apply under Part III – First Party Benefits Coverage, unless the payments are subject to the Worker's Compensation Act.

7. Our rights in this provision do not apply under Part IV – Coverage for Damage to Your Auto, against any person using your insured vehicle with a reasonable belief that that person is entitled to do so.

**6. Two or More Vehicles Insured**

With respect to any accident or occurrence to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**7. Bankruptcy**

We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any insured person.

**8. Termination**

**Cancellation**

You may cancel this policy by calling us or giving us advance notice of the future date cancellation is to take effect.

At the policy's inception, if you make a premium payment using a nonnegotiable instrument, the policy is considered null and void and is not subject to the Cancellation provisions of the policy. If you make a premium payment for a renewal of your policy using a nonnegotiable instrument, our offer of policy renewal is deemed rejected by you and the policy terminated without renewal.

Examples of nonnegotiable instruments include but are not limited to:

   1. Checks dishonored due to insufficient funds;

   2. Checks drawn from closed accounts; and

   3. Invalid credit cards.

We may cancel this policy during the policy period by mailing a notice of cancellation to the named insured.

We will give at least 15 days notice of cancellation if:

   1. We cancel during the first 59 days of the initial policy period.

   2. The policy is cancelled for nonpayment of premium.

We will give at least 60 days notice in all other cases.

## Personal Auto Policy (continued)

We may cancel this policy for any reason if the notice is mailed within the first 59 days of the initial policy period. After this policy has been in effect for more than 59 days, or if this is a renewal or continuation policy, we may cancel only for one or more of the following reasons:

1. Nonpayment of premium;
2. If the driver's license or motor vehicle registration of the named insured shown in the Declarations has been under suspension or revocation during the policy period;
3. A determination that the insured has concealed a material fact, or has made a material allegation contrary to fact or has made a misrepresentation of a material fact and that such concealment, allegation or misrepresentation was material to the acceptance of the risk by us; or
4. Any other reason permitted by law.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

The effective date and time of cancellation stated in the notice shall become the end of the policy period. Any cancellation will be effective for all coverages for all persons and all vehicles.

**Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to you:

1. At least 15 days notice before the end of the policy period for nonpayment of premium or if the drivers license of the named insured has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.
2. At least 60 days notice before the end of the policy period in all other cases. However our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. If you fail to pay the required renewal or continuation premium when due, this shall mean that you have not accepted our offer. All coverage associated with any vehicle you own will automatically terminate upon the sale or transfer of vehicle ownership.

**9. Concealment or Fraud**

This policy was issued in reliance on the information provided on your insurance application, including, but not limited to

information regarding license and driving history of you, family members, all persons of driving age residing in your household, the description of the vehicles to be insured, the location of the principal place of garaging, and your place of residence.

We may void this policy at any time during the first 59 days, including after the occurrence of an accident or loss, if you:

1. Made incorrect statements or representations to us with regard to any material fact or circumstance;
2. Concealed any material fact or circumstance; or
3. Engaged in fraudulent conduct;

at the time of the application.

This means that we will not be liable for any claims or damages that would otherwise be covered.

We may deny coverage for an accident or loss if you or any insured person have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time the application was made or in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify us for all payments made.

**10. Terms Conformed to Statutes**

This policy shall be deemed amended to conform to the statutes of the state listed in your application if any provision fails to conform to such statutes. Any dispute as to coverages or the provisions of this policy shall be determined and governed by the law of the state listed in your application as your residence.

**11. Coverage Deemed Granted by Out-of-State Statute**

If an accident to which this policy applies occurs in any state or province other than the one in which your insured vehicle is principally garaged, and if a statute of that state or province that is applicable to us deems out-of-state automobile or motor vehicle policies issued by us to provide particular forms or limits of coverage not provided for in this policy when your insured vehicle is involved in an accident in that state, then for purposes of that accident only, we will interpret your policy as providing the minimum coverage deemed to be provided, at the minimum amounts permitted by law, and subject to the exclusions set forth in any coverage part of this policy, to the fullest extent permissible by law. All such coverage shall be excess over any other collectible insurance, to the fullest extent permissible by law. Further, our obligation to pay such coverage shall be reduced by any other available insurance, to the fullest extent permissible by law. Nothing contained herein constitutes a choice of law provision or consents to the application of the

## Personal Auto Policy (continued)

law of any particular state or province. No one will be entitled to duplicate payments for the same elements of loss.

### 12. Constitutionality Clause

The coverages provided and the premium charged for this policy rely upon Pennsylvania law, including the Motor Vehicle Responsibility Law. If any provisions of the Pennsylvania Motor Vehicle Responsibility Law are declared unconstitutional, we may amend the policy and increase the premium due, subject to the approval of the Insurance Commissioner.

### 13. Proof of Mailing

We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

### 14. Policy and/or Filing Fees

A Policy Fee and Filing Fee, if any, as set forth under the Declarations of this policy, applies.

### 15. Additional Premium Due - Loss Settlement

In the event of additional premium due to the incorrect rating of this policy, we shall have the right to correct the premium in accordance with our published rates and underwriting rules.

### 16. Notices

We will address all notices, including any cancellation, nonrenewal or termination notice, to your address shown in the Declarations Page. However, under the authority of federal law, the United States Postal Service, its authorized agents or vendors, or we or vendors we retain for the benefit of the United States Postal Service, may forward the notice to an updated address per any change of address that you have presented to or filed with the United States Postal Service. If, after you have presented or filed a change of address with the United States Postal Service, the United States Postal Service instructs or directs us to address mail to the updated address, we may address all notices as instructed or directed by the United States Postal Service.

### What to Do in Case of Accident

**Notice**

In the event of an accident, or loss, notice must be given to us promptly. The notice must give the time, place and circumstances of the accident, or loss, including the names and addresses of injured persons and witnesses.

Additional notice requirements are given under Other Duties.

**Other Duties**

A person claiming any coverage under this policy must also:

1. Cooperate with us and assist us in any matter concerning a claim or suit.

2. Promptly send us any legal papers received relating to any claim or suit.

3. As required by Pennsylvania law, submit to physical examinations at our expense by doctors we select as often as we may reasonably require.

4. Provide any written proofs of loss we require.

5. Notify police within 24 hours and us within 30 days if a hit-and-run motorist is involved and an uninsured motorist claim is to be filed.

6. If claiming vehicle damage coverage:

   a. Take reasonable steps after loss to protect the vehicle and its equipment from further loss. We will pay reasonable expenses incurred in providing that protection.

   b. Promptly report the theft of the vehicle to the police.

   c. Allow us to inspect and appraise the damaged vehicle before its repair or disposal.

   d. Allow us, with your consent, to move your damaged vehicle, at our expense, to reduce storage costs

   If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved your damaged vehicle.

7. Submit to examination under oath and sign a transcript of the same upon our request.

8. Refrain from voluntarily making any payment, assuming any obligation, or incurring any expenses except first aid expenses.

### Special Provisions

Policy fees which you pay are not part of the premium. They are fully earned when the policy is issued. They are not returnable. However, if we cancel or non-renew your policy during the initial policy period, policy fees will be refunded to you in full.

## Personal Auto Policy (continued)

This policy shall not be effective unless countersigned on the Declarations page by a duly authorized representative of the Company named on the Declarations page.

The Company named on the Declarations has caused this policy to be signed by the officers shown below.

MID-CENTURY INSURANCE COMPANY

Secretary

Vice President

## Policy Endorsements



**F A R M E R S**
INSURANCE

### Safety Glass - Waiver of Deductible Part IV - Damage to Your Car - Coverage F (J6284 - 1st Edition)

This coverage applies only to the vehicle(s) for which this endorsement is listed on the Declarations page.

It is agreed that if a loss to auto safety glass is repaired rather than replaced, the deductible applying to Coverage F - Comprehensive under Part IV - Damage to Your Car is waived. If the auto safety glass is replaced, the deductible applying to Comprehensive will remain in force.

93-6284   1st Edition   2-07        This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

## Policy Endorsements



---

### Additional Equipment Endorsement (J6887 - 1st Edition)

This coverage applies only to the vehicle(s) for which this endorsement is listed on the Declarations page.

In Part IV - Damage to Your Car, Additional Definitions Used in This Part Only, the definitions of additional equipment and loss are deleted and replaced with the following:

Additional equipment means any furnishings or equipment, which is permanently attached to your insured vehicle and common to its use, which is not the vehicle's factory available furnishings or equipment.

This includes, but is not limited to:

1. any video, electronic sound reproducing or transmitting equipment, and its component parts, media and data, including but not limited to DVD, Game System or MP3 player;
2. any painted, chrome or finished surface, whether refinished in whole or in part, of any automobile insured under this Part where the claim exceeds the cost of duplicating the vehicle's factory applied surface finish;
3. tires, wheels, rims, spinners, grilles, louvers, side pipes, hood scoops or spoilers or any exterior surface, body or exhaust equipment, or modification thereto, which exceeds the cost of repairing or replacing the vehicle's factory available equipment;
4. any engine, transmission or suspension parts, or modification thereto, which exceeds the cost of repairing or replacing the vehicle's factory available equipment;
5. GPS navigational systems;
6. special carpeting, insulation, wall paneling, furniture or bars;
7. facilities for cooking or sleeping including enclosures or bathroom facilities;
8. height-extending roofs; or
9. custom murals, paintings or other decals or graphics.

Loss means direct and accidental loss of or damage to your insured vehicle, including its additional equipment, but does not include any decrease in your insured vehicle's value, however measured, resulting from the loss and / or repair.

Under Part IV - Damage to Your Car, Limits of Liability, Coverage F - Comprehensive, and Coverage G - Collision, the following sub-section 3 is added to the first paragraph:

Our limits of liability for loss shall not exceed:

3. Up to a total of $1,000 for repair or replacement of additional equipment for any one loss event. Multiple items of additional equipment lost or damaged in the same event are considered to be one loss.

---

93-6887   1st Edition   9-10                          This endorsement is part of your policy. It supersedes and controls anything to the contrary.
                                                       It is otherwise subject to all other terms of the policy.

---

farmers.com

## Policy Endorsements



**FARMERS**
INSURANCE

### Loss Payable Provisions (J6934 - 1st Edition)

Subject to the Loss Payable Provisions or any other loss payable endorsement attached to the policy, payment for loss thereunder is payable as interest may appear to the named insured and the lienholder or Other Interest in the Declarations.

#### Loss Payable Provisions

It is agreed that any payment for loss or damage to the vehicle described in this policy shall be made on the following basis:

(1) At our option, loss or damage shall be paid as interest may appear to the policyholder and the lienholder shown in the Declarations, or by repair of the damaged vehicle.

(2) Any act or neglect of the policyholder or a person acting on his behalf shall not void the coverage afforded to the lienholder.

(3) Change in title or ownership of the vehicle, or error in its description shall not void coverage afforded to the lienholder.

The policy does not cover conversion, embezzlement or secretion of the vehicle by the policyholder or anyone acting in his behalf while in possession under a contract with the lienholder.

A payment may be made to the lienholder which we would not have been obligated to make except for these terms. In such event, we are entitled to all the rights of the lienholder to the extent of such payment. The lienholder shall do whatever is necessary to secure such rights. No subrogation shall impair the right of the lienholder to recover the full amount of its claim.

We reserve the right to cancel this policy at any time as provided by its terms. In case of cancellation or lapse we will notify the lienholder at the address shown in the Declarations. We will give the lienholder advance notice of not less than 10 days from the effective date of such cancellation or lapse as respects his interest. Mailing notice to the loss payee is sufficient to effect cancellation.

The following applies as respects any loss adjusted with the mortgagee interest only:

(1) Any deductible applicable to Comprehensive Coverage shall not exceed $250.

(2) Any deductible applicable to Collision Coverage shall not exceed $250.

farmers.com

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

53-G934   1st Edition   4-12

## Policy Endorsements



**FARMERS**
INSURANCE

### Farmers Auto Rewards Endorsement (J7204 - 2nd Edition)

This endorsement outlines a new set of policy features that have been added to your auto policy. These benefits have been added at no additional charge, and are earned based on your length of time with Mid-Century Insurance Company and your claims experience. You currently qualify for the benefits indicated with a check mark ☒ below. Thank you for choosing Farmers!

#### ☒ *Accident Forgiveness*

After existing covered drivers on your policy earn this benefit, we will waive one accident that would have otherwise caused your premium to increase. This benefit can be used multiple times over the life of this policy, but will only apply to one accident at any given time. A subsequent accident would only cause an increase in your premium if it occurs within three years of the accident that has been forgiven.

This benefit will forgive one accident regardless of the number of insured vehicles or drivers. This benefit only applies for the policy number listed below, and requires that the policy is in force and has not cancelled or lapsed due to nonpayment.

At the time of adding any new driver to this policy as a covered driver, any associated and/or assigned accidents which occurred prior to that driver being added to the policy will not be waived.

#### ☒ *Incident Forgiveness*

We agree to waive qualified incidents on this policy. This benefit is earned on the insured's first policy renewal. The policy Declarations Page will show Incident Forgiveness once is has been earned.

1. Incidents are defined as minor traffic violations. The Incident Forgiveness benefit provides that all the insured's subsequent minor traffic violations referred to as incidents that occur while the covered driver is insured with the company under the policy for which this endorsement is listed will be waived and not be used to determine the renewal premium.

2. Any new minor traffic violations that occur after the new business effective date for covered drivers will not be counted in determining the renewal premium.

3. At the time of adding any new driver to this policy as a covered driver, any traffic violations which occurred prior to that driver being added to the policy will not be waived.

At your request, your agent can provide you with a list of incidents we consider minor violations.

#### ☒ *Guaranteed Renewal*

We will not cancel or non-renew your policy for claims activity as long as you continue to pay premiums when due. Additionally, we agree to renew this policy as long as:

1. You continue to reside in the state this policy was issued;

2. All drivers in your household hold valid driver's licenses or driver authorization cards (DAC);

3. No changes to the named insured(s) shown on the Declarations Page as of the date of issue of the endorsement can be made once this endorsement is in place. If a change is required to the named insured(s), the benefit will no longer apply;

4. You have a signed and approved Subscription Agreement on file with Farmers (if required to purchase a policy in your state);

5. There is no intentional misrepresentation of information you provide to us to rate and service your policy.

## Policy Endorsements (continued)

At each policy renewal, you may select from those coverages which continue to be available from the member company of the Farmers Insurance Group of Companies which issued this policy. The coverage provided is described in your policy, including any revisions that are made to it.

93-7204   2nd Edition   12-15          This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

# Policy Endorsements



**FARMERS**
INSURANCE

## Important Notice to Policyholders Regarding Changes to Your Policy Provisions

Endorsement PA032 1st Edition entitled Rideshare Exclusion Endorsement

The Rideshare Exclusion Endorsement is now attached and is part of your policy contract.

As permitted by the laws in your state, this endorsement excludes all coverage under this auto policy in its entirety while your insured car is used as part of a personal or commercial rideshare program.

This notice is not a part of your insurance policy contract. It is intended only to alert you to revisions of your policy contract. Please review your policy contract and Endorsement PA032. If there is any discrepancy between this notice and the policy contract (including its endorsements) the provisions of the policy contract (including its endorsements) take precedence.

## Rideshare Exclusion Endorsement - Pennsylvania (PA032 - 1st Edition)

This Endorsement amends your Personal Auto Policy. Please read it carefully.

The following exclusion is added to your policy:

### Rideshare Exclusion Applicable To All Coverages

We do not provide coverage under this policy for any accident that occurs while your insured vehicle is being used in a Personal Car Sharing Program, a Commercial Ridesharing Program, any prearranged ride, or a similar arrangement.

The following definitions are added to your policy:

**Commercial Ridesharing Program** means an arrangement or activity through which persons or property is transported for compensation, regardless of the amount or form of compensation charged or paid and includes the time:

1. Commencing when a driver of a private passenger vehicle is available to accept transportation requests for passengers or property for compensation.
2. Between the driver accepting a transportation request and the passengers or property entering into or being loaded upon the private passenger vehicle used for this request;
3. Passengers or property are in or upon the private passenger vehicle used for this request; and
4. Between the passengers or property exiting or unloading from the private passenger vehicle and the driver is no longer available to accept transportation requests.

**Personal Car Sharing Program**, means a business in which persons or legal entities are engaged in the business of facilitating the sharing of private passenger vehicles for temporary use by individuals.

**Prearranged Ride**, means a period of time that begins when a driver accepts a transportation request through a digital network or similar connection and continues while the driver transports the rider in a private passenger vehicle, and ends when the rider departs from the private passenger vehicle.

## Policy Endorsements (continued)

Subsection 4 is added to the definition of Insured Person does not mean in Part I – Liability, Additional Definitions Used in This Part Only:

4. Insured person does not mean: Any person while occupying, operating or using a vehicle that is available for hire or while using a vehicle that is part of a Personal Car Sharing Program, Commercial Ridesharing Program or similar arrangement.

The following paragraph is added to the definition of Insured Person in Part II – Uninsured Motorist/Underinsured Motorist, Additional Definitions:

Insured person does not mean: Any person while operating a vehicle that is available for hire or while using a vehicle that is part of a Personal Car Sharing Program, Commercial Ridesharing Program or similar arrangement.

The following paragraph is added to the definition of Insured Person in Part III – First Party Benefits Coverage, Additional Definitions:

Insured person does not mean: Any person while operating a vehicle that is available for hire or while using a vehicle that is part of a Personal Car Sharing Program, Commercial Ridesharing Program or similar arrangement.

The following Condition is added to your policy:

You must disclose to us your participation, as either a driver or vehicle owner, in any Personal Car Sharing Program, Commercial Ridesharing Program, or other similar arrangement. Failure to do so may result in the rescission, cancellation or nonrenewal of your policy. This duty does not apply to a share-the-expense car pool.

94-2944   1st Edition   5-15                    This endorsement is a part of the policy. It changes the policy so please read it carefully. All other terms and conditions of the policy continue to apply.

farmers.com